Eastern District of Kentucky
F I L E D

AUG 1 9 2005

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 04-84-KSF

STATIC CONTROL COMPONENTS, INC.                    PLAINTIFF/COUNTERCLAIM
                                                              DEFENDANT

V.

LEXMARK INTERNATIONAL, INC.                     DEFENDANT/COUNTERCLAIM
                                                              PLAINTIFF

V.

WAZANA BROTHERS INTERNATIONAL , INC.                    COUNTERCLAIM
d/b/a MICRO SOLUTIONS ENTERPRISES, PENDL                 DEFENDANTS
COMPANIES, INC., IMAGE PROJECTIONS WEST,
INC. and NER DATA PRODUCTS, INC.

**OPINION & ORDER**

* * * * * * * * * * * * *

        This matter is before the Court on counterclaim defendant Image Projection West, Inc.'s

motion to dismiss counterclaim [DE #89].  This matter is ripe for review.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

        Counterclaim defendant, Image Projection West, Inc. ("IPW") moves the Court to

dismiss the Second Amended Counterclaim asserted against IPW by Lexmark International, Inc.

("Lexmark") because Lexmark has failed to establish that the Court has personal jurisdiction

over IPW.  IPW is based in Colorado and does not have any offices in Kentucky.  IPW is not

licensed to transact business in Kentucky and does not have a registered agent in Kentucky.  IPW

claims that it does not use the media to attract or develop business in Kentucky.

        IPW remanufactures and sells used toner cartridges.  IPW has a verbal agreement with

Lexmark to remanufacture the empty, sorted "Linea" brand of Hewlett Packard used toner

cartridges.  Lexmark instructs consumers to return the Linea product to the Noble Center in Indianapolis, Indiana.  IPW obtains the used toner cartridges from the Noble Center and then breaks down the cartridge, replacing and refurbishing the cartridge, remanufacturing cartridge parts, and ultimately rebuilding it back to new standards.  IPW then sells the remanufactured toner cartridges as remanufactured cartridges to distributors, none of which are located in Kentucky.

Additionally, IPW has purchased approximately 300 microchips from Static Control Components, Inc. ("SCC").  IPW claims that a majority of the microchips were used internally for lab evaluations, some were sold to a St. Louis, Missouri company and the remainder of the microchips were returned to SCC.  Lexmark claims that IPW knew the microchips were manufactured by SCC for use in remanufacturing Lexmark's Prebate/Return Program cartridges for several Lexmark printers.

IPW does not distribute its products to distributors located in Kentucky, although IPW does not deny that some of its products may sporadically reach residents of Kentucky via their distributors.  IPW claims that it has no control over the sales or commercial activities conducted by its distributors.  IPW admits that it has an agreement through one of its distributors, Supplies Network, for the sale of its products to Bank of America.  As part of this agreement, Bank of America purchases IPW remanufactured cartridges from Supplies Networks' website which has a page that appears as if Bank of America is purchasing the cartridges directly from IPW.  IPW admits that through this agreement with Bank of America, there are sporadic sales in Kentucky for which IPW pays a nominal Sales and Use Tax.

IPW also maintains a website that provides product information to customers. The

2

website includes a "Request Form", whereby website visitors may fill out and submit a detailed

form that provides IPW with information regarding the visitors and allows visitors to obtain

additional information from IPW on how to order IPW's products.  IPW claims that the Request

Form has never been accessed by consumers, businesses or end users, thus it has never

"interacted" with anyone.

## II.   ANALYSIS

In a patent infringement suit, Federal Circuit law governs the issue of personal

jurisdiction.  *Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed.Cir.1995).  Since there has not been

an evidentiary hearing, the plaintiff need only make a prima facie showing that the defendant is

subject to personal jurisdiction.  *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations*

*Found.,* 297 F.3d 1343, 1347 (Fed.Cir.2002); *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d

883, 887 (6th Cir.2002).  The issue of personal jurisdiction involves two inquiries: (1) whether

the forum state's long-arm statute permits the assertion of jurisdiction and (2) whether the

assertion of personal jurisdiction violates federal due process.  *Akro* at 1544.

Kentucky's long-arm statute (KRS 454.210) has been consistently interpreted as reaching

the full limits of constitutional due process.  *Wilson v. Case,* 85 S.W.3d 589, 592 (Ky. 2002).

Therefore, the two-step inquiry employed by the Federal Circuit collapses into a single inquiry of

whether jurisdiction violates federal due process.  *Akro* at 1544.  The Federal Circuit and the

Sixth Circuit apply the same traditional three-part test in making this due process determination:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state

or causing a consequence in the forum state. Second, the cause of action must arise from the

defendant's activities there. Finally, the acts of the defendant or consequences caused by the

3

defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Southern Machinery Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir.1968); *Akro* at 1545-46.

The "sine qua non" of personal jurisdiction is the purposeful availment factor. *See Southern Mach.*, 401 F.2d at 381-82. This factor requires that the defendant "purposefully avail[ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of the laws." *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 529 (1985). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contract, or of the unilateral activity of another party or third person." *Id.; see also Dean v. Motel 6 Operating Co.*, 134 F.3d 1269, 1273 (6th Cir. 1998).

A.    **IPW's Website**

Lexmark argues that IPW's website evinces an intention by IPW to purposefully avail itself of the privilege of conducting activities within Kentucky. Courts have developed three categories for jurisdictional analysis of websites: (1) passive websites which merely make information available to users; (2) websites where the owner clearly does business over the Internet; and (3) a middle category of moderately interactive websites where the user can exchange information with the host computer. *Zippo Manufacturing Co. v. Zippo Dotcom, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996)). If a court determines that a website is passive in nature, there is no jurisdiction. *Zippo*, 952 F.Supp. at 1124. Generally, courts have determined that the maintenance of a moderately interactive website is sufficient for the exercise of personal jurisdiction.

4

Lexmark insists that IPW's website falls into the third category because the website allows visitors to submit requests for information regarding IPW's products, although it does not allow visitors to order the products on-line.  IPW, on the other hand, claims that its website is merely passive because although the Request Form is included on the website, it has never been accessed by consumers, businesses or end users.

Recent Sixth Circuit cases are instructive on this issue.  The Sixth Circuit has stated that the operation of "a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction", even where the website enables the defendant to do business with residents of the forum state because such activity does not "approximate[] physical presence within the state's border." *Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002).   Instead, operation of a website may constitute the purposeful availment of the privilege of acting in a forum state "if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002).  The following cases help to define which activities can be considered to reveal an intended interaction with residents of the forum state.

In *Bird*, the Sixth Circuit concluded that the operation of defendant's website did constitute purposeful availment.  The defendant's website allowed Ohio residents to register domain names and the defendant had, in fact, accepted the business of Ohio residents.  This activity was evidence that the defendant regularly chose to do business with Ohio.  Thus, the Sixth Circuit found that defendant's activities were sufficient to constitute purposeful availment. *Id*. at 875.

On the other hand, in *Neogen*, the Sixth Circuit generally discussed the relationship

5

between personal jurisdiction and the defendant's website:

> The maintenance of [the defendant's] website, in and of itself, does not constitute the purposeful availment of the privilege of acting in Michigan. An Internet website by its very nature can be accessed internationally. By maintaining a website in Pennsylvania, [the defendant] is no more benefitting from the laws of Michigan than from the laws of any other state. The level of contact with a state that occurs simply from the fact of a website's availability on the Internet is therefore an "attenuated" contact that falls short of purposeful availment.

*Id.* at 890 (internal citation omitted). The Sixth Circuit concluded that the defendant's website consisted primarily of passively posted information about the defendant, which performed diagnostic testing of blood samples from infants. However, the Sixth Circuit found that the following factors supported a finding of purposeful availment: the granting of passwords to the forum's residents so that they can access their testing results on the website; the fact that defendant held itself out on the website as welcoming business from the forum; the company posted information on the website about the geographical breakdown of data that expressly included data from the forum state. *Id.* at 891. Ultimately, the Sixth Circuit found that whether the defendant's website alone would be sufficient to sustain personal jurisdiction in the forum state was a close question that did not have to be decided since the website was not the only contact with the state. *Id.* at 891.

In two unpublished cases, the Sixth Circuit determined that the websites at issue did not specifically intend to interact with residents of the forum state. In *Cadle Co. v. Schlichtmann*, 123 Fed. Appx. 675 (6th Cir. Feb. 8, 2005), the Sixth Circuit concluded that a defendant's website that provided contact information and solicited support for campaign against the plaintiff's activities was "semi-interactive". The Sixth Circuit noted that if a website is semi-interactive,

6

the jurisdiction is determined by examining the level of interactivity and commercial nature of

the information that occurs.  *Id.* at 678.  Thus, the Sixth Circuit concluded that since plaintiff had

failed to allege any interaction or exchange between the defendant and the forum via the website,

personal jurisdiction did not exist over the defendant on the basis of the website.   In *Premium

Balloon Accessories, Inc. v. Control Plastics*, 113 Fed. Appx. 50, 51 (6th Cir. Aug. 24, 2004), the

Sixth Circuit found that a district court did not err in concluding that personal jurisdiction was

lacking when 0.30 percent of defendant's sales were to the forum state and the website permitted

users to gather information about the products and download an order form, but purchases could

not be made via the website.

It is unclear, based on these cases, whether the Sixth Circuit would find that IPW's

website is moderately interactive.  IPW's website appears to primarily give passive information

to customers, although it does have a section where customers can fill out a request form.  This

request form merely provides information to IPW and does not allow purchases to made via the

website, much like the downloadalbe order form on the website in *Premium Balloon*.

Furthermore, response to the request form does not appear to be automatic, thus, in theory, IPW

could choose not to interact with customers based on their location once they receive a request.

Additionally, unlike *Bird*, IPW has not accepted the business of any residents of this forum

through the website.  As was in *Cadle*, the plaintiff here has not alleged any interaction or

exchange between IPW and the forum via the website.  Although IPW's website might be

considered somewhat interactive, it appears that it is not interactive to a degree that reveals it

specifically intended interaction with residents of Kentucky.   Thus, the Court concludes that

IPW's website does not show an intention by IPW to purposefully avail itself of the privilege of

7

conducting activities within Kentucky.

### B.     IPW's Distributing Activities

Lexmark also asserts that IPW's distributing activities were purposefully directed at Kentucky. IPW claims that it has no office in Kentucky, no registered agent in Kentucky, and no license to transact business in Kentucky. Further, IPW claims that it has never solicited business in Kentucky nor advertised in Kentucky. Lexmark claims that jurisdiction exists because IPW placed its product into the "stream of commerce" with the expectation that consumers in the forum state will purchase the products. *See Beverly Hills Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994). In *Beverly Hills*, the defendants shipped its fans into Virginia for sale to customers through an intermediary. The defendants argued that there was no evidence that its shipments into Virginia were "purposeful or knowing." The Federal Circuit found that from the ongoing commercial relationship defendants had with the intermediary distributor, "it can be presumed that the distribution channel formed by defendants and [the intermediary] was intentionally established, and that defendants knew, or reasonably could have foreseen, that a termination point of the channel was Virginia." *Id.* at 1564.

Lexmark argues IPW is similar to the defendants in *Beverly Hills*, because IPW placed its products in a nationally distributed catalog. According to Lexmark, by placing the products in such a catalog, IPW placed its products into the stream of commerce with the expectation that consumers in Kentucky would purchase the product. By placing its products into a nationally distributed catalog, Lexmark asserts defendants knew, or reasonably could have foreseen, that a termination point might be Kentucky.

However, courts have rejected the argument that placing a product in a nationally

8

distributed catalog, without more, establishes purposeful availment.  For example, in *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671 (1st Cir. 1992), the defendant allegedly sold a hot air gun to Brookstone, a nationally distributed retail catalog.  The First Circuit found that there was no evidence in the record that the defendant intended to serve the market in the forum state because there was no evidence that the defendant designed the product for the forum, advertised in the forum, established channels for providing regular advice to customers in the forum, or marketed the product through a distributor who had agreed to serve as a sales agent in the forum.  *Id.* at 683.   Accordingly, the First Circuit found that the district court could not have constitutionally exercised personal jurisdiction over the forum because "mere awareness" that a product may end up in the forum state does not constitute "purposeful availment".  *Id.* at 683.  *See also Federal Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 659 (4th Cir. 1989) (finding that advertising in a nationally distributed trade journal, standing alone, does not confer personal jurisdiction).  In the instant case, Lexmark has not presented any evidence that IPW intended to serve the market in Kentucky by either designing the product for the forum, advertising in the forum, or establishing channels for providing regular advice to customer in Kentucky.  Placing the product in a nationally distributed catalog does not appear to be a sufficient contact with the forum to establish IPW purposefully availed itself of the benefits of the forum state.

Lexmark also points out that at least two of IPW's distributors, located in Indiana and Ohio, sell IPW's products to customers in Kentucky.  In *Boit*, the First Circuit notes that one factor that may evidence purposeful availment is marketing a product through a distributor who has agreed to serve as a sales agent in the forum.  *Boit*, 967 F.2d at 683.  Lexmark has established the IPW represented that Kentucky customers may buy its product from distributors located in

9

Indiana and Ohio. However, Lexmark has not alleged that these distributors are serving as sales agents in the forum or that there has been any marketing of IPW's product to Kentucky through these distributors.[1]

Finally, in its reply brief, IPW mentions the relationship between itself, Supplies Network and Bank of America. IPW has an agreement through one of its distributors, Supplies Network, for the sale of its products to Bank of America. IPW admits that through this agreement with Bank of America, there are sporadic sales in Kentucky for which IPW pays a nominal Sales and Use Tax. At first glance, it appears that IPW may have intentionally established a relationship with a company, Bank of America, that has offices in Kentucky. IPW, thus, may have known or could have foreseen a termination point for its products could be in one of Bank of America's offices in Kentucky.

After closer examination of the relationship between IPW, Supplies Network and Bank of America, however, this relationship may be insufficient to establish purposeful availment. In *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472 (6th Cir. 2003), *cert. denied*, 540 U.S. 948, 124 S.Ct. 399, 157 L.Ed.2d 279 (2003), the Sixth Circuit reviewed whether the defendant purposefully availed itself of the forum state in an copyright infringement action where

---

[1] The only evidence presented by Lexmark of sales by these distributors in Kentucky relates to purchases made by a Lexmark employee. Lexmark's Senior Supplies Product Marketing Manager, Janet Smith, contacted these two distributors and purchased IPW's remanufactured toner cartridges from the distributors. In *Lexmark International, Inc. v. Laserland, Inc.*, 304 F.Supp.2d 913 (E.D. Ky. 2004), the Court found that Lexmark's patent counsel attempted to fabricate personal jurisdiction over the defendant by purchasing product from the defendant and them submitting an affidavit indicating that, in part, jurisdiction was based upon its ability to purchase the defendant's product in Kentucky. The Court explicitly excluded that sale from consideration due to Lexmark's role in the transaction. *Id.* at 917. Likewise, this Court will disregard any attempts by Lexmark to fabricate personal jurisdiction over IPW.

10

the plaintiff asserted that the defendant had a financial interest in selling music records throughout the United States. The Sixth Circuit distinguished the facts in *Bridgeport* from the situation present in *Tobin v. Astra Pharmaceutical Products, Inc.*, 993 F.3d 528 (6th Cir. 1993). In *Tobin*, the Sixth Circuit found purposeful availment based on the existence of a nationwide distribution agreement. The agreement required the defendant distribution company, Astra, to distribute the drug rotidrine on behalf of defendant manufacturer, Duphar, throughout Astra's territory. The relevant agreement defined the distribution territory as "the United States of America, its territories and possessions, and Puerto Rico." *Tobin*, 993 F.2d at 543. In *Bridgeport*, the Sixth Circuit found that the defendant's contacts with the forum state lacked the additional element present in *Tobin* – the fact that the *Tobin* defendants were not merely aware that their distributor was likely to market the product in all fifty states; rather, the parties' contract required it. In *Bridgeport*, the plaintiff did not assert that the defendant entered into a distribution agreement with a third-party that placed an affirmative obligation upon the third-party to distribute the defendant's compositions in Tennessee or elsewhere. *Bridgeport*, 327 F.3d at 480. The plaintiff even conceded in its brief that with respect to the defendant and third-party licensing, "[h]ow the subject composition is exploited is 'pretty much out of [the defendant's] hands.'" In other words, the defendant's knowledge that the third-party was likely to distribute the defendant's compositions nationally, coupled with its lack of objection to forum sales, if such sales were ever to occur, was "insufficient conduct upon which to predicate purposeful availment." *Id*. at 480.

There is no evidence in the instant case, like was present in *Tobin*, that IPW's product was required to be distributed in Kentucky. Moreover, once IPW distributed the product to Bank

11

of America through Supplies Network, IPW did not control the manner in which Supplies
Network distributed the IPW products to Bank of America. IPW has no control over which
branch or office of Bank of America received IPW's products. Thus, using the rationale in
*Bridgeport*, although IPW knew that its products may go to one of Bank of America's branches
or offices, which can be found throughout Kentucky and the rest of the United States, purposeful
availment is not established by the fact that IPW knew of, and did not object to, Supplies
Network distributing the product to one of Bank of America's branches, possibly in Kentucky.

After reviewing all of IPW's contacts with Kentucky, the Court concludes that IPW has
not purposefully availed itself of the privilege of acting in Kentucky. IPW has neither controlled
the distribution of its products nor has it focused its activities on the forum state or any of its
residents. Thus, IPW should not be subject to jurisdiction in Kentucky merely because it placed
its goods into the stream of commerce. *See Asahi Metal Industry Co. v. Superior Court of
California*, 408 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

## III.   CONCLUSION

In conclusion, IPW has not purposefully availed itself of the privilege of conducting
activities within Kentucky, thus Lexmark has not satisfied the first prong of the three-part test for
personal jurisdiction. Accordingly, the Court will grant the defendant's motion to dismiss
counterclaim.

Based on the foregoing, the Court being otherwise fully and sufficiently advised,
HEREBY ORDERS that:

> [1]    defendant, Image Projection West, Inc.'s motion to dismiss counterclaim
>        [DE #89] is GRANTED; and

[2]     plaintiff's counterclaim against defendant, Image Projection West, Inc. is

DISMISSED WITHOUT PREJUDICE to file in a court of competent

jurisdiction.

This ___ day of August, 2005.

_____
KARL S. FORESTER, SENIOR JUDGE

13