Eastern District of Kentucky
FILED
MAR 0 7 2006
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 04-84-KSF

| | |
|---|---|
| STATIC CONTROL COMPONENTS, INC. | PLAINTIFF/COUNTERCLAIM DEFENDANT |
| V. | |
| LEXMARK INTERNATIONAL, INC. | DEFENDANT/COUNTERCLAIM PLAINTIFF |
| V. | |
| WAZANA BROTHERS INTERNATIONAL , INC. d/b/a MICRO SOLUTIONS ENTERPRISES, PENDL COMPANIES, INC., and NER DATA PRODUCTS, INC. | COUNTERCLAIM DEFENDANTS |

**OPINION & ORDER**

\* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Static Control Components, Inc.'s motion for expedited Rule 16 conference [DE #196]. This matter is ripe for review.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff and counterclaim defendant Static Control Components, Inc. ("Static Control") requests that the Court order a conference pursuant to Federal Rule of Civil Procedure 16 to set a deadline by which defendant and counterclaim plaintiff Lexmark International, Inc. ("Lexmark") must identify those end users whom it claims breached a contract, what the end user believed the terms of any contract were, and whether and why the end user breached the contract. Static Control contends that Lexmark has asserted claims for inducement of patent infringement and intentional interference with contractual relations. Static Control complains that Lexmark has failed to identify the specific contracts that it desires to put at issue.

In its response, Lexmark asserts that it has identified the specific contract at issue and has described how the contract has been breached. Lexmark states that its Prebate agreement is the contract at issue and further maintains that Static Control is fully aware of the specific contract at issue. However, Static Control argues that Lexmark must identify both the specific contract and the specific persons or entities that it believes breached the Prebate agreement.

## II. ANALYSIS

Under Kentucky law, a plaintiff must establish the following in order to prove a claim of tortious interference with contractual relations: (1) the existence of a contract; (2) defendant's knowledge of this contract; (3) that it intended to cause its breach; (4) its conduct caused the breach; (5) this breach resulted in damages; and (6) defendant had no privilege or justification to excuse its conduct. *CMI, Inc. v. Intoximeters, Inc.*, 918 F.Supp. 1068, 1079 (W.D. Ky. 1995). Furthermore, courts often require a plaintiff to identify at least one "third party" in order to state a claim. *See, e.g., International Travel Arrangers v. NWA, Inc.*, 991 F.2d 1389, 1405 (8th Cir.1993) ("[T]he mere general loss of possible unspecified customers does not establish the tort of intentional interference with prospective economic relations under Minnesota law."); *Morton v. Rank America, Inc.*, 812 F.Supp. 1062, 1075 (C.D.Cal.1993) (dismissing intentional interference with prospective advantage claim where plaintiffs failed to identify any third party with whom it had a "legal relationship"); *Masco Contractor Services East, Inc. v. Beals*, 279 F.Supp.2d 699, 709 (E.D. Va. 2003) (the first element that a party claiming under [tortious interference] must prove is the existence of some specific contract or relationship").

In *Commercial Data Servers, Inc. v. International Business Machines Corp.*, 166 F.Supp.2d 891 (S.D.N.Y. 2001), the plaintiff alleged claims of tortious interference with

2

prospective business relations because the defendant intimidated "value-added resellers" into not selling plaintiff's product. The district court found that the plaintiff's complaint only generally referred to plaintiff's relationship with value-added resellers without identifying any particular value-added resellers. The court concluded that the allegation was far too vague to support a claim for tortious interference. *Id.* at 898 (citing *Minnesota Mining Mfg. Co. v. Graham-Field, Inc.*, No. Civ A. 96-3839, 1997 WL 166497, at *7 (S.D.N.Y.1997) (dismissing claim where claimant alleged interference with business relations with its "customers" without identifying any specific customers); *Kramer v. Pollock-Krasner Foundation*, 890 F.Supp. 250, 258 (S.D.N.Y. 1995) (dismissing tortious interference claim where plaintiff alleged interference with potential contracts with "galleries", "dealers" and "unnamed individuals and entities" without identifying any of them specifically)). Since the plaintiff failed to specifically identify any resellers, the *Commercial Data Servers* court dismissed plaintiff's claim for tortious interference.

In the instant case, in support of its interference with contractual relations claims, Lexmark has stated, "The Prebate/Cartridge Return Program license/agreement is a valid contract between Lexmark and purchasers of Prebate/Cartridge Return Program toner cartridges." Such a general reference to its relationship with its customers, however, as stated in *Commercial Data Servers*, is not sufficient to maintain a claim of tortious interference. During a Rule 30(b)(6) deposition, Lexmark claims that it identified a few customers it alleges breached the Prebate agreement. Lexmark, however, also contends that it is not necessary to identify each and every Lexmark customer that has committed a breach in order to assert claims for tortious interference.

Contrary to Lexmark's assertions, as discussed above, courts require that a party claiming

3

tortious interference must prove the existence of specific relationships. In order to state a claim for tortious interference, Lexmark must identify each customer who breached the Prebate agreement because of the counterclaim defendants' tortious interference. Lexmark's claims of tortious interference are, thus, limited to the contracts with specified customers. In order for Static Control and the other counterclaim defendants to conduct discovery on these specified contracts, the Court will order Lexmark to disclose a list of specified customers who breached the Prebate agreement. Therefore, the Court believes that a Rule 26 conference is unnecessary at this time, but will order Lexmark to provide to the counterclaim defendants a list of each customer it contends committed a breach of the Prebate agreement because of Static Control's or other counterclaim defendants' alleged tortious interference.

Based on the foregoing, the Court being otherwise fully and sufficiently advised,

HEREBY ORDERS that:

[1] plaintiff and counterclaim defendant Static Control Components, Inc.'s motion for expedited Rule 16 conference [DE #196] is GRANTED in part, and DENIED in part as stated herein; and

[2] defendant and counterclaim plaintiff Lexmark International, Inc. is hereby ORDERED to produce a list of customers, within thirty (30) days from the date of this opinion and order, that it alleges has committed a breach of its Prebate agreement which form the basis of Lexmark's claims against the counterclaim defendants for tortious interference with contracts.

This 7th day of March, 2006.

KARL S. FORESTER, SENIOR JUDGE