Eastern District of Kentucky
FILED
MAR 3 1 2006
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 04-84-KSF

STATIC CONTROL COMPONENTS, INC.,     PLAINTIFF

V.      **MEMORANDUM OPINION AND ORDER**

LEXMARK INTERNATIONAL, INC., ET AL.,     DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

On February 24, 2004, plaintiff Static Control Components, Inc. (hereafter "SCC"), filed this declaratory judgment action against defendant Lexmark International, Inc. ("Lexmark"), seeking a judgment that SCC had not violated the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, in respect to Lexmark's copyrighted computer programs, and that SCC had not violated the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201 *et seq.*, (hereafter "DMCA").

In responding to SCC's complaint, on March 16, 2004, Lexmark asserted counterclaims against SCC for alleged patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, for alleged violations of the DMCA[1], and for alleged violations of the laws of the Commonwealth of Kentucky, including intentional interference with contractual relations, intentional interference with prospective economic advantage, and civil conspiracy. Lexmark seeks damages and injunctive relief. In its counterclaims, Lexmark also asserted claims against other "John Doe" counterclaim defendants which have subsequently been identified: NER Data Products, Inc.; Image Projections West, Inc.; Pendl Companies, Inc.; Wazana Brothers International, Inc., d/b/a Micro Solutions Enterprises, against whom SCC has asserted cross-claims.

Specifically, this action concerns (1) Lexmark's Toner Loading Program and Printer Engine Program Lexmark incorporated in Lexmark's T520/522 and T620/622 laser printers, (2) Lexmark's

---

[1] However, as a result of the Sixth Circuit's decision on appeal of the "'02 action," the parties agreed to file a stipulation to entry of summary judgment on Lexmark's DMCA claims.

Prebate toner cartridges and Regular toner cartridges used in Lexmark's T520/522 and T620/622 laser printers, and (3) SCC's "redesigned microchips, which Lexmark alleges contain unauthorized copies of its copyrighted Toner Loading Programs, as asserted in its counterclaims. In Counts 2 and 3 of the complaint, SCC seeks a determination that it has not violated the DMCA in respect to Lexmark's Toner Loading Programs and Printer Engine Programs, respectively.

Subsequently, Lexmark moved for a preliminary injunction, pursuant to Fed.R.Civ.P. 65, requesting the court to enjoin SCC from making, selling, distributing, importing, marketing, offering for sale, or otherwise trafficking in its "redesigned" microchips intended for use with Lexmark's T520/522, T620/622, and T630/632 printers and toner cartridges. This motion was later resolved by entry of an Agreed Order.

Thereafter, on September 12, 2005, the district court entered a Scheduling Order herein. [DE #145]. In numerical ¶ 13 thereof, the district court referred all discovery disputes to the Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A), for resolution.

This matter is before the court on Lexmark's motion to compel discovery from SCC. [DE #223]. This motion has been fully briefed and is ripe for review.

## II. LEXMARK'S MOTION TO COMPEL DISCOVERY

Lexmark has moved to compel SCC to supplement its answers to various Interrogatories, to produce additional documents in response to various Requests for Production of Documents, and to respond to various Requests for Admissions. In response, SCC asserts that based on the information it has received from Lexmark in response to its discovery requests to Lexmark, it has adequately responded to the discovery requests at issue and that Lexmark's motion to compel should be denied.

### Analysis

In considering this matter, the Magistrate Judge is mindful of the scope of discovery permitted by Fed.R.Civ.P. 26, subsequent to the 2000 amendment thereto, which permits "discovery

regarding any matter, not privileged, that is relevant to the claim or defense of any party, . . ." The disputed discovery requests and defendants' responses thereto are set out below:

### A. SCC's Internal and External Communications from Years 1997 - 2002

This portion of Lexmark's motion to compel concerns Lexmark's Document Request Nos. 34 and 140 (served in the '02 case) and Document Request Nos. 23, 24, 25, 58, 61, 65, and 147 (served in the '04 case). Lexmark asserts that SCC's production of internal and external communications for the years 1997-2002, inclusive, in response to the foregoing document requests is woefully inadequate, as evidenced by the fact that SCC produced fewer than 75 communications, including e-mails, from 1997-2001, and slightly more than 700 communications for the year 2002. Lexmark contends that the paucity of SCC's document production in response to these requests is suspect in view of the fact that from 1997 through 2002, SCC (1) widely disseminated anti-Prebate information in the marketplace; (2) conducted actual demonstrations on how to remanufacture Lexmark's Prebate cartridges; (3) developed and sold supplies for remanufacturing Prebate cartridges; and (4) publicly touted its plan to eliminate Lexmark's Prebate program, as seen from the following actions by SCC:

- In the early days of Lexmark's Prebate, SCC circulated what became known as the "Anti-Prebate Kit," which was a letter-writing campaign designed to persuade SCC's customers that Prebate was unenforceable. In particular, SCC's General Counsel, William L. London, wrote a letter to SCC's customers stating that "abandoned" Prebate cartridges can be remanufactured and that "SCC has been actively fighting the Prebate Program announced by Lexmark." (*See* Ex. D, Letter from Mr. London dated September 11, 1998).

- SCC's press release concerning the Anti-Prebate Kit stated "[W]e are totally committed to seeing the prebate program eliminated as a threat to both SCC's and our customers' futures. . . . you now have an immediate tool to address the growing Optra S® cartridge opportunity, and a powerful information piece that you can share with your customers[.]" (*See* Ex. E, SCC Press Release of October 8, 1998).

- In correspondence following the issuance of the Anti-Prebate Kit, Lexmark's then Corporate Counsel relayed that one of SCC's remanufacturing demonstrations included a statement by the instructor that remanufacturers should "rub off" the Prebate terms on empty cartridges. (*See* Ex. F, Letter from Kunz of November 24, 1998).

3

- SCC's marketing campaign for its Smartek microchips shows that SCC intentionally designed its microchips to defeat Prebate, interfere with Lexmark's single-use license agreement, and interfere with Lexmark's prospective economic advantage. SCC's President stated that the development of the microchips was the "highest priority since the release of [the T520/620] printers beginning in March of 2001." (*See* Ex. G, Recharger Magazine Article of October 10, 2002).

In further support of its motion to compel the production of SCC's communications from 1997 - 2002, Lexmark argues that the foregoing information listed above and the other documents responsive to these particular document requests are relevant to nearly every claim asserted herein. For example, Lexmark's claims against SCC, among others, are for (1) infringement of the patents covering Lexmark's toner cartridges, (2) copyright infringement of the programs contained on Lexmark's microchips, and (3) inducing violations of Lexmark's Prebate agreement. Additionally, Lexmark points out that SCC's claims against it are for patent misuse and restraint of trade in respect to the Prebate program. For these reasons, Lexmark asserts that all of SCC's internal and external communications documents are relevant and discoverable under Rule 26.

In response, SCC submits that it has already produced "and/or has diligently been processing for production all relevant documents" responsive to the document requests at issue. *See* SCC's Memorandum in Opposition to Lexmark's Motion to Compel, p. 1 - DE #238. Therefore, SCC contends that Lexmark's motion to compel should be denied as moot. As to the small number of documents produced concerning its communications from 1997-2002, SCC points out that it explained to Lexmark that during this time period it had limited capacity to send, receive, and manage e-mails in that it only had one computer designated to receive and send e-mails. SCC states that in response to these document requests, it has produced documents maintained in the ordinary course of business and that it has not destroyed documents for the years 1997-2002.

The Magistrate Judge is not completely persuaded by SCC's argument because SCC's statement that it has produced all "relevant" documents responsive to the document requests at issue is somewhat ambiguous in that its statement that it had produced all "relevant" documents raises the question of whether SCC did not produce some documents that might have been responsive to these

4

document requests because SCC deemed them to be "irrelevant." Thus, SCC's response invites Lexmark to speculate that while SCC produced *some* documents, SCC may also have withheld other documents on relevancy grounds, a determination that should be made by the court, perhaps at a later juncture, but not by SCC at this time. Consequently, the Magistrate Judge concludes that Lexmark's motion to compel SCC to produce all documents concerning its internal and external communications from 1997-2002, inclusive, should be granted.

**B.      Documents relating to SCC's efforts to defeat Lexmark's Prebate program**

Lexmark states that Document Request Nos. 135, 136, 138, and 143 (served in the '02 case) and Document Request Nos. 147 and 148 (served in the '04 case) request documents and communications regarding SCC's efforts to eliminate Lexmark's Prebate program and that SCC has produced virtually no documents relating to its "Anti-Prebate Kit" and other anti-prebate activities responsive to these document requests. Lexmark submits that given SCC's activities over the years in respect to its goal to eliminate Lexmark's Prebate program, it strains credulity that no documents exist that are responsive to these requests or that, if they once existed, they no longer exist. Lexmark also asserts that due to its voluntary disclosure of documents, correspondence, or communications relating to its "Anti-Prebate Kit" and other anti-prebate activities to third parties, SCC has waived the attorney/client privilege and work product doctrine as to these documents.

In response, SCC states that it has produced documents responsive to these requests, that it continues to search for additional documents responsive to these requests, and that it will produce any additional documents found. SCC also counters that Lexmark's complaints about the "anti-prebate kit" are unfounded in that Lexmark has incorrectly presumed it is going to assert that its "anti-prebate kit" documents are privileged, when in fact, SCC is not going to assert that its "anti-prebate kit" documents are privileged. Consequently, SCC also states that it is unnecessary for the court to rule that it has waived its attorney/client and/or work product doctrine privileges to the "anti-prebate documents." For all of these reasons, SCC contends that Lexmark's motion to compel should be denied.

5

The record refutes SCC's claim that it has not asserted a privilege concerning documents relating to Lexmark's Prebate Program, as evidenced by the following two excerpts from SCC's letter to Lexmark dated November 11, 2005:

> **Lexmark Request for Production No. 34, Lexmark's Prebate program.** SCC has produced all the responsive documents it possesses. To the extent that Lexmark seeks documents incorporating SCC's legal opinions or conclusions of the investigations of SCC's counsel or those working for SCC's counsel, *the attorney-client privilege protects many responsive documents from disclosure*. . . .
>
> . . .
>
> **Lexmark's Request for Production Nos. 135-140, Documents that pertain to Lexmark's Prebate program and the terms and conditions relating thereto.** SCC has produced all the responsive documents it possesses with respect to Lexmark Request for Production No. 34, which are the same documents that Request Nos. 135-140 seek. *SCC has withheld those documents subject to the attorney-client and/or work product privileges.*

*See* Exhibit A, pp. 3, 5 to Lexmark's Reply Memorandum in Support of its Motion to Compel SCC's Responses to Lexmark's Discovery Requests - DE #241.

As seen from the foregoing correspondence from SCC's counsel to Lexmark's counsel, SCC has expressly stated that some documents responsive to Document Request Nos. 135, 136, 138, and 143 (served in the '02 case) were withheld from production because they were privileged; however, SCC did not provide Lexmark with a corresponding privilege log identifying those documents which SCC had declined to produce based on SCC's conclusion that they were privileged. Asserting a privilege to certain documents without providing a privilege log identifying those documents is a violation of Fed.R.Civ.P. 26(b)(5). *See* Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 26(b)(5) ("To withhold materials [as privileged or work product] without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection.").

Thus, SCC has made inconsistent statements concerning its "anti-prebate kit" documents. Its response to Lexmark's motion to compel that it has not declined to produce documents concerning Lexmark's Prebate program on the grounds that they are privileged is diametrically

opposed to the statements made in its letter to Lexmark's counsel dated November 11, 2005. Irrespective of SCC's contrary positions taken in respect to the "anti-prebate kit" documents and all other documents relative to Lexmark's Prebate program, the Magistrate Judge concludes that SCC has waived any attorney/client privilege and/or work product doctrine protection it may have had to these documents by (1) its voluntary disclosure of the opinions of its counsel and other attorneys concerning Lexmark's Prebate program to third parties (*see In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 302-03 (6th Cir. 2002), and (2) its failure to provide Lexmark with a privilege log identifying those documents withheld and the particular privilege asserted thereto.

For all of the foregoing reasons, Lexmark's motion to compel will be granted as to those documents relating to SCC's efforts to defeat Lexmark's Prebate program.

### C. Documents and communications relating to SCC's design and development of its microchips

Lexmark states that Document Request Nos. 2 and 90 (served in the '02 case) and Document Request No. 29 (served in the '04 case) seek documents and communications relating to SCC's design and development of its microchips that are used to remanufacture Lexmark's patented toner cartridges and that SCC has produced only a few boxes of documents responsive to these document requests. Lexmark notes that while SCC has at least twenty (20) engineers in its microchip design and development team, it has failed to produce drawings, design details, engineering notebooks, e-mails, or other data from that team that would be responsive to these discovery requests.

Lexmark also asserts that the requested information is relevant to its patent infringement and copyright infringement claims. Specifically, Lexmark states that this information will establish that (1) SCC's microchips were specifically engineered to be used with Lexmark's patented Prebate cartridges, and (2) SCC's engineers and design team members worked with remanufacturers to teach them how to remanufacture Lexmark's patented Prebate cartridges.

In response, SCC argues that Lexmark's motion to compel should be denied, notwithstanding Lexmark's assertions to the contrary, because SCC's documents and communications relating to

7

design and development of microchips are irrelevant to any cause of action in this case. More particularly, SCC counters:

> . . . the SCC microchips are basically off-the-shelf parts produced by major chip manufacturers (such as Texas Instruments) on which a customer like SCC can store its own software programs. And, with respect to the actual software code on the SCC microchips, SCC has fully responded to Request Nos. 2 and 90 (served in the '02 case) and Request No. 29 (served in the '04 case). Notably Lexmark has not contested anywhere that SCC has not produced to Lexmark complete copies of all of SCC's software code. Indeed, SCC believes that its production of its software code has been thorough. Lexmark's continued assertions to the contrary are improper. Thus, the requested documents simply are not relevant, and Lexmark's motion as to any such documents should be denied.

SCC's Opposition to Lexmark's Motion to Compel, p. 10 - DE #238.

In reply, Lexmark offers the following explanation as to how the requested information concerning SCC's microchips is relevant to several, disputed issues in this case:

> First, it is relevant to Lexmark's patent infringement claim against SCC. Here, SCC induces infringement of Lexmark's patents by selling microchips and providing instructions that allow remanufacturers to remanufacture and sell, *inter alia*, used Prebate cartridges in violation of Lexmark's single use Prebate license. 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer"). Design and development information, such as design details, engineering notebooks, e-mails, or other communications, will establish that SCC specifically designed its microchips to be used with Prebate cartridges, and therefore, meant to induce infringing uses of Lexmark's Prebate cartridges. In addition, such information will likely establish that SCC's engineers and design team member worked with remanufacturers to teach them how to use the microchips to remanufacture Lexmark's patented Prebate cartridges.
>
> Second, it is relevant to SCC's "non-infringing uses" claim. SCC alleges that its microchips can be used with other toner cartridges that allegedly do not violate Lexmark's patents. For example, SCC has alleged that its microchips allegedly can be used with non-Prebate cartridges. Documents regarding the design and development of SCC's microchips, however, will likely reveal that SCC's engineers knew, in fact, that there is no need to replace the original microchip [in] a non-Prebate Lexmark cartridge since such microchips can be used more than once without having to be replaced. SCC also claims that remanufacturers replace the original microchips on Lexmark's non-Prebate cartridges with SCC's microchips because SCC's microchips allegedly offer "enhanced functionality." SCC's design and development information will likely reveal that (1) the alleged "enhanced functionality" offers little or no benefit to the remanufacturer; and (2) SCC's statements regarding such alleged "enhanced functionality" are nothing more than a litigation-induced ploy to justify its illegal activity.
>
> Third, it is relevant to Lexmark's claim that SCC's previous generation microchips contain slavish copies of Lexmark's copyrighted computer programs. SCC's design and development information will reveal: (1) exactly what SCC's

8

engineers analyzed and copied during the development of SCC's microchip; and (2) that SCC's engineers knew, in fact, that they were copying copyrighted computer programs.

Lexmark's Reply Memorandum in Support of its Motion to Compel SCC's Responses to Lexmark's Discovery Requests, pp. 8-9 [DE #241]. (footnote omitted).

Based on Lexmark's detailed explanation of how the information concerning SCC's microchips is relevant, the Magistrate Judge concludes that the design and development documents vis-a-vis SCC's microchips may very well lead to the discovery of admissible evidence. For this reason, the documents requested would be within the scope of Fed.R.Civ.P. 26(b)(1). Therefore, Lexmark's motion to compel the production of documents concerning the design and development of SCC's microchips will be granted.

### D. The basis for SCC's non-infringement and invalidity contentions

Lexmark asserts that SCC has declined to provide it with any factual or legal basis for its claims that it has not infringed Lexmark's patents that are the subject of this action and/or that these same Lexmark patents are invalid. Specifically, Lexmark notes that SCC has declined to answer any of Lexmark's Interrogatories or Requests for Admissions relating to SCC's non-infringement and invalidity positions. Lexmark argues that if SCC contends that the subject patents owned by Lexmark are invalid and/or not infringed, then it is entitled to discover the factual and legal basis for these contentions in order to defend itself against those claims.

In response, SCC contends that it is unable to respond fully to Interrogatory Nos. 5-8 and to Request for Admission Nos. 34-283 until Lexmark provides it with the basis for its claims that SCC has infringed the patents at issue and that these patents are valid patents. SCC argues that Lexmark must do more than simply rely on the fact it is asserting its own patents against its own products to "prove" that the patents-in-suit read on the products at issue. In essence, SCC takes the position that it is unable to fully respond to these discovery requests until Lexmark provides it with complete responses to its discovery requests to Lexmark.

In reply, Lexmark counters that SCC's argument that it "has refused to respond" and "failed to respond meaningfully," (SCC's Opposition to Lexmark's Motion to Compel, p. 12) to SCC's interrogatories relating to Lexmark's infringement claims is unfounded because Lexmark not only responded, but provided a detailed explanation of how Lexmark's toner cartridges satisfy each patent claim limitation of each asserted claim. Lexmark also notes that SCC's discussion concerning the '015 encoder wheel patent in which SCC was able to identify one potentially disputed claim limitation proves that Lexmark has provided sufficient information about Lexmark's infringement contentions so that SCC can, in turn, identify claim limitations in dispute and respond to Interrogatory Nos. 5-8 and Request for Admissions Nos. 34-283. Lexmark further points out that it has identified three direct infringers of its patents (SCC and SCC's customers such as MSE, Pendl, and NER) who use SCC's microchips to illegally remanufacture and resell Lexmark toner cartridges.

The Magistrate Judge is persuaded by Lexmark's reply that it has provided SCC with sufficient information concerning the basis for its claims that the patents-in-suit are valid and that these patents have been infringed. Therefore, Lexmark's motion to compel SCC to respond fully to Interrogatory Nos. 5-8 and to Request for Admission Nos. 34-283 will be granted.

E.   **SCC's updated summary sales and financial information**

Lexmark also claims that SCC has failed to respond to its discovery requests for updated summary sales and financial information concerning SCC's products that are used by SCC's customers to remanufacture Lexmark toner cartridges. Lexmark explains that these various discovery requests (document requests and interrogatories) seek the sales, revenue, and related financial information, including forecasts for: (1) the replacement microchips that SCC makes and sells that enable Lexmark's Prebate toner cartridges to be remanufactured, and (2) other products that SCC makes and sells that are used in conjunction with SCC's replacement microchips.

Lexmark submits that the requested information is relevant to Lexmark's claims and its defenses to SCC's antitrust allegations. Elaborating on its relevancy argument, Lexmark notes that while the use of SCC's microchips to remanufacture Prebate toner cartridges is the focus of many

10

of Lexmark's claims, the microchips do not stand alone, as there are many other products sold by SCC (such as toner and certain encoder wheels), for which Lexmark has patent infringement claims, that are also necessary to remanufacture Lexmark's Prebate toner cartridges. Lexmark also asserts that SCC often sells its microchips and other products for remanufacturing to its customers together or as "convoyed" sales and that the requested financial information for these "convoyed" sales is relevant to its damages and also relevant to SCC's alleged damages concerning its antitrust claims.

Lexmark advises that with the exception of a 138-page spreadsheet containing SCC's summary sales information produced in response to Lexmark's Expedited Discovery requests served in 2004, SCC has failed to timely supplement its responses in that it has not provided Lexmark with updated summary sales and other financial information in a manageable and usable form. In its motion to compel, Lexmark seeks an order compelling SCC to produce, in an electronic format, the following information:

1. Sales figures, including the dollar and unit volumes, date of sale, type of microchip, and all customer identifying information, for all sales (including forecasted sales) of SCC replacement microchips at issue in this case (including but not limited to the Smartek chips the Optra chips);

2. Sales figures, including the dollar and unit volumes, date of sale, type of product, and all customer identifying information, for all sales (including forecasted sales) of SCC products sold for use in remanufacturing Lexmark Prebate toner cartridges.

3. Gross and net revenue calculations for the sales figures produced pursuant to paragraph 1 above; and,

4. Gross and net revenue calculations for the sales figures produced pursuant to paragraph 2 above.

In response, SCC advises that on February 28, 2006, subsequent to the filing of Lexmark's motion to compel, it produced its summary sales information in electronic form to Lexmark and that it has agreed to produce updated summary sales information to Lexmark in electronic format. SCC also states that to the extent there is other financial information that Lexmark wishes to receive in electronic format, it will consider any such reasonable request for such documents and/or for any such document that may contain, in electronic form, some additional functionality reasonably related

to the substance of the document, under the terms and conditions proposed by Lexmark and set forth in its letter of February 16, 2006, from Stefan Meisner to Jason Shull (*See* Exhibit D to <u>SCC's Memorandum in Opposition to Lexmark's Motion to Compel</u> response in opposition to Lexmark's motion to compel - DE #238). Therefore, SCC submits that Lexmark's motion to compel the production of updated summary sales information and other financial information is moot.

In its reply, Lexmark takes no issue with the representations made by SCC in respect to the production of updated summary sales information and other financial information. Thus, it appears that this request is moot.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Lexmark's motion to compel discovery from SCC [DE #223] is **GRANTED IN PART** and **DENIED IN PART**, as follows:

a. SCC is directed to produce all documents concerning its internal and external communications from 1997-2002, inclusive, that are responsive to Document Request Nos. 34 and 140 (served in the '02 case), and Document Request Nos. 23, 24, 25, 58, 61, 65, and 147 (served in the '04 case). If SCC contends that all responsive documents have been produced, SCC is directed to make that representation in its compliance response. If SCC claims that it no longer has documents responsive to these discovery requests, then SCC is directed to identify (1) the date on which such communications ceased to exist, (2) the circumstances under which they ceased to exist, and (3) all persons having knowledge of the circumstances under which they ceased to exist.

b. SCC is directed to produce those documents and communications relating to SCC's efforts to defeat Lexmark's Prebate program.

c. SCC is directed to produce all documents that are responsive to Document Request Nos. 2 and 90 (served in the '02 case), and Document Request No. 29 (served in the '04 case) concerning SCC's design and development of its microchips that are used to remanufacture Lexmark's patented toner cartridges. If SCC contends that all responsive documents have been produced, SCC is directed to make that representation in its compliance response. If SCC claims that it no longer has

12

documents responsive to these discovery requests, then SCC is directed to identify (1) the date on which such documents ceased to exist, (2) the circumstances under which they ceased to exist, and (3) all persons having knowledge of the circumstances under which they ceased to exist.

    d. SCC is directed to respond fully to Interrogatory Nos. 5-8 and to Request for Admission Nos. 34-283 and to provide Lexmark with the factual or legal basis for its claims that it has not infringed Lexmark's patents that are the subject of this action and/or that these same Lexmark patents are invalid.

    e. Lexmark's motion to compel SCC to produce updated summary sales information and other financial information is **DENIED AS MOOT**.

    2. SCC is given twenty (20) days from the date of this Order in which to supplement its discovery responses as set out above in greater detail.

This 31st day of March, 2006.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE