Eastern District of Kentucky
**FILED**

APR 0 5 2006

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 04-84-KSF

STATIC CONTROL COMPONENTS, INC.,                    PLAINTIFF/COUNTERCLAIM
DEFENDANT

V.

LEXMARK INTERNATIONAL, INC.,                        DEFENDANT/COUNTERCLAIM
PLAINTIFF

V.

WAZANA BROTHERS INTERNATIONAL, INC.,
d/b/a MICRO SOLUTIONS ENTERPRISES, PENDL
COMPANIES, INC., and NER DATA PRODUCTS, INC.,       COUNTERCLAIM
DEFENDANTS

## MEMORANDUM OPINION AND ORDER

* * * * * * * * * *

## I. INTRODUCTION

On February 24, 2004, plaintiff Static Control Components, Inc. (hereafter "SCC"), filed this

declaratory judgment action against defendant Lexmark International, Inc. ("Lexmark"), seeking a

judgment that SCC had not violated the Copyright Act, 17 U.S.C. §§ 101 et seq., in respect to

Lexmark's copyrighted computer programs, and that SCC had not violated the Digital Millennium

Copyright Act, 17 U.S.C. §§ 1201 et seq., (hereafter "DMCA").

In responding to SCC's complaint, on March 16, 2004, Lexmark asserted counterclaims

against SCC for alleged patent infringement arising under the patent laws of the United States, 35

U.S.C. § 1, et seq., alleged violations of the DMCA[1], and for alleged violations of the laws of the

Commonwealth of Kentucky, including intentional interference with contractual relations,

intentional interference with prospective economic advantage, and civil conspiracy. Lexmark seeks

---

[1] However, as a result of the Sixth Circuit's decision on appeal of the "'02 action," the
parties agreed to file a stipulation to entry of summary judgment on Lexmark's DMCA claims.

damages and injunctive relief. In its counterclaims, Lexmark also asserted claims against other "John Doe" counterclaim defendants which have subsequently been identified: NER Data Products, Inc.

Specifically, this action concerns (1) Lexmark's Toner Loading Program and Printer Engine Program Lexmark incorporated in Lexmark's T520/522 and T620/622 laser printers, (2) Lexmark's Prebate toner cartridges and Regular toner cartridges used in Lexmark's T520/522 and T620/622 laser printers, and (3) SCC's "redesigned microchips, which Lexmark alleges contain unauthorized copies of its copyrighted Toner Loading Programs, as asserted in its counterclaims. In Counts 2 and 3 of the complaint, SCC seeks a determination that it has not violated the DMCA in respect to Lexmark's Toner Loading Programs and Printer Engine Programs, respectively.

Subsequently, Lexmark moved for a preliminary injunction, pursuant to Fed.R.Civ.P. 65, requesting the court to enjoin SCC from making, selling, distributing, importing, marketing, offering for sale, or otherwise trafficking in its "redesigned" microchips intended for use with Lexmark's T520/522, T620/622, and T630/632 printers and toner cartridges. This motion was later resolved by entry of an Agreed Order.

Thereafter, on September 12, 2005, the district court entered a Scheduling Order herein. [DE #145]. In numerical ¶ 13 thereof, the district court referred all discovery disputes to the Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A), for resolution.

This matter is before the court on SCC's motion to compel discovery from Lexmark. [DE #233]. This motion has been fully briefed and is ripe for review.

## II. SCC'S MOTION TO COMPEL DISCOVERY

SCC has moved for an order compelling Lexmark to fully and adequately respond to (1) certain of SCC's Fourth Set of Requests for Production of Documents and Things, served on May 28, 2004 in the "02 Case," (2) SCC's Fifth Set of Requests for Production of Documents and Things, served on October 22, 2004 in the "02 Case," (3) SCC's Third Set of Requests for Production of

2

Documents and Things, served on December 12, 2005 in the "04 Case," and SCC's Interrogatory

Nos. 24 and 25 in the "04 Case."

SCC motion to compel has been fully briefed and is ripe for review.

### Analysis

In considering this matter, the Magistrate Judge is mindful of the scope of discovery

permitted by Fed.R.Civ.P. 26, subsequent to the 2000 amendment thereto, which permits "discovery

regarding any matter, not privileged, that is relevant to the claim or defense of any party, . . ." The

disputed discovery requests and defendants' responses thereto are set out below:

**A.**    **Requests for Production of Documents**

SCC states that in a series of Requests for Production of Documents ("RFP") served on

Lexmark on May 28, 2004, October 22, 2004, and December 13, 2005, it requested following

documents from Lexmark:

(1)    records comprising Lexmark's "pre-sale customer inquiry database," (*see* RFP No. 67 of SCC's Fourth Set of Requests for Production and RFP Nos. 121 and 122 of SCC's Fifth Set of Requests for Production;

(2)    documents relating to Lexmark's printer and toner cartridge sales through computer manufacturer, Dell, as well as market share analysis from Lexmark that include its printer and toner cartridge sales through Dell (*see* RFP Nos. 115-120 and 129 of SCC's Third Set of Requests for Production;

(3)    documents relating to Lexmark's toner cartridge sales of toner cartridges for use in Hewlett-Packard laser printers, as well as market share analyses in the markets for replacement Hewlett-Packard toner cartridges (*see* RFP Nos. 112-114 and 120-132 of SCC's Third Set of Requests for Production; and,

(4)    documents relating to the named inventors in the patents Lexmark is asserting against SCC (*see* RFP No. 149 of SCC's Third Set of Requests for Production.

**1.**    **RFP No. 67 of SCC's Fourth Set of Requests for Production and RFP Nos. 121 and 122 of SCC's Fifth Set of Requests for Production**

SCC states that this category of document requests is comprised of customer questions,

complaints, comments, and communications concerning Lexmark's purported "Prebate agreement"

for the toner cartridge at issue herein. SCC advises that Lexmark's "Prebate agreement" lies at the

heart of Lexmark's claim for intentional interference with contractual relations and prospective

3

business advantage and that Lexmark claims that this "Prebate agreement" is also a patent license that limits customers' use of the cartridge and proscribes their ability to recycle or remanufacture Lexmark cartridges by any other entity. SCC submits that these requested documents are relevant, non-privileged, within Lexmark's possession, easily producible, and not available from another source.

SCC states that prior to June 30, 2004, Lexmark advised SCC that as many as 60,000 records on its "pre-sale customer inquiry database" could be responsive to these document requests, since those records contained customer inquiries about the purported "Prebate agreement" placed before deciding whether to purchase "Prebate" cartridges and Lexmark's representations about the terms and purposes of Lexmark's "Prebate agreement" made in response to those customer inquiries. SCC states that Lexmark has declined to produce this database on the grounds that it is overly burdensome.

In this motion to compel, SCC requests that Lexmark back up its database containing the documents requested and to produce the database to SCC, with SCC bearing the burden of extracting any data so as to eliminate any undue burden on Lexmark.

In responding to SCC's motion to compel, Lexmark argues that SCC's motion to compel the production of its "pre-sale customer inquiry database" is moot for the following reasons: (1) it has already produced this information to SCC for that portion of the database that is dated *after* November 2004, and (2) for that portion of this database that predates November 2004, it has offered to make this information available to SCC for its review and inspection at Lexmark, under certain terms and conditions, and that SCC has not availed itself of Lexmark's offer. Explaining why that portion of its database predating November 2004 was not produced to SCC, Lexmark advises that for those records *prior to* November 2004, it maintained its pre-sale customer inquiry database: (a) in a form that is not text-searchable; (b) using software that is no longer commercially available; and (c) software which it modified for its own use. Therefore, "production of relevant records from

4

Lexmark's database prior to November 2004 in hard copy format was not reasonably possible." Lexmark's Memorandum in Opposition to SCC's Motion to Compel," p. 2 [DE #240].

Nevertheless, Lexmark states that on three separate occasions (September 30, 2005, October 6, 2005, and February 22, 2006), it offered to make its database for the period of time *predating* November 2004 available to SCC under the following conditions: (1) at Lexmark's facilities; (2) with the ability for SCC to print from the database (which printouts were to be left with Lexmark's counsel for review, Bates-numbering and production thereafter); (3) all information in the database (because it is proprietary to Lexmark) would be treated as "Outside Counsel Only" per the Protective Order governing discovery in this case; and (4) access to the database was offered without waiver of the attorney-client privilege/work-product doctrine as to any material in the database. Lexmark submits that since SCC did not avail itself of Lexmark's offer concerning the *pre-November 2004* database, SCC's motion to compel is moot.

In reply, SCC counters that the above-referenced plan is unacceptable for several reasons, but chiefly because Lexmark represents that "the only way to retrieve information from this database is by inputting a specific caller's name, phone number, or call reference number (which is an internal designation created by Lexmark.)" *See* Exhibit AA to SCC's Motion to Compel [DE #233]. SCC points out that it does not have these names and numbers it would need to obtain any information from this database; therefore, "review" of this information on Lexmark's terms would be fruitless, since it would be unable to gain *meaningful access* to the data.

The Magistrate Judge concludes that Lexmark is obligated to produce its *pre-November 2004* database of this information to SCC in a reasonably usable form for SCC. *See* 8A Wright & Miller, *Federal Practice and Procedure*, § 2218 (2d Ed. 1994). The Federal Rules do not permit Lexmark to hide behind its peculiar computer system as an excuse for not producing this information to SCC. *See Dunn v. Midwestern Indemnity*, 88 F.R.D. 191, 197 (S.D. Ohio 1980); *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 75 (D. Mass. 1976). Thus, SCC's motion to compel the production of the database *predating* November 2004 will be granted; however, since that portion of the

5

database *predating* November 2004 is proprietary to Lexmark, the Magistrate Judge also concludes that it should be categorized as "Outside Counsel Only" information and produced under the terms of the Protective Order governing discovery in this case.

**2.     RFP Nos. 115-120 and 129 of SCC's Third Set of Requests for Production**

SCC states that this category of document requests is limited to plans, communications and analyses involving the well-defined business relationship between Lexmark and Dell, a reseller of the Lexmark-manufactured printers and toner cartridges at issue herein and that RFP Nos. 115-120 and 129 target information probative of its claims that Lexmark conspired with resellers of its toner cartridges and printers to monopolize markets in Lexmark-manufactured toner cartridges and toner cartridge components. SCC submits that these document requests are reasonable and designed to elicit documents that are relevant, non-privileged, within Lexmark's possession, easily producible, and not available from another source.

In response, Lexmark states that after much discussion with SCC, it will provide SCC with the requested Dell documents and anticipates that such production will occur by April 1, 2006; therefore, Lexmark submits that SCC's motion to compel the production of the Dell documents requested by RFP Nos. 115-120 and 129 is moot.

In reply, SCC acknowledges Lexmark's agreement to produce the Dell documents by April 1, 2006; however, SCC takes Lexmark to task for being dilatory and protracting discovery in its delayed decision to produce the Dell documents.

Thus, based on Lexmark's agreement to produce the Dell documents, the Magistrate Judge concludes that SCC's motion to compel the production of the Dell documents requested by RFP Nos. 115-120 and 129 may be moot; however, in the event that Lexmark did not produce the Dell documents to SCC on or before April 1, 2006, SCC's motion to compel will be granted.

**3.     RFP Nos. 112-114 and 120-132 of SCC's Third Set of Requests for Production**

SCC states that this category of document relates to Lexmark's remanufacture of replacement toner cartridges for Hewlett-Packard printers, in competition against both Hewlett-Packard and the

same third party remanufacturers who seek to remanufacture Lexmark cartridges. SCC states that unlike the market for Lexmark replacement cartridges, the market for Hewlett-Packard replacement cartridges (in which Lexmark competes) operates free of the anticompetitive restraints of a "Prebate" agreement and free of technologies (like the Lexmark toner cartridge microchips) designed to eliminate third party competition. SCC states that it tailored RFP Nos. 112-114 and 120-132 to discover admissible evidence concerning its antitrust claims in which SCC compares the market for Hewlett-Packard replacement toner cartridges with the market for Lexmark replacement toner cartridges. SCC submits that these document requests are designed to elicit documents that are relevant, non-privileged, and within Lexmark's control; therefore, Lexmark should be compelled to produce them.

In response, Lexmark states that after much discussion with SCC, it will provide SCC with the requested Hewlett-Packard documents and anticipates that such production will occur by April 1, 2006; therefore, Lexmark submits that SCC's motion to compel the production of the Hewlett-Packard documents requested by RFP Nos. 112-114 and 120-132 is moot.

In reply, SCC acknowledges Lexmark's agreement to produce the Hewlett-Packard documents by April 1, 2006; however, SCC takes Lexmark to task for being dilatory and protracting discovery in its delayed decision to produce the Hewlett-Packard documents.

Thus, based on Lexmark's agreement to produce the Hewlett-Packard documents, the Magistrate Judge concludes that SCC's motion to compel the production of the Hewlett-Packard documents requested by RFP Nos. 112-114 and 120-132 may be moot; however, in the event that Lexmark did not produce the Hewlett-Packard documents to SCC on or before April 1, 2006, SCC's motion to compel will be granted.

**4.    RFP No. 149 of SCC's Third Set of Requests for Production**

SCC states that this category of document relates to the inventors of the patents Lexmark has accused it of infringing and that the requested documents include "resumes, curricula vitae, employment files, evaluations, personnel files, and employment contracts." SCC states that these

document requests (a) are typical in patent cases and are relevant for potential depositions of the patent inventors concerning the history of the inventions, and (b) are reasonably related to potential defenses to the validity of the patents. Therefore, Lexmark should be compelled to produce them.

In response, Lexmark states that it produced the requested inventor documents on March 10, 2006; thus, Lexmark submits that SCC's motion to compel the production of the inventor documents requested by RFP No. 149 is moot.

Lexmark having produced the inventor documents on March 10, 2006, SCC's motion to compel the production of the inventor documents is moot.

**B.     Interrogatory Nos. 24 and 25**

SCC states that Lexmark claims that SCC directly infringes on Lexmark's patents by SCC's sale and/or distribution of encoder wheels and that it indirectly infringes twenty-one (21) of Lexmark's patents by SCC's manufacture and sale of microchips for use with refilled toner cartridges. SCC also states that it propounded Interrogatory Nos. 24 and 25 in the "04 Case" to Lexmark to obtain relevant information concerning: (a) the identification of the specific patent claims it accuses SCC of infringing, (b) the claims that Lexmark contends cover its own products (since only such claims can be indirectly infringed in this case), and (c) how Lexmark interprets the scope of these identified claims.

SCC further states that these two interrogatories were designed to discover Lexmark's basis for asserting that SCC directly or indirectly infringed those claims. SCC asserts that it is entitled to know (1) exactly what claims of what patents it is being accused of infringing, (2) what Lexmark believes the technical language of its patent claims means with respect to the accused products, and (3) how the claims of the asserted patents read on the patents at issue. SCC submits that Lexmark's full and complete responses to these two interrogatories are essential to SCC's efforts to defend itself against Lexmark's claims of infringement and to narrow the issues and claims in this case. SCC contends that Lexmark's answers to its Interrogatory Nos. 24 and 25 are wholly inadequate and that

Lexmark should be compelled to supplement its answers to these Interrogatories by stating how it believes SCC has infringed its patents.

In response, Lexmark counters that SCC's motion to compel should be denied for a number of reasons, *viz.*, (1) that Lexmark has provided detailed infringement contentions to SCC that more than satisfy the Local Patent Rules that have been adopted by five different district courts,[2] (2) SCC's complaints regarding Lexmark's claim interpretations are misplaced and premature, and (3) requiring Lexmark to interpret claim limitations not in dispute, as SCC has requested, is inconsistent with the Local Patent Rules of five other district courts that have adopted local patent rules. Lexmark also points out that in an effort to resolve this particular discovery dispute extrajudicially, it proposed a four-step procedure for the parties to follow that would enable the parties to meaningfully identify and frame the patent issues amongst all parties and that SCC rejected such proposal. For all of these reasons, Lexmark argues that SCC's motion to compel should be denied.

In reply, SCC insists that Lexmark's answers to Interrogatory Nos. 24 and 25 requesting Lexmark's infringement theories are wholly inadequate, as evidenced by the case law on which Lexmark relies in its response to this motion to compel, and that Lexmark is simply attempting to shift the burden to SCC of proving its affirmative defenses of noninfringement and invalidity *before* Lexmark satisfies its burden of proving infringement.

In considering this matter, the Magistrate Judge has reviewed the four-step process outlined by Lexmark and concludes that the parties should first employ this four-step process in their efforts to resolve this discovery dispute concerning Lexmark's answers to Interrogatory Nos. 24 and 25.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion to compel Lexmark to fully and adequately respond to (1) certain of SCC's Fourth Set of Requests for Production of Documents and Things, served on May 28, 2004 in the "02 Case," (2) SCC's Fifth Set of Requests for Production of Documents and Things, served

---

[2] The United States District Court for the Eastern District of Kentucky has not adopted Local Patent Rules.

on October 22, 2004 in the "02 Case," (3) SCC's Third Set of Requests for Production of Documents and Things, served on December 12, 2005 in the "04 Case," and to supplement its answers to SCC's Interrogatory Nos. 24 and 25 served in the "04 case" [DE #233] is **GRANTED IN PART** and **DENIED IN PART**, as follows:

a. plaintiff's motion to compel Lexmark to produce additional documents in response to RFP No. 67 of SCC's Fourth Set of Requests for Production and RFP Nos. 121 and 122 of SCC's Fifth Set of Requests for Production concerning the production of the Lexmark's database *predating* November 2004 is **GRANTED**. However, since that portion of the database *predating* November 2004 is proprietary to Lexmark, this information should be categorized as "Outside Counsel Only" information and produced to SCC under the terms of the Protective Order governing discovery in this case.

b. plaintiff's motion to compel the production of the Dell documents requested by RFP Nos. 115-120 and 129 of SCC's Third Set of Requests for Production is **DENIED AS MOOT** if Lexmark produced the Dell documents by April 1, 2006, as promised; however, in the event that Lexmark did not produce the Dell documents to SCC on or before April 1, 2006, SCC's motion to compel the production of the Dell documents is **GRANTED**.

c. plaintiff's motion to compel the production of the Hewlett-Packard documents requested by RFP Nos. 112-114 and 120-132 of SCC's Third Set of Requests for Production is **DENIED AS MOOT** if Lexmark produced the Hewlett-Packard documents by April 1, 2006, as promised; however, in the event that Lexmark did not produce the Hewlett-Packard documents to SCC on or before April 1, 2006, SCC's motion to compel the production of the Hewlett-Packard documents is **GRANTED**.

d. plaintiff's motion to compel the production of the inventor documents requested by RFP No. 149 of SCC's Third Set of Requests for Production is **DENIED AS MOOT**.

e. plaintiff's motion to compel Lexmark to supplement its answers to SCC's Interrogatory Nos. 24 and 25 served in the "04 Case" is **DENIED WITHOUT PREJUDICE** to plaintiff's right

to renew in the event plaintiff is unable to obtain the information it seeks by utilizing the following procedure:

> (i) Lexmark shall first identify each independent and dependent claim that Lexmark contends is infringed, and then produce engineering drawings and specifications, which will enable SCC independently to confirm that the asserted claims cover Lexmark's corresponding cartridges;
>
> (ii) SCC shall then identify for each cartridge each claim limitation that SCC contends is not satisfied or is otherwise disputed;
>
> (iii) Lexmark and SCC shall then mutually exchange a list of claim limitations that need to be construed, if any; and,
>
> (iv) Lexmark and SCC shall then mutually exchange their respective claim construction contentions for each claim limitation identified by the parties as requiring construction.

2. Lexmark is given fifteen (15) days from the date of this Order in which to produce its "pre-sale customer inquiry database" for the period of time predating November 2004 to SCC to SCC's "Outside Counsel Only" under the terms of the Protective Order governing discovery in this case.

3. Lexmark is given fifteen (15) days from the date of this Order in which to initiate the four-step procedure outlined above concerning SCC's Interrogatory Nos. 24 and 25 by identifying to SCC each independent and dependent claim that Lexmark contends is infringed, and then produce engineering drawings and specifications to SCC.

This ___5th___ day of April, 2006.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE

11