Eastern District of Kentucky
**FILED**

JUN 1 4 2006

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 04-84-GFVT

STATIC CONTROL COMPONENTS, INC.,      PLAINTIFF/COUNTERCLAIM DEFENDANT

V.

LEXMARK INTERNATIONAL, INC.,      DEFENDANT/COUNTERCLAIM PLAINTIFF

V.

WAZANA BROTHERS INTERNATIONAL, INC.,
d/b/a MICRO SOLUTIONS ENTERPRISES, PENDL
COMPANIES, INC., and NER DATA PRODUCTS, INC.,      COUNTERCLAIM DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the motion of plaintiff/counterclaim defendant Static Control Components, Inc. ("Static Control") for partial reconsideration of a portion of the Memorandum Opinion and Order entered on March 31, 2006 ("the March 31 Order"), concerning patent infringement and invalidity issues. More particularly, Static Control requests reconsideration of Paragraph 1.d. of the March 31 Order on the grounds that the timing for compliance with Paragraph 1.d. of the March 31 Order conflicts with the Magistrate Judge's subsequent ruling in a Memorandum Opinion and Order entered on April 5, 2006 ("the April 5 Order"), also concerning patent infringement and invalidity issues. Specifically, Static Control advises that Paragraph 1.d. of the March 31 Order requires Static Control to respond to discovery requests concerning infringement and invalidity contentions *before the parties provide each other with the prerequisite information by which to develop such contentions*, pursuant to the four-step process the Magistrate Judge directed the parties to follow, as outlined in Paragraph 1.e. of the April 5 Order.

documents protected by the attorney/client privilege to Lexmark because (1) it has not waived the attorney/client privilege as to those particular documents, and (2) the Magistrate Judge erroneously concluded in the Memorandum Opinion and Order of March 31, 2006, that SCC had waived the attorney/client privilege as to all documents concerning Lexmark's Prebate program. Thus, SCC requests the Magistrate Judge to clarify that it is not required to produce from the universe of documents relating to SCC's efforts to defeat Lexmark's Prebate program, any information that is protected by the attorney/client privilege.

Lexmark objects to SCC's motion to clarify and/or reconsider, asserting that due to the fact that SCC disclosed privileged communications to a third parties and placed its counsel's advice at issue, SCC has waived all attorney/client privilege and work product protections with respect to the subject matter of that advice, as seen in *In re Powerhouse Licensing*, 441 F.3d 467 (6th Cir. 2006); *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289 (6th Cir. 2002); *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340 (Fed. Cir. 2005). Elaborating, Lexmark points out that in 1998 SCC (1) widely disseminated to its customers a legal opinion that its General Counsel, Mr. London, obtained from an outside attorney, Mr. Walker Blakey, concerning the enforceability, validity, and general legality of Lexmark's Prebate program (*See* DE #223, Exhibit D); and (2) made Mr. Blakey's legal opinion the focal point of SCC's declaratory judgment action filed against Lexmark in response to Lexmark's patent infringement claims (DE #223, Exhibit I).

Additionally, Lexmark also argues that SCC waived its attorney/client and work product privileges by failing to assert those privileges in a privilege log that identifies the withheld documents. *See* Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 26(b)(5); *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984). Explaining this argument, Lexmark points out that SCC claimed that several documents relating to SCC's Anti-Prebate effort and/or Lexmark's Prebate program were protected by the attorney/client and work product privileges, but that SCC failed to *timely* identify those documents on its privilege log, as seen by the fact that subsequent to the March 31, 2006 Memorandum Opinion and Order in question, SCC produced an

2

amended privilege log that belatedly identified 105 additional documents, nearly all of which are dated prior to 2002 and all of which are responsive to discovery requests that Lexmark served several years ago.

Furthermore, Lexmark submits that to the extent SCC's aforementioned conduct did not waive all attorney/client and work product privileges SCC may have had for documents relating to Lexmark's Prebate program, the remainder of any such privileges was waived when its General Counsel, Mr. London, testified during his deposition regarding SCC's legal opinions and the analysis underlying those opinions pertaining to Lexmark's Prebate program, as Mr. London openly revealed (1) the factual and legal basis for his opinions that Lexmark's Prebate agreement was invalid, unenforceable, and void, and (2) the legal conclusions reached by SCC's outside counsel regarding Lexmark's Prebate program. (*See* Lexmark's Opposition to SCC's Motion for Reconsideration and/or Clarification of Opinion and Order Dated March 31, 2006, Exhibit D (London Deposition, pp. 37-54).

Finally, Lexmark argues that the scope of the attorney/client and work product privilege waiver is not limited in time or to specific counsel and that the scope of this waiver extends to pre-suit and post-suit communications and to communications on the same subject matter between SCC and all other counsel, including trial counsel. *Akeva LLC v. Mizuno Corp.*, 243 F.Supp.2d 418, 423 (M.D.N.C. 2003); *McCormick-Morgan, Inc. v. Teledyne Industries, Inc.*, 765 F.Supp. 611, 613-14 (N.D. Cal. 1991).

In reply, SCC counters that it did not waive the attorney/client and work product privileges in respect to Lexmark's Prebate program by disclosing the Blakey Letter since the Blakey Letter was not a privileged communication, which is why SCC has never asserted a privilege to the Blakey Letter. SCC also argues that assuming *arguendo* that the Blakey Letter is a privileged communication, the broad waiver proposed by Lexmark is inappropriate and that any waiver of the attorney/client and work product privileges must be narrowly construed. SCC also argues that Mr. London's testimony did not waive the attorney/client or work product privilege. Further, SCC

3

asserts that Lexmark's argument concerning SCC's Privilege Log ignores the obligation the parties have under the Federal Rules of Civil Procedure to supplement discovery responses.

## Analysis

### A. Dissemination of the Blakey Letter

In 1998, SCC widely disseminated to its customers a copy of a five-page letter dated September 8, 1998, from Mr. Walter Blakey, a contracts law professor at the University of North Carolina, addressed to William L. London, SCC's General Counsel, which expressed Mr. Blakey's opinions concerning the enforceability, validity, and general legality of Lexmark's Prebate program. This letter (hereafter "Blakey Letter") was written to Mr. London in response to his request to Mr. Blakey for an opinion on Lexmark's Prebate Program. The Blakey Letter (Bates-numbered document SCC-LEX 0668330 - 0668334), is captioned "Re: Abandoned "prebate" cartridges" and states in pertinent part, as follows:

> At your request I have reviewed the testimony of William Duffy, Vice President of Lexmark International, Inc., on April 22, 1998, at a Committee Hearing of the New York State Assembly on Toner Cartridge Remanufacturing, examined copies of the box, labels, and package inserts used by Lexmark with its "prebate" cartridges, and researched the property and contract law applicable to the reuse of abandoned cartridges. All this has led me to the following conclusion. In my opinion, the Lexmark "prebate" Program does not create any legal barrier to the purchase and reuse by others of "prebate" cartridges which have been thrown away by the end-users.
>
> This opinion does not deal with the application of either patent law or antitrust law to the Lexmark "prebate" program, but I see nothing in either area of law that would raise any questions about my conclusion. Indeed, there are doctrines in both areas of law that might well prevent the successful adoption by any manufacturer of a strong program to prevent the reuse of abandoned used cartridges. (See, e.g., *Morton Salt Company v. G.S. Suppiger Company*, 315 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363, (1942). However, this opinion deals only with American property and contract law.

Blakey Letter, p. 1 (SCC-LEX 0668330).

A complete copy of the five-page Blakey Letter was attached to a letter dated September 11, 1998, that SCC's General Counsel, William L. London, sent to SCC's customers (hereafter "London Letter"), which discussed the Blakey Letter and stated in relevant part, as follows:

4

> The most important part of his letter is the conclusion. "In any event, the present Lexmark Prebate Program does not create any legal barrier to the purchase and reuse by others of prebate cartridges that have been discarded by end-users." In other words, prebate cartridges which have been thrown away by the original purchaser may be remanufactured. This means, whatever the antitrust or patent implications of the Prebate Program may be, you can recover abandoned prebate cartridges and remanufacture them.

London Letter (SCC-LEX 0668328).

The Magistrate Judge remains unpersuaded by SCC's argument that the Blakey Letter was not a privileged communication and that therefore, there was no waiver of the attorney/client privilege by the subsequent disclosure of the Blakey Letter to SCC's customers. Since the Blakey Letter resulted from a request by SCC's General Counsel to Blakey requesting his opinion as to the general legality of Lexmark's Prebate Program, the Magistrate Judge concludes that at the time it was rendered to Mr. London, SCC's General Counsel, it was a privileged communication to SCC. Based on the opinion contained in the Blakey Letter, SCC decided to disseminate the Blakey Letter to its customers, since Mr. Blakey expressed an opinion that Lexmark's Prebate program was legally unenforceable.

However, SCC's public disclosure of the Blakey Letter did not end there. Shortly after disseminating the Blakey Letter to its customers, SCC filed a declaratory judgment action against Lexmark alleging that SCC did not infringe Lexmark's patents because Lexmark's Prebate program was invalid and unenforceable. The Blakey Letter was the focal point of SCC's declaratory judgment action:

> The claim for declaratory judgment arises from a real controversy between Static Control and Lexmark over whether Static Control's dissemination of an opinion letter authored by a University of North Carolina law professor constitutes inducement of infringement or contributory infringement of Lexmark's purported patent rights.

*See* Docket Entry #223, Exhibit I, ¶ 3.

> At Static Control's request, Professor Blakey reviewed the Lexmark Prebate scheme and researched relevant legal considerations. Professor Blakey concluded that the Lexmark Prebate scheme does not create any legal barrier to the purchase and reuse by others of Prebate cartridges which have been thrown away by the end users.

*Id.* at ¶ 15.

5

SCC insists that the Blakey Letter was not privileged because "Mr. Blakey was not engaged to provide legal advice." However, this argument is belied by the plain language contained in the Blakey Letter. To reiterate, Mr. Blakey stated in the Blakey Letter:

> At your request I have reviewed . . ., examined . . ., and researched the property and contract law applicable to the reuse of abandoned cartridges. All this has led me to the following conclusion. In my opinion, the Lexmark "prebate" Program does not create any legal barrier to the purchase and reuse by others of "prebate" cartridges which have been thrown away by the end-users.

Blakey Letter, p. 1 (SCC-LEX 0668330).

Additionally, Mr. London, in his subsequent letter to SCC's customers, states:

> I have asked Professor Walker Blakey . . . to review the Prebate Program and render his opinion . . . Enclosed is a copy of his letter to me.

London Letter (SCC-LEX 0668328).

Consequently, based on the fact that SCC requested a legal opinion from Mr. Blakey concerning the legality of Lexmark's Prebate program, it is clear to the Magistrate Judge that Mr. Blakey's opinion contained in the Blakey Letter was a privileged communication to SCC, irrespective of the fact that SCC is now trying to label the Blakey Letter as a non-privileged communication. A rose by any other name smells the same. SCC waived its attorney/client and work product privileges relating to the subject matter of the Blakey Letter when it (1) disseminated the Blakey Letter to its customers, and (2) placed the legal opinion of Mr. Blakey contained in the Blakey Letter at issue in the declaratory judgment action SCC filed in 1998 in response to Lexmark's claims of patent infringement.

In this particular instance, SCC is attempting to use the attorney/client privilege as both a shield and a sword by disclosing to Lexmark the documents that are favorable to its position and by withholding other documents, under the protection afforded by the attorney/client privilege, that are unfavorable to its position. "The client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality as to others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit." *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981).

6

The Magistrate Judge is also unpersuaded by SCC's argument that it should not be deemed to have waived the attorney/client privilege for all documents concerning Lexmark's Prebate program simply because it disclosed some documents that were protected by the attorney/client privilege. As seen in *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation, supra,* the Sixth Circuit rejected a similar selective waiver argument. "However, after due consideration, we reject the concept of selective waiver, in any of its various forms." *Columbia/HCA Healthcare,* 293 F.3d at 302. Elaborating on the rationale underlying the Sixth Circuit's rejection of "selective waiver," the Sixth Circuit in *Columbia/HCA Healthcare* stated:

> . . . Just as the attorney-client privilege itself provides certainty to litigants that information relayed to one's attorney will not be disclosed, rejection of selective waiver provides further certainty that waiver of the privilege ensures that the information will be disclosed.

*Id.* at 304.

For all of the foregoing reasons, SCC's selective waiver argument does not carry the day. The Magistrate Judge again concludes that SCC has waived the attorney/client and work product privileges for all documents pertaining to Lexmark's Prebate program.

**B.     Privilege log**

SCC further argues that the fact that it recently provided Lexmark with an amended or supplemented privilege log should not be deemed to have waived the attorney/client and/or work product privileges, since it was merely complying with the Federal Rules of Civil Procedure and supplementing its discovery responses as it is required to do under the civil rules.

Having concluded again, for the reasons stated above, that SCC has waived the attorney/client and work privileges for all documents relative to Lexmark's Prebate program based on the disclosure of the Blakey Letter and the London Letter to its clients, the Magistrate Judge need not consider the merits of SCC's argument concerning the supplementation of its privilege log.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff SCC's motion for clarification and/or reconsideration of the Memorandum Opinion and Order entered on March 31, 2006 [DE #275] is **GRANTED**.

2. Upon reconsideration of numerical paragraph 1.b. on page 12 of the Memorandum Opinion and Order of March 31, 2006, the Magistrate Judge reaffirms said paragraph and clarifies that SCC is directed to produce *all documents*, both privileged and non-privileged, relating to SCC's efforts to defeat Lexmark's Prebate program.

3. SCC is given twenty (20) days from the date of this Order in which to supplement its discovery responses in compliance with this Memorandum Opinion and Order.

This 15th day of June, 2006.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE