UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

Eastern District of Kentucky
FILED
NOV 0 9 2006
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 04-84-GFVT

STATIC CONTROL COMPONENTS, INC.,     PLAINTIFF/COUNTERCLAIM DEFENDANT

V.

LEXMARK INTERNATIONAL, INC.,     DEFENDANT/COUNTERCLAIM PLAINTIFF

V.

WAZANA BROTHERS INTERNATIONAL, INC.,
d/b/a MICRO SOLUTIONS ENTERPRISES, PENDL
COMPANIES, INC., and NER DATA PRODUCTS, INC.,     COUNTERCLAIM DEFENDANTS

\* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

\* \* \* \* \* \* \* \* \*

In compliance with the Order of November 6, 2006, Lexmark provided the Magistrate Judge with (1) a copy of the Rule 30(b)(6) deposition, noticed by Static Control on October 26, 2005, and taken of Lexmark Rule 30(b)(6) designee Janet M. Smith on December 2, 2005, (2) a copy of the continued Rule 30(b)(6) deposition, noticed by Static Control on July 6, 2006, taken of Lexmark Rule 30(b)(6) designee Janet M. Smith on July 26, 2006, (3) the topics noticed for the two prior Rule 30(b)(6) depositions of designee Janet M. Smith, and (4) the topics noticed by Pendl in the Rule 30(b)(6) deposition of designee Janet M. Smith at issue, scheduled to be taken on November 15, 2006. Additionally, pursuant to the Order of November 6, 2006, Lexmark and Pendl filed briefs setting forth their respective positions regarding the scope of the third Rule 30(b)(6) deposition of Lexmark Rule 30(b)(6) designee Janet M. Smith.

In considering this matter, the Magistrate Judge has read the transcripts of the two prior depositions of Lexmark Rule 30(b)(6) designee Janet M. Smith that were conducted on December 2, 2005, and July 26, 2006, and the Magistrate Judge has reviewed and compared the topics noticed

by Static Control in the two prior depositions of Lexmark Rule 30(b)(6) designee Janet M. Smith (hereafter referred to as the "Prior Notice") with the topics noticed by Pendl in the forthcoming deposition of Lexmark Rule 30(b)(6) designee Janet M. Smith (hereafter referred to as the "Current Notice") scheduled for November 15, 2006, all of which are briefly summarized below:

**A.     Deposition taken on December 2, 2005**

This deposition was noticed by Static Control; however, Pendl was also present at this deposition, and Pendl asked questions of the Rule 30(b)(6) deponent, Janet M. Smith. The following topics were noticed for this deposition:

> Topic No. 1: The identity of each and every person or entity that has breached a "Prebate/Return Program license/agreement," as that phrase is used in paragraph 106 of Lexmark International's Second Amended Answer and Counterclaims in Case No. 04-CV-84-KSF; and for each such breach by any person or entity so identified, whether Lexmark believes Static Control caused that breach in whole or in part.
>
> Topic No. 2: The identity of each and every "Lexmark customer[]" that has breached its "obligations under the Prebate/Return Program contract employed with the Prebate/Return Program Printers," as alleged in paragraph 108 of Lexmark International's Second Amended Answer and Counterclaims in Case No. 04-CV-84-KSF; and for each such breach by any customer so identified, whether Lexmark believes Static Control caused that breach in whole or in part.
>
> Topic No. 3: Any and all evidentiary support for the allegations in paragraph 108 of Lexmark International's Second Amended Answer and Counterclaims in Case No. 04-CV-84-KSF, that "various customers" have "breach[ed] their obligations under the Prebate/Return Program contract employed with the Prebate/Return Program Printers."
>
> Topic No. 4: The identity of each and every customer referenced in paragraph 115 of Lexmark International's Second Amended Answer and Counterclaims in Case No. 04-CV-84-KSF, in which Lexmark alleges that Static Control "engaged in conduct intended to interfere, and which did interfere, with the valid business expectancy and relationship between Lexmark and its customers."
>
> Topic No. 5: The identity of all persons likely to have discoverable information concerning (a) topics 1 through 4 above, or (b) Lexmark's testimony concerning Topics 1 through 4 above.
>
> Topic No. 6: The description by category and location of all discoverable documents, data compilations or tangible things that relate to (a) topics 1 through 4 above, or (b) Lexmark's testimony concerning Topics 1 through 4 above.

A review of the transcript of the December 2, 2005 deposition reflects that all topics that were noticed to be covered in this deposition were in fact covered.

**B.  Deposition taken on July 26, 2006**

This deposition was noticed by Static Control; however, Pendl was also present at this deposition, and Pendl asked questions of the Rule 30(b)(6) deponent, Janet M. Smith. The following topics were noticed for this deposition:

   1.  Forecasts and analyses of as well as strategies and plans for marketing Lexmark Laser Toner Cartridges.

   2.  Lexmark Laser Toner Cartridge marketing, including but not limited to advertising, promotion, offers for sale, packaging, and labeling.

   5.  Forecasts and analyses of as well as strategies and plans for selling Lexmark Laser Toner Cartridges.

   14.  The identity of persons likely to have discoverable information concerning (a) Topics 1 through 13 above; or (b) Lexmark's testimony concerning Topics 1 through 13 above.

   15.  The description by category and location of all discoverable documents, data compilations or tangible things that relate to: (a) Topics 1 through 13 above; or (b) Lexmark's testimony concerning Topics 1 through 13 above.

A review of the transcript of the July 26, 2006, deposition reflects that all topics that were noticed to be covered in this deposition were in fact covered.

**C.  Deposition noticed for November 15, 2006**

This forthcoming Rule 30(b)(6) deposition of Lexmark was noticed by Pendl. The following topics were noticed for this deposition:

   Topic No. 1:  Any contract between Lexmark and any entity identified in Lexmark's Disclosure to the Court's Opinion and Order of March 7, 2006 [Docket Entry No. 269 "Lexmark's Disclosure"] that Lexmark alleges was tortiously interfered with by any party to this litigation ("Lexmark Contract").

   Topic No. 2:  Any business relationship or expected contract between Lexmark and any other entity that Lexmark alleges was tortiously interfered with by any party to this litigation ("Lexmark Expectancy").

   Topic No. 3:  The formation of any Lexmark Contract or Lexmark Expectancy.

   Topic No. 4:  Any and all evidence supporting Topic 3.

   Topic No. 5:  Any and all breaches of any Lexmark Contract.

   Topic No. 6:  Any and all evidence supporting Topic 5.

<u>Topic No. 7</u>:  Any and all acts by any party to this litigation that Lexmark alleges were intended to interfere, and which did interfere, with any Lexmark Contract or Lexmark Expectancy.

<u>Topic No. 8</u>:  Any and all evidence supporting Topic 7.

<u>Topic No. 9</u>:  The allegation that any entity identified in Lexmark's Disclosure provided empty toner cartridges directly to any party to this litigation other than Lexmark.

<u>Topic No. 10</u>:  Any and all evidence supporting Topic 9.

<u>Topic No. 11</u>:  The entities or persons who sold or otherwise supplied filled toner cartridges to any entity Lexmark alleges breached a Lexmark Contract or Lexmark Expectancy by providing empty toner cartridges to companies other than Lexmark.

<u>Topic No. 12</u>:  Any and all evidence supporting Topic 11.

<u>Topic No. 13</u>:  Any and all communications between Lexmark and any entity identified in Lexmark's Disclosure.

<u>Topic No. 14</u>:  Any and all communications between Lexmark and any entity which Lexmark alleges it has a business relationship or expected contract that was tortiously interfered with by any party to this litigation.

<u>Topic No. 15</u>:  Any and all evidence supporting Topics 13 or 14.

<u>Topic No. 16</u>:  All documents identified by Lexmark in response to Pendl's Second Set of Interrogatories and Third Request for Production to Lexmark.

<u>Topic No. 17</u>:  Janet Smith's verification of Lexmark's supplemental response to Pendl's Second Set of Interrogatories and Third Request for Production to Lexmark.

<u>Topic No. 18</u>:  The identity of persons likely to have discoverable information about (a) Topics 1 through 17 above; or (b) Lexmark's testimony concerning Topics 1 through 17 above.

### Discussion/Analysis

Pendl asserts that it is entitled to a Rule 30(b)(6) deposition of Lexmark concerning Lexmark's claims against Pendl for tortious interference with contractual relations and tortious interference with prospective advantage (hereafter collectively "the interference claims"). Lexmark has agreed to make Janet Smith available to be deposed in her individual capacity and on Topic No. 17 of the topics listed in the Current Notice. However, Lexmark objects to Janet Smith being deposed on any other of the eighteen (18) topics listed in the Current Notice, arguing that its Rule 30(b)(6) designee, Janet Smith, in her two prior depositions in this case, has already given testimony

4

in respect to these other seventeen (17) topics listed in the Current Notice; therefore, such testimony would be duplicative and should not be permitted.

Based on a review of the transcripts of the prior depositions of Lexmark's Rule 30(b)(6) designee Janet M. Smith, and Judge Forester's Order of March 7, 2006, the Magistrate Judge concludes that, in addition to questioning Janet Smith about Topic No. 17, Pendl should also be permitted to ask other limited questions of Janet Smith concerning a portion of the 159 customer names Lexmark provided to Pendl. This conclusion is based on the following rationale:

1. The six topics noticed in the Prior Notice by Static Control in October of 2005 were very broad topics that encompassed the interference claims, and as previously stated, all six topics were covered during the course of the deposition of Lexmark Rule 30(b)(6) designee Janet Smith on December 2, 2005. Although this deposition was noticed by Static Control, Pendl was present at this deposition and participated in this deposition, Lexmark's objections notwithstanding, by questioning Janet Smith in respect to the interference claims.[1]

2. During the course of the December 2, 2005 deposition, the following forty-nine (49) customers of Lexmark were identified by Janet Smith as having been in violation of the Prebate Agreement:

   1. Countrywide Mortgage
   2. Best Buy
   3. Target
   4. K-Mart
   5. Citibank
   6. Fleet Bank
   7. Bank One
   8. Bank of America
   9. State of Louisiana
   10. Shopko
   11. Jackson Memorial Hospital
   12. Value City

---

[1] Lexmark's counsel objected to Pendl's questioning Janet Smith on December 2, 2005, because such questioning was outside the notice. Nevertheless, Lexmark's counsel did not instruct Janet Smith not to answer any questions asked of her by Pendl. See 12/2/05 Deposition, pp. 38-39. Pendl's counsel cross-examined Janet Smith at pages 133-156 of the 12/2/05 Deposition.

    13. Toys-R-Us
    14. PEP Boys
    15. J.C. Penny-Eckerd
    16. Missouri Vocational Enterprises
    17. Smurfit Stone
    18. University Hospital of Cleveland
    19. CVS
    20. Service Merchandise
    21. Big Brothers & Big Sisters of Kentuckiana
    22. Nissan North America, Inc.
    23. Professional Women's Forum
    24. UK Children's Hospital
    25. Picadome Elementary School
    26. National Kidney Foundation
    27. Harbor House of Louisville
    28. Aurora Health Care in Milwaukee
    29. Cravath, Swaine & Moore
    30. Residence Inn
    31. Guy's Waste Service
    32. Paine Webber
    33. Hannaford Brothers
    34. Daewood Motors America
    35. Chase Investment Services
    36. Central DuPage Hospital
    37. Shelter Insurance
    38. Abington Memorial Hospital
    39. Arizona Supreme Court
    40. U.S. Forest Service
    41. U.S. Post Office
    42. TVA
    43. Mayo Clinic
    44. World Savings
    45. Morgan, Stanley, Dean, Witter
    46. Carolina First Bank
    47. Bank of the West
    48. Royal Bank of Canada
    49. Citigroup

    At the December 2, 2005, Static Control asked Janet Smith what proof Lexmark had to support its claims that the foregoing 49 customers had violated the Prebate Agreement. Pendl also had the opportunity during its cross-examination of Janet Smith to inquire of her as to Lexmark's proof that these 49 customers had violated the Prebate Agreement.

    3. Subsequent to the December 2, 2005 deposition, in an <u>Opinion & Order</u> entered by Judge Forester on March 7, 2006, Judge Forester ordered Lexmark "to produce a list of customers, within thirty (30) days from the date of this opinion and order, that it alleges has committed a breach of its

Prebate agreement which form the basis of Lexmark's claims against the counterclaim defendants for tortious interference with contracts." Opinion & Order, p. 4 [DE #234]. In compliance with that Order, Lexmark provided the counterclaim defendants with a list of 159 customers who Lexmark believes have breached the Prebate Agreement.

4. On July 26, 2006, Janet Smith was deposed again as Lexmark's Rule 30(b)(6) designee. While the topics noticed for this continued Rule 30(b)(6) deposition did not specifically cover the interference claims, Janet Smith was questioned concerning the interference claims. Pendl was present at this deposition and asked questions of Janet Smith.

5. Since Pendl has already heard testimony from Lexmark concerning the 49 Lexmark customers identified at the Rule 30(b)(6) deposition in December 2, 2005, cross-examined the deponent Janet Smith at that time, and could have asked her questions concerning these 49 Lexmark customers, the Magistrate Judge concludes that Pendl has essentially waived its right to ask any further questions of Lexmark as to these 49 customers. However, since Lexmark's list of 159 customers had not been provided to Pendl at the time of the December 2, 2005, deposition, Pendl should be given the opportunity to ask Janet Smith questions concerning the 110 other Lexmark customers, since such inquiry would not be duplicative of testimony obtained from Janet Smith in prior Rule 30(b)(6) depositions.

Consequently, for all of the foregoing reasons, at the forthcoming Rule 30(b)(6) deposition noticed by Pendl for November 15, 2006, concerning Lexmark's interference claims, Pendl may ask Lexmark what proof it has that these other 110 customers identified by Lexmark as having violated the Prebate Agreement have actually violated the Prebate Agreement.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Pendl's motion to take Lexmark's Rule 30(b)(6) deposition on tort claims [DE #450] is **GRANTED IN PART** and **DENIED IN PART**, as follows:

a. The motion is granted in that, in addition to Lexmark making its Rule 30(b)(6) designee Janet Smith available for deposition in her individual capacity and to answer questions concerning

7

Topic No. 17 on the Current Notice, Pendl may question Janet Smith concerning (1) Lexmark's interference claims as they relate to Pendl, and (2) the remaining 110 customers of the 159 customers identified by Lexmark as having violated the Prebate Agreement.

b. The remainder of Pendl's motion to take Lexmark Rule 30(b)(6) deposition on tort claims is denied as to the remaining 17 topics listed on Pendl's Current Notice, as such testimony would be duplicative of prior testimony from Rule 30(b)(6) designee Janet Smith.

2. No other party attending the Rule 30(b)(60 deposition of Lexmark's designee Janet Smith on November 15, 2006, may ask questions of Janet Smith that are duplicative of prior testimony given by her in her two previous depositions as Lexmark's Rule 30(b)(6) designee.

This ___9th___ day of November, 2006.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE