UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | | |
|---|---|---|
| STATIC CONTROL COMPONENTS, INC., ET AL. | ) ) ) | |
| Plaintiffs, | ) ) | CONSOLIDATED CIVIL ACTION NOS. |
| V. | ) ) | 02-571 AND 04-84 |
| LEXMARK INTERNATIONAL, INC., ET AL. | ) ) ) | **ORDER** |
| Defendants. | ) ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Currently before the Court for consideration are five objections to the Magistrate Judge's

Orders regarding nondispositive discovery issues in this case.  [R. 187, 273 (objection renewed at

337), 276, 374, and 389].  Pursuant to Federal Rule of Civil Procedure 72(a), the Court will only

set aside or modify Magistrate Judge Todd's Orders if the Court finds that at least a portion of

the order is "clearly erroneous or contrary to law."  "A finding is 'clearly erroneous' when

although there is evidence to support it, the reviewing court on the entire evidence is left with the

definite and firm conviction that a mistake has been committed."  *United States v. United States*

*Gypsum Co.*, 333 U.S. 364, 395 (1948).  The Court will address each of the above-referenced

objections seriatim:[1]

A.      **Objections [R. 187] to Memorandum Opinion and Order of December 21,**

**2005 [R. 180]**

_____

[1]  As further discussed below, one of the objections [R. 374] is to a Report and
Recommendation by the Magistrate Judge [R. 361], rather than to a Magistrate Judge order.
Accordingly, because the Court will overrule the objection, the Court will also adopt the Report
and Recommendation.

In its Objections to Magistrate Judge Todd's ruling, Static Control Components ("SCC") seeks a more in depth answer to its Interrogatory No. 3 directed to Lexmark International ("Lexmark"), which states:

> Set forth the complete basis for Lexmark's contention that the Patent Act preempts North Carolina General Statutes § 75-36 (2003), and
> (i)      Identify any person who communicated on behalf of Lexmark with any member of the North Carolina Legislature or any staff member thereof regarding that statute or any bill related to that statute;
> (ii)     identify all such members or staff; and
> (iii)    provide the substance of such communications.

[R. 187 at 4]. "[T]he limited subject of [SCC's] Objection is whether Lexmark must provide a response to subparts ( i), (ii) and (iii) of Interogatory No. 3."  [R. 187 at 5].

SCC claims that the requested responses are reasonably calculated to lead to the discovery of admissible evidence relevant to SCC's claims and defenses.  [R. 187 at 10].  The Court finds that Magistrate Judge Todd's ruling that the "information requested in these subparts is not relevant to the claims and defenses asserted [by SCC]" is not clearly erroneous or contrary to law.  Rather, the interpretation and legal effect of North Carolina General Statute § 75-36 as enacted is a matter of law that the Court alone decides; what impact Lexmark thought the statute would have before its enactment is immaterial to the Court's legal analyses.

**B.      Objections [R.  273 and 337] to Memorandum Opinion and Order of March 31, 2006, [R. 266] as Amended on June 15, 2006  [R. 335]**

On April 14, 2006, SCC objected to numerical paragraph 1.b. on page 12 of the Magistrate Judge's March 31, 2006 Order, which directed SCC "to produce those documents and communications relating to SCC's efforts to defeat Lexmark's Prebate program."  [R. 266 (Order) and R. 273 (Objection)].  SCC objected at the time for the purpose of preserving its

-2-

objection while pursuing a Motion for Clarification and/or Reconsideration of said Order with

the Magistrate Judge.  [R. 275 (Motion)].  The Magistrate Judge issued an Amended

Memorandum Opinion and Order regarding the directive in numerical paragraph 1.b. on June 15,

2006, and SCC renewed its Objections.[2]  [R. 335 (Amended Order) and 337 (Renewed

Objections)].  In that Order the Magistrate Judge affirmed his prior Order, ruling that "SCC is

directed to produce *all documents*, both privileged and non-privileged, relating to SCC's efforts

to defeat Lexmark's Prebate program."  [R. 335].  For the reasons that follow, the Magistrate

Judge's Orders will be affirmed as written.  However, the Court will construe the Magistrate

Judge's Order narrowly as set forth below and therefore overrule in part and sustain in part

SCC's Objections.

> The current conflict arises from the fact that in 1998,
>
> SCC widely disseminated to its customers a copy of a five-page letter . . . from Mr.
> Walter Blakey, a contracts law professor at the University of North Carolina, addressed to
> William L. London, SCC's General Counsel, which expressed Mr. Blakey's opinions
> concerning the enforceability, validity, and general legality of Lexmark's Prebate
> program.

[R. 335 at 4].  The Magistrate Judge concluded that the "Blakey Letter" was a privileged

communication via the attorney/client privilege and that SCC waived that privilege by

disseminating the letter to its customers.  *Id.* at 5.  Additionally, the Blakey Letter "was the focal

point of SCC's [current] declaratory judgment action."  *Id.*  Accordingly, the Magistrate Judge

found that SCC "waived the attorney/client and work product privileges for all documents

pertaining to Lexmark's Prebate program."  *Id.* at 7.  The Court finds that the Magistrate Judge

---

[2]  In the interim, SCC filed an "Erratum" to its Motion for Clarification and original
Objections.  [R. 286, 287].

was not clearly erroneous in finding that the Blakey Letter fell within the ambit of attorney/client privilege and that SCC waived that privilege by disseminating the letter to third parties. Therefore, the Court turns to the scope of that waiver:

In a general sense, this entire litigation for SCC is partially about "defeating Lexmark's prebate program." As such, the Blakey Letter, even though its content is the centerpiece of SCC's current suit, cannot be held to have forever foreclosed SCC's ability to maintain confidential communications with litigation counsel about its strategy for prosecuting its case and defending against Lexmark's claims. Lexmark states that the principal purpose of the waiver doctrine is "to protect against the unfairness that would result from a party selectively disclosing legal advice for its own benefit, revealing only the advice that supports its cause while claiming the shelter of privilege to avoid disclosing other advice on the same subject matter that is less favorable." [R. 340, citing *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006)]. While this is true, SCC correctly notes that implied waiver is to be narrowly construed "'no broader than needed to ensure the fairness of the proceedings before'" the Court. [R. 337 at 13, citing *In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005) (habeas proceeding)].

In balancing these above-referenced principles of waiver, the Court is of the opinion that Lexmark is entitled to SCC's documents and communications that are related to the contents of the 1998 Blakey Letter—i.e. "SCC's efforts to defeat Lexmark's Prebate program"—as the Magistrate Judge held. However, the narrow construction of waiver leads the Court to conclude that SCC must be able to avail itself to the attorney-client privilege when interacting with its

current litigation counsel.[3]  If such were not the case, then SCC would potentially be required to disclose its entire trial strategy, including, for instance, an assessment of the strengths and weaknesses of every potential witness, since SCC's goal in this litigation, whether meritorious or not, is to "defeat Lexmark's prebate program."  Accordingly, the Magistrate Judge's Order will be construed to read that the Order does not apply to documents ordinarily protected by the work-product doctrine prepared by SCC's current *litigation* counsel, while working in their capacity as *litigation* counsel, that were prepared after the commencement and *in the course of this case.* However, this limitation should not be construed to protect documentation of activities by SCC, if any, that go beyond the bounds of litigation preparation, such as continued communications about prebate with customers following the filing of this suit.[4]

Lexmark cites authority for the common proposition that the scope of a waiver of privilege is not defined temporally, but rather by subject matter.  *See In re Grand Jury*

---

[3]  SCC states that it first engaged its current counsel four years after the Blakey Letter to defend itself against Lexmark's suit filed on December 30, 2002.  [R. 337 at 10, referring to Case No. 5:02-cv-571, R. 1].

[4]  In his Amended Memorandum Opinion and Order dated June 15, 2006 [R. 335], the Magistrate Judge stated:

Having concluded . . . that SCC has waived the attorney/client and work privileges for all documents relative to Lexmark's Prebate program based on the disclosure of the Blakey Letter and the London Letter to its clients, the Magistrate Judge need not consider the merits of SCC's argument concerning the supplementation of its privilege log.

In accordance with this Order, any pre-litigation documents related to SCC's efforts to defeat Lexmark's Prebate program must be disclosed.  However, the Court agrees with SCC that litigation files are not generally the subject of privilege log entries, and also in accordance with this Order, SCC has no duty to disclose privileged litigation files for not listing those litigation files in its privilege log, unless that privilege is otherwise waived for reasons not considered in this Order.

*Proceedings*, 78 F.3d 251, 255 (6th Cir. 19960).  In this case, however, SCC retained *new*

counsel to serve as litigation counsel, rather than, for example, retaining Mr. Blakey for trial.

This case is also unlike *In re EchoStar Commc'ns Corp.*, as cited by Lexmark [R. 340 at 24],

because SCC does not assert an "advice-of-counsel defense" regarding its current litigation

counsel.  448 F.3d 1294, 1299 (Fed. Cir. 2006).  Unless the Court makes temporal distinctions in

this case, as a practical matter, there is no way to divide that which is truly preparation for trial,

about which Lexmark has no business knowing, and that which is a coordinated effort to defeat

Lexmark's prebate program beyond the esoteric notion that the very prosecution of this case is

meant to defeat the program.  Therefore, the Court makes a temporal distinction not as a means

in itself, but rather as shorthand for what is the subject matter of SCC's waiver.  This result is

consistent with the authority that "there is no bright line test for determining what constitutes the

subject matter of waiver, rather the courts weigh the circumstances of the disclosure, the nature

of the legal advice sought and the prejudice to the parties of permitting or prohibiting further

disclosures."  *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349-50 (Fed. Cir. 2005); *see

also In re Grand Jury Proceedings*, 78 F.3d at 255-56 (6th Cir. 1996) (holding that the "district

court must be guided by fairness concerns" when determining the scope of waiver and reversing

district court for being overly broad in the scope of waiver).

## C.     Objections [R.  276] to Memorandum Opinion and Order of April 6, 2006 [R. 270]

Pendl Companies, Inc. and Wazana Brothers International, Inc. made Objections to the

Magistrate Judge's Memorandum Opinion and Order dated April, 6, 2006.  The parties made

these Objections for preservation purposes, and the parties' requested that the Court reserve

judgment on these objections until the Magistrate Judge ruled on the parties' Motion for Partial

Reconsideration [R. 277] of the Magistrate Judge's April 6 Order.  The Magistrate Judge granted

said Motion for Partial Reconsideration on June 15, 2006.  [R. 336].  Accordingly, Pendl and

Wazana's Objections at R. 276 will be overruled as moot.

> **D.**     **Objections [R. 374] to Magistrate Judge's Report and Recommendation of**
>
> **August 23, 2006 [R. 361]**

On May 3, 2006, SCC filed a Motion for Order Barring Lexmark from Alleging and/or

Offering Evidence that any Remanufactured Toner Cartridge Infringes any Lexmark Patent.  [R.

300].  In that motion, SCC argued that Lexmark failed to adhere to the Magistrate Judge's

discovery Order dated April 5, 2006, which denied SCC's motion to compel discovery but set up

a four-step procedure for discovery under which the parties were to operate.  [R. 268].  The

Magistrate Judge filed his Report and Recommendation on SCC's motion for sanctions on

August 23, 2006, recommending that the motion be denied.  [R. 361].  Although SCC's motion

requested sanctions for the alleged violation of the Magistrate Judge's discovery order, the

Magistrate Judge filed a Report and Recommendation on the motion, rather than denying it

outright, because the relief sought by SCC is dispositive in nature.  If SCC were to prevail on its

motion, then Lexmark would be prohibited from pursuing a portion of its counterclaim against

SCC.

In his Report and Recommendation, the Magistrate Judge determined that Lexmark did in

fact comply with the discovery order of April 5, 2006.  Regarding other arguments that SCC

made in its motion, the Magistrate Judge determined, and this Court agrees, that "those

arguments are irrelevant to the issue of whether Lexmark complied with the Order of April 5,

2006." [R. 361].

The Court has reviewed SCC's Objections, which other parties join, and finds that SCC fails to establish that the recommendation not to impose sanctions was "clearly erroneous." Pursuant to Federal Rule of Civil Procedure 72, this Court will affirm a report and recommendation regarding non-dispositive matters unless that recommendation is "clearly erroneous or contrary to law." The Court reviews de novo magistrate judge decisions to which objections have been made that are dispositive of a claim. Fed. R. Civ. P. 72(b). In the context of a motion for sanctions, the magistrate judge's recommendation determines whether the motion is dispositive of a claim and the specific relief requested by the movant is irrelevant. *See Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519-20 (10th Cir. 1995). "To conclude otherwise would permit the party seeking sanctions to engage in a game of labels that would improperly dictate the standard of review." *Segal v. L.C. Hohne Contractors, Inc.*, 303 F. Supp. 2d 790, 794 (S.D. W. Va. 2004).

Given that SCC's motion requires the interpretation of a discovery order entered by the Magistrate Judge, the Magistrate Judge is in a better position to interpret that order than is this Court. Additionally, this Court would be hard pressed to identify a situation in which not dismissing a claim as a discovery sanction would be clearly erroneous.[5] Accordingly, the Court will overrule SCC's Objections [R. 374] and adopt the Magistrate Judge's Report and Recommendation. [R. 361].

### E.    Objections [R. 389] to Memorandum Opinion and Order of September 12,

---

[5] The Court is cognizant that SCC seeks to bar Lexmark from making certain allegations or presenting certain evidence, rather than seeking to dismiss Lexmark's claims outright. However, a grant of that requested relief would have the effect of a *de facto* dismissal.

2006 [R. 375]

Lexmark requested in a telephone conference with Magistrate Judge Todd on August 10, 2006, that SCC be required to disclose certain information about two surveys conducted at the direction of SCC for use in this litigation. [R. 375]. The parties provided the Magistrate Judge with letters in support of their relative positions, rather than formally briefing the issues raised in the conference. *Id.* SCC has attached those letters by the parties as exhibits to its current Objections. [R. 389]. The Magistrate Judge ordered, *inter alia*, that "Static Control is directed to disclose the identity of the actual participants in the Johnson report to Lexmark" and "Static Control is directed to disclose the identity of the actual participants in the Simonson report only to Lexmark's Outside Counsel, pursuant to the terms of the Protective Order entered herein concerning the production of confidential information." [R. 375]. SCC's current objection is with this portion of the Magistrate Judge's Order regarding the disclosure of actual survey participants. [R. 389].

The case law on the subject of disclosure of the identities of survey participants is somewhat circumscribed, as this area of law is driven at the district court level with only a small "universe" of cases considering the issue. The parties reference three cases, as discussed below, and the Court finds one other.

First, in *Applera Corp. v. MJ Research, Inc.*, 389 F. Supp. 2d 344, 350 (D. Conn. 2005), the court declined to revisit its earlier opinion, in which it held:

> Defendants provided in discovery their invoice database from which Ford [the surveyor] selected respondents and thus MJ could have conducted its own survey of MJ customers to test the reliability of Ford's methodology and/or results. In fact, Dr. Ford and other researchers are prohibited by ethical rules from disclosing the actual individual identities of the survey respondents and instructed to defend against Court orders compelling

disclosure. *The Reference Manual for Scientific Evidence* published by the Federal Judicial Center instructs that, because of such ethical obligations, identifying information such as names and addresses should be removed from survey data before it is provided to opposing counsel.

(internal citations omitted); *see also* [R. 389 at 5].

Second, in *Comm-Tract Corp. v. Northern Telecom, Inc.*, the issues are on point with the current issue. 143 F.R.D. 20 (D. Mass. 1992). Regarding the disclosure of survey participants, the magistrate judge, who drafted the opinion, wrote:

> To the extent that the survey would be utilized as evidence of the respondents' state of mind, present sense impressions or subjective mental associations, Northern Telecom's need to know the identity of the participants and to tie the respondents with a specific response is de minimus. In such circumstances, the defendant can challenge the evidence by implicating the "circumstantial guarantees of trustworthiness," i.e., the methodology employed, the survey design, the form of questionnaires, the sampling techniques, etc. The same cannot be said to the extent that the survey is used as "no more than a summary and distillation of . . . extrajudicial declarations offered to prove the truth of the matters asserted in those declarations. . ." In that circumstance, the only way Northern Telecom could counter the evidence would be to test the specific individual responses of the survey participants. This is equally true whether the survey itself is sought to be admitted or whether an expert intends to offer such an opinion based on the survey results.

*Id.* at 22 (internal citations omitted). After briefing by the parties and in a subsequent order, the magistrate judge found that the survey had a "dual purpose, both to prove 'customer perception' and, at least in part, to prove the truth of the matters asserted" and ordered disclosure of participant identities." *Id.* at 24.

SCC argues that its surveys are geared toward divining the state of mind, present sense impressions or subjective mental associations of cartridge remanufacturers or lexmark customers. Having reviewed the surveys, the Court tends to agree that the participants' answers in both surveys are aggregated in a manner that would enable Lexmark, having knowledge of the

-10-

participant universe, to "challenge the evidence by implicating the 'circumstantial guarantees of trustworthiness,' i.e., the methodology employed, the survey design, the form of questionnaires, the sampling techniques, etc."  Therefore, hearsay considerations warranting disclosure of participant identities are not compelling in this case.

Third, in *Lampshire v. Procter & Gamble Co.*, 94 F.R.D. 58 (N.D. Ga. 1982), in a case regarding toxic shock syndrome, the plaintiffs sought "to offer certain reports prepared by the Center for Disease Control ("CDC") into evidence."  *Id.* at 59.  Defendant Procter & Gamble sought the personal identities of participants of the report "to enable it to contact the subjects of the CDC studies so as to determine the extent to which the studies were properly conducted."  *Id.* at 60.  The Court denied the request for personal identifiers, considering both that the information provided by the participants was "quite personal and sensitive" and that Procter & Gamble had not "sufficiently demonstrated that it is necessary to have the personal identifying information about the subjects of the CDC studies in order to attack the validity of the studies." *Id.*

Finally, the Court finds another case in which that court noted that surveyors conducting work for litigation purposes have no legal privilege to maintain the confidentiality of the survey participants.  *See United States Surgical Corp. v. Orris, Inc.*, 983 F. Supp. 963, 969 (D. Kan. 1997) (citing *Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340 (1979)).  In upholding the magistrate judge's decision to compel the disclosure of survey participants, the court held:

> Plaintiff contends that Magistrate Newman should not have compelled Dr. Jacoby to reveal to defendants the identities of the individuals who participated in the survey because Dr. Jacoby promised the individuals that their identities would remain confidential.  Magistrate Newman concluded that confidentiality is not equal to privilege and is not alone sufficient to limit discovery.  Magistrate Newman then balanced the

-11-

potential harm against the relevance of the information and concluded that disclosure was warranted.  Neither conclusion is clearly erroneous or contrary to law.

As previously stated, confidential is not the equivalent of privileged.  *See Merrill*, 443 U.S. at 362.  Further, plaintiff should not be able to conduct a survey for litigation and subsequently protect the survey from scrutiny by promising confidentiality to the participants. . . .  Magistrate Newman was not clearly erroneous in concluding that defendants' need to properly evaluate and rebut the reliability of the survey outweighed plaintiff's interest in shielding the survey participants.

*Id.* at 970.

These four cases alone, with the citations therein, appear to be the scope of authority on the topic of disclosing survey participants' identities.  None of the cases are binding precedent, persuasive authority from an appellate court, or from this circuit.  While the Court may have come to a different conclusion in deciding the issue of whether SCC must disclose the identities of the participants in the surveys it commissioned, this Court does not review the Magistrate Judge's decisions on non-dispositive matters de novo.  Rather, "clearly erroneous or contrary to law" review applies, and given the undeveloped nature of the law in this area, this Court is in no position to rule that the Magistrate Judge was clearly erroneous.  The Magistrate Judge considered and rejected the need for confidentiality of the survey participants, distinguishing this case from the sensitive information at play in *Lampshire*.  94 F.R.D. at 60.  Additionally, these surveys were conducted for litigation purposes, and the Magistrate Judge ordered that the participants of the Simonson report be disclosed "only to Lexmark's Outside Counsel, pursuant to the terms of the Protective Order entered herein concerning the production of confidential information."  [R. 375 at 5].  Accordingly, the Court finds that the Magistrate Judge exercised sound discretion in this matter, and SCC's Objections [R. 389] will be overruled.

## **CONCLUSION**

For the reasons set forth herein, it is hereby **ORDERED** as follows:

(A)  SCC's Objection to the Memorandum Opinion and Order Dated December 21, 2005 **[R. 187]** is **OVERRULED**;

(B)  SCC's Objections to Memorandum Opinion and Order Dated March 31, 2006 **[R. 273]** and SCC's Renewed Objections to Memorandum Opinion and Order Dated March 31, 2006, and Objections to Amended Memorandum Opinion and Order Dated June 15, 2006 **[R. 337]** are **OVERRULED** in part and **SUSTAINED** in part as follows:

> The Magistrate Judge's Amended Memorandum Opinion and Order of June 15, 2006, at numerical paragraph 2 is **CONSTRUED** to state: ". . . SCC is directed to produce *all documents*, both privileged and non-privileged, relating to SCC's efforts to defeat Lexmark's Prebate program.  This Order does not apply to documents ordinarily protected by the work-product doctrine prepared by SCC's current litigation counsel, while working in their capacity as litigation counsel, that were prepared after the commencement and in the course of this case."

(C)  MSE and Pendl's Objections to Memorandum Opinion and Order Dated April 6, 2006 **[R. 276]**, is **OVERRULED as MOOT**;

(D.1)  SCC's, *et alia*, Objections to Magistrate Judge's Report and Recommendation by Counterclaim Defendants **[R. 374]** is **OVERRULED**;

(D.2)  The Magistrate Judge's Report and Recommendation **[R. 361]** is **ADOPTED** in full and incorporated herein by reference as the opinion of this Court and, accordingly, SCC's Motion for sanctions **[R. 300]** is **DENIED**;

(D.3)  In lieu of the Court's disposition on the Magistrate Judge's Report and

-13-

Recommendation regarding SCC's Motion for sanctions at R. 300, SCC's "Emergency Request for Ruling" **[R. 347]** on said Motion is **DENIED as MOOT**; and

(E)  SCC's Objections to Memorandum Order Dated September 12, 2006 **[R. 389]** is

**OVERRULED**.

This the 10th day of January, 2007.


**Signed By:**

***Gregory F. Van Tatenhove***

**United States District Judge**