UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DISTRICT at LEXINGTON

Eastern District of Kentucky
FILED
MAR 2 2 2007
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 04-84-GFVT

STATIC CONTROL COMPONENTS, INC.,           PLAINTIFF/COUNTERCLAIM DEFENDANT

V.

LEXMARK INTERNATIONAL, INC.,           DEFENDANT/COUNTERCLAIM PLAINTIFF

V.

WAZANA BROTHERS INTERNATIONAL, INC.,
d/b/a MICRO SOLUTIONS ENTERPRISES, PENDL
COMPANIES, INC., and NER DATA PRODUCTS, INC.,           COUNTERCLAIM DEFENDANTS

## MEMORANDUM OPINION AND ORDER

\* \* \* \* \* \* \* \* \* \*

### I. INTRODUCTION

In the interests of judicial economy, the nature of this action, including claims asserted herein, as set out in greater detail in the Memorandum Opinion and Order entered on December 18, 2006 [DE #566], is incorporated herein by reference.

This matter is before the court on the Motion For Protective Order Regarding Pendl's Advice of Counsel Defense [DE #444] filed by counterclaim defendant Pendl Companies, Inc., ("Pendl"). This motion has been fully briefed and is ripe for review.[1]

### II. PENDL'S MOTION FOR PROTECTIVE ORDER

Pendl's motion for protective order concerns a subpoena duces tecum Lexmark served to Pendl's trial counsel, Joel T. Beres, Stites & Harbison, PLLC (hereafter "Stites"), in Louisville, Kentucky, on October 18, 2006, requesting the production of certain documents on October 27,

---

[1] At the initial pretrial conference conducted on March 12, 2007, the presiding district judge referred this motion to the Magistrate Judge for resolution on the merits. See DE #825.

2006, and that Mr. Beres appear for deposition on November 2, 2006. The subpoena in question served by Lexmark resulted from the fact that on October 12, 2006, Pendl advised Lexmark that Pendl intended to rely on the advice-of-counsel defense as one of its defenses to Lexmark's claims against Pendl for willful patent infringement.

As grounds for its motion for a protective order relieving it from complying with Lexmark's subpoena duces tecum, Pendl contends that this subpoena seeks deposition testimony and documents from its trial counsel, Stites, on topics concerning privileged information and work product related to each claim in this action. Pendl states that after it was made a party to this action by virtue of Lexmark's counterclaim, it retained Stites as trial counsel to defend it herein and that prior to being retained to defend against Lexmark's counterclaim, Stites had never performed any legal work of any kind for Pendl. Pendl also states that it has never received any advice from Stites either as to the validity of any Lexmark patent or as to the validity of the advice contained in the 1999 Becker opinion letter[2], which forms the basis of its advice-of-counsel defense. In addition to information protected by the attorney/client privilege, Pendl also asserts that it is entitled to a protective order because Lexmark's subpoena also seeks information protected by the work product doctrine and the common interest privilege.

In response, Lexmark argues that since Pendl has asserted the advice-of-counsel defense, it has automatically waived its attorney/client and/or work product privileges for all communications, including those with trial counsel, regarding the subject matter of the 1999 Becker opinion letter, which covers a wide range of topics, including the validity and enforceability of Lexmark's Prebate program in view of patent, contract, and antitrust laws. Lexmark asserts that in resisting this discovery, Pendl is trying to use information that ordinarily would be protected by the attorney/client and/or work product privileges as both a sword and a shield by disclosing the information favorable

---

[2] This letter is an 8-page letter dated August 26, 1999, addressed to Mr. Randy Pendl from opinion counsel, Robert D. Becker, an attorney with Coudert Brothers in San Francisco, California, has been filed under seal, and is identified as Exhibit G to Lexmark's <u>Opposition to Pendl's Motion for Protective Order Regarding Pendl's Advice of Counsel Defense</u> - DE #459.

to its defense and withholding unfavorable information. In support of its argument, Lexmark relies primarily on *In re EchoStar Communications Corp.*, 448 F.3d 1294 (Fed. Cir. 2006). Lexmark also argues that the authorities on which Pendl relies in support of its motion for a protective order are not controlling because they predate *EchoStar* and *Fort James Corp. v. Solo Cup Corp.*, 412 F.3d 1340 (Fed. Cir. 2005).

In reply, Pendl reiterates that its trial counsel, Stites, was hired solely for this litigation and has only communicated with Pendl regarding litigation and trial strategy and that since Stites has never communicated with Pendl concerning its advice-of counsel defense or the validity of the 1999 Becker opinion letter, there are no documents to produce in compliance with Lexmark's subpoena inasmuch as its advice-of-counsel defense does not waive privileged communications with trial counsel. Pendl also asserts that the authorities on which Lexmark relies in opposition to its motion for a protective order are either factually distinguishable or otherwise not controlling or applicable.

**Analysis**

At the outset, prior to reviewing the production of documents requested by Lexmark's subpoena duces tecum and/or the deposition topics listed therein, it is necessary to determine the legal consequences of Pendl's decision to raise the advice-of-counsel defense to Lexmark's infringement claim. Those consequences are discussed by the Federal Circuit at length in *EchoStar*, *supra*, which concerned petitions for a writ of mandamus filed in the Federal Circuit resulting from a decision of the trial court in a patent infringement action filed in the Eastern District of Texas styled *TiVo, Inc. v. EchoStar Communications Corp.*, identified as Civil Action No. 2:04-CV-1. The factual background of *EchoStar*, as summarized by the Federal Circuit, is set out below:

> TiVo sued EchoStar for infringement of its U.S. Patent No. 6,233,389 ("the '389 patent"). In response to the allegation of willful infringement, EchoStar asserted the defense of reliance on advice of counsel. Prior to the filing of the action, EchoStar relied on advice of in-house counsel. After the action was filed, EchoStar obtained additional legal advice from Merchant & Gould but elected not to rely on it. Presumably to explore further EchoStar's state of mind in determining that it did not infringe the patent, TiVo sought production of documents in the possession of EchoStar and Merchant & Gould. The district court held that by relying on advice of in-house counsel EchoStar waived its attorney-client privilege and attorney work-product immunity relating to advice of any counsel regarding infringement,

3

> including Merchant & Gould. The district court indicated that the scope of the waiver included communications made either before or after the filing of the complaint and any work product, whether or not the product was communicated to EchoStar. The district court also held that EchoStar could redact information related only to trial preparation or information unrelated to infringement. EchoStar produced communications, including two infringement opinions from Merchant & Gould, but did not produce any work product related to the Merchant & Gould opinions.

*In re EchoStar*, 448 F.3d at 1297.

### A. Attorney/client privilege and work product doctrine

Upon review of the petitions for writ of mandamus filed in *In re Echostar, supra*, submitted by both EchoStar and Merchant & Gould, the Federal Circuit concluded that the broad scope of waiver employed by the district court concerning both the attorney/client privilege and work product doctrine was an abuse of discretion. In the following excerpt from *EchoStar*, the Federal Circuit explains in great detail how the attorney/client privilege and documents that otherwise would be exempt from disclosure by work product immunity are affected by the advice-of-counsel defense in a patent infringement action:

> The attorney-client privilege and the work-product doctrine, though related, are two distinct concepts and waiver of one does not necessarily waive the other. *See Carter v. Gibbs*, 909 F.2d 1450, 1451 (Fed. Cir.1990) *(en banc), superseded in non-relevant part,* Pub.L. No. 103-424, § 9(c), 108 Stat. 4361 (1994), *as recognized in Mudge v. United States*, 308 F.3d 1220, 1223 (Fed. Cir.2002); *see also United States v. Nobles*, 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). In general, a party may obtain discovery of any matter that (1) is "not privileged" and (2) "is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Among other things, attorney-client communications are designated as "privileged." *See Upjohn*, 449 U.S. at 389, 101 S.Ct. 677; *Genentech, Inc. v. Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir.1997). "The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." *Id.* We recognize the privilege in order to promote full and frank communication between a client and his attorney so that the client can make well-informed legal decisions and conform his activities to the law. *See Upjohn*, 449 U.S. at 389, 101 S.Ct. 677; *XYZ Corp. v. United States*, 348 F.3d 16, 22 (1st Cir.2003). This privilege is at the discretion of the client. *Knorr-Bremse*, 383 F.3d at 1345; *Carter*, 909 F.2d at 1451. The client can waive the attorney-client privilege when, for instance, it uses the advice to establish a defense. *See id.* However, selective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice. *XYZ Corp.*, 348 F.3d at 24. In such a case, the party uses the attorney-client privilege as both a sword and a shield. *Id.; Fort James Corp.*, 412 F.3d at 1349. To prevent such abuses, we recognize that when a party defends its actions by disclosing an attorney-client communication, it waives the

4

attorney-client privilege as to all such communications regarding the same subject matter. *Id.*

In contrast to the attorney-client privilege, the work-product doctrine, or work-product immunity as it is also called, can protect "documents and tangible things" prepared in anticipation of litigation that are both non-privileged and relevant. Fed.R.Civ.P. 26(b)(3). Unlike the attorney-client privilege, which protects all communication whether written or oral, work-product immunity protects documents and tangible things, such as memorandums, letters, and e-mails. *See generally Judicial Watch, Inc. v. Dep't of Justice,* 432 F.3d 366 (D.C. Cir.2005). We recognize work-product immunity because it promotes a fair and efficient adversarial system by protecting "the attorney's thought processes and legal recommendations" from the prying eyes of his or her opponent. *Genentech,* 122 F.3d at 1415 (citations omitted); *accord Hickman v. Taylor,* 329 U.S. 495, 511-14, 67 S.Ct. 385, 91 L.Ed. 451 (1947) ("Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.... Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten.... Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."); *see also Nobles,* 422 U.S. at 237; *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 864 (D.C. Cir.1980). Essentially, the work-product doctrine encourages attorneys to write down their thoughts and opinions with the knowledge that their opponents will not rob them of the fruits of their labor. *Hickman,* 329 U.S. at 511, 67 S.Ct. 385; *Id.* at 516, 67 S.Ct. 385 (Jackson, J. *concurring* ) ("[A] common law trial is and always should be an adversary proceeding. Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary."); *United States v. Adlman,* 68 F.3d 1495, 1501 (2d Cir.1995) ("The purpose of the doctrine is to establish a zone of privacy for strategic litigation planning and to prevent one party from piggybacking on the adversary's preparation."); *Coastal States,* 617 F.2d at 864 (noting that the effect of no immunity would mean "less work-product would be committed to paper, which might harm the quality of trial preparation").

Like the attorney-client privilege, however, the work-product doctrine is not absolute. *See In re Martin Marietta Corp.,* 856 F.2d 619, 626 (4th Cir.1988). First, a party may discover certain types of work product if they have "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent ... by other means." Rule 26(b)(3). This rule, however, only allows discovery of "factual" or "non-opinion" work product and requires a court to "protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative." *Id.; accord United States v. Adlman,* 134 F.3d 1194, 1197 (2d Cir.1998); *Martin Marietta Corp.,* 856 F.2d at 626.

Second, a party may discover work product if the party waives its immunity. *See id.* at 622-23; *Thorn EMI N. Am. v. Micron Tech.,* 837 F.Supp. 616, 621 (D. Del.1993). However, work product waiver is not a broad waiver of all work product related to the same subject matter like the attorney-client privilege. *Martin Marietta Corp.,* 856 F.2d at 626. Instead, work-product waiver only extends to "factual" or

5

"non-opinion" work product concerning the same subject matter as the disclosed work product. *See id.* at 625 (noting that a party "impliedly waived the work-product privilege as to all non-opinion work-product on the same subject matter as that disclosed.") (*citing Nobles,* 422 U.S. at 239, 95 S.Ct. 2160).

We recognize that the line between "factual" work product and "opinion" work product is not always distinct, especially when, as here, an attorney's opinion may itself be "factual" work product. When faced with the distinction between where that line lies, however, a district court should balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product.

That being said, we recognize at least three categories of work product that are potentially relevant to the advice-of-counsel defense here. They include: (1) documents that embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter; (2) documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client; and (3) documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client. *See Thorn EMI,* 837 F.Supp. at 622- 623. (footnote omitted).

448 F.3d at 1300-02.

The *EchoStar* court went on to hold that of the three categories of work product outlined above in the preceding paragraph, categories (1) and (3) are discoverable, but category (2) is not:

The second category of work product, which is never communicated to the client, is not discoverable. Under Rule 26(b)(3), this so-called "opinion" work product deserves the highest protection from disclosure. *See Adlman,* 134 F.3d at 1197. While an accused infringer may waive the immunity for work product that embodies an opinion in letters and memorandum communicated to the client, he does not waive the attorney's own analysis and debate over what advice will be given. *See Ortho Pharm.,* 959 F.2d at 944. Upon waiver of attorney-client privilege, communicative documents, such as opinion letters, become evidence of a non-privileged, relevant fact, namely what was communicated to the client, *see Nobles,* 422 U.S. at 239 n. 14, 95 S.Ct. 2160 ("[W]here ... counsel attempts to make a testimonial use of [work-product] materials the normal rules of evidence come into play with respect to ... production of documents."); however, counsel's legal opinions and mental impressions that were not communicated do not acquire such factual characteristics and are, therefore, not within the scope of the waiver. As the *Martin Marietta Corp.* court noted,

> There is relatively little danger that a litigant will attempt to use a pure mental impression or legal theory as a sword and as a shield in the trial of a case so as to distort the factfinding process. Thus, the protection of lawyers from the broad repercussions of subject matter waiver in this context strengthens the adversary process, and, unlike the selective disclosure of evidence, may ultimately and ideally further the search for the truth.

856 F.2d at 626. Thus, if a legal opinion or mental impression was never communicated to the client, then it provides little if any assistance to the court in

determining whether the accused knew it was infringing, and any relative value is outweighed by the policies supporting the work-product doctrine.

448 F.3d at 1303-04.

In view of the foregoing considerations, the *EchoStar* court concluded, as follows:

> Therefore, when an alleged infringer asserts its advice-of-counsel defense regarding willful infringement of a particular patent, it waives its immunity for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, and infringed by the accused. This waiver of both the attorney-client privilege and the work-product immunity includes not only any letters, memorandum, conversation, or the like between the attorney and his or her client, but also includes, when appropriate, any documents referencing a communication between attorney and client.
>
> Here, Merchant & Gould work product that was not communicated to EchoStar or does not reflect a communication is not within the scope of EchoStar's waiver because it obviously played no part in EchoStar's belief as to infringement of the '389 patent. *See Steelcase,* 954 F.Supp. at 1198-99. It may very well be true, as TiVo suggests, that at times some parties would communicate draft opinion letters or the contents thereof to the client confidentially in order to avoid disclosing that communication during potential discovery if and when the attorney-client privilege is waived, but we cannot eviscerate the legitimate policies of the work-product doctrine and chill the principles of our adversary system as a whole on account of the possibility that, from time to time, there may be occurrences of ethical transgressions.
>
> In sum, the advice-of-counsel defense to willfulness requires the court to decide, *inter alia,* whether counsel's opinion was thorough enough to "instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable." *Ortho Pharm.,* 959 F.2d at 944. If a Merchant & Gould document was not communicated to EchoStar or if a Merchant & Gould document does not reference a communication between Merchant & Gould and EchoStar, its relevant value is outweighed by the policies of the work-product doctrine. Thus, it was an abuse of discretion for the district court to determine that the scope of the waiver of privilege extended to such documents. (footnote omitted).

448 F.3d at 1304-05.

**B.     Extension of waiver to trial counsel**

Although *EchoStar* did not expressly address the issue of communications with trial counsel, the court in *Echostar* noted that the waiver concerns not only the communication with counsel containing the advice on which the alleged infringer relies, such as an opinion letter, but also "communications relating to the same subject matter" that the alleged infringer had with other counsel, which arguably could include trial counsel:

7

> Thus, when EchoStar chose to rely on the advice of in-house counsel, it waived the attorney-client privilege with regard to any attorney-client communications relating to the same subject matter, including communications with counsel other than in-house counsel, which would include communications with Merchant & Gould. *See Akeva LLC v. Mizuno Corp.*, 243 F.Supp.2d 418, 423 (M.D.N.C.2003).

448 F.3d at 1299.

In light of the foregoing applicable law, the court now turns to the present action. As additional support for its motion for a protective order, Pendl has also provided the court with the affidavit of its lead trial counsel, Joel T. Beres, which states in relevant part, as follows:

> 1. I am a Member of Stites & Harbison, PLLC and lead trial attorney representing Pendl Companies, Inc. ("Pendl") [in] Civil Action No. 04-CV-84-GFVT currently pending in United States District Court for the Eastern District of Kentucky.
>
> 2. After receiving Lexmark's Counterclaim, Pendl retained the law firm of Stites & Harbison as trial counsel for its defense.
>
> 3. Stites & Harbison had never performed legal work of any kind for Pendl before this retention.
>
> 4. Stites & Harbison was retained and has served solely as Pendl's trial counsel in this matter.
>
> 5. The retention agreement between Stites & Harbison and Pendl limits Stites & Harbison's representation to defending Lexmark's suit.
>
> 6. Stites & Harbison has never provided Pendl advice as to validity of any Lexmark patent.
>
> 7. Stites & Harbison has never provided advice on the validity of Mr. Robert Becker's advice in 1999, which forms the basis for Pendl's advice of counsel defense.
>
> 8. Each and every communication between Stites & Harbison and Pendl has been limited to discussions of litigation or trial strategy.
>
> 9. Each and every document provided to Pendl has similarly dealt solely with such litigation and trial strategy.

Declaration of Joel T. Beres, 10/30/06 - Exhibit 1 to Pendl's Motion for Protective Order Regarding Pendl's Advice of Counsel Defense [DE #444].

Based on the above-referenced affidavit of Pendl's lead trial counsel, Joel T. Beres, affirmatively stating (1) that Stites had never performed legal work of any kind for Pendl before this

8

retention, (2) that Stites was retained and has served solely as Pendl's trial counsel in this matter, (3) that the retention agreement between Stites and Pendl limits Stites's representation to defending this action, (4) that Stites has never provided Pendl advice as to validity of any Lexmark patent, (5) that Stites has never provided advice to Pendl concerning the validity of Mr. Robert Becker's advice in 1999, which forms the basis for Pendl's advice of counsel defense, (6) that all communications between Stites and Pendl have been limited to discussions of litigation or trial strategy, and (7) that each and every document provided to Pendl has similarly dealt solely with such litigation and trial strategy, the Magistrate Judge concludes that Pendl's motion for a protective order has merit because Pendl's trial counsel affirmatively states that Stites did not give or offer Pendl advice concerning the validity, enforcement, and infringement of Lexmark's patent at issue which Lexmark accuses Pendl of infringing.

Thus, while Pendl's assertion of the advice-of-counsel defense to Lexmark's claim of patent infringement operates to waive the attorney/client privilege and the work product immunity for any document or opinion that embodies or discusses a communication to or from Pendl concerning whether that patent is valid, enforceable, and infringed, Pendl's lead trial counsel affirmatively states that he has no such documents in his possession because his law firm has never offered or given Pendl advice concerning the validity, enforcement, and infringement of the Lexmark patent at issue. Consequently, Pendl's trial counsel has no documents to produce that are responsive to Lexmark's subpoena duces tecum.[3]

Accordingly, **IT IS HEREBY ORDERED** that:

1. Pendl's Motion For Protective Order Regarding Pendl's Advice of Counsel Defense [DE #444] is **GRANTED**.

---

[3] Since Stites represents that it has had no communications with Pendl concerning the validity, enforcement, and infringement of Lexmark's patent, there is no need to engage in further analysis of this matter concerning "communications relating to the same subject matter."

2. Pendl is relieved from responding to the Requests For Production of Documents and Things set out in Lexmark's subpoena duces tecum served to Pendl's trial counsel on October 18, 2006, and Pendl's lead trial counsel, Joel T. Beres, is relieved from being deposed on any of the Deposition Topics listed in this same subpoena duces tecum.

3. Pendl's request for its costs and attorney's fees associated with the filing of its motion for protective order is **DENIED** as there is no evidence to suggest that Lexmark had any reason to know, prior to the filing of Pendl's motion for protective order, that Pendl's trial counsel had never offered or given Pendl any advice concerning the validity, enforcement, or infringement of the Lexmark patent at issue, information that was revealed in the affidavit of Pendl's lead trial counsel, Joel T. Beres.

This 22nd day of March, 2007.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE