Eastern District of Kentucky
FILED

MAR 2 6 2007

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DISTRICT at LEXINGTON

CIVIL ACTION NO. 04-84-GFVT

| | |
|---|---|
| STATIC CONTROL COMPONENTS, INC., | PLAINTIFF/COUNTERCLAIM DEFENDANT |
| V. | |
| LEXMARK INTERNATIONAL, INC., | DEFENDANT/COUNTERCLAIM PLAINTIFF |
| V. | |
| WAZANA BROTHERS INTERNATIONAL, INC., d/b/a MICRO SOLUTIONS ENTERPRISES, PENDL COMPANIES, INC., and NER DATA PRODUCTS, INC., | COUNTERCLAIM DEFENDANTS |

**MEMORANDUM OPINION AND ORDER**

\* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

In the interests of judicial economy, the nature of this action, including claims asserted herein, as set out in greater detail in the Memorandum Opinion and Order entered on December 18, 2006 [DE #566], is incorporated herein by reference.

This matter is before the court on the motion of plaintiff Static Control's trial counsel, Wyatt, Tarrant & Combs, LLP, (hereafter "Wyatt") filed pursuant to Fed.R.Civ.P. 45(c), to quash a subpoena duces tecum [DE #423] served on Wyatt by defendant Lexmark on October 19, 2006. This motion has been fully briefed and is ripe for review.[1]

## II. WYATT'S MOTION TO QUASH SUBPOENA

On October 19, 2006, Lexmark served a subpoena duces tecum to Wyatt, requesting the production of certain documents on October 27, 2006, and that plaintiff's trial counsel, Wyatt, appear

---

[1] At the initial pretrial conference conducted on March 12, 2007, the presiding district judge referred this motion to the Magistrate Judge for resolution on the merits. See DE #825.

for deposition on November 9, 2006.[2] The subpoena in question served by Lexmark resulted from the fact that on October 12, 2006, Pendl, a defendant who was made a party to this action on the counterclaim filed by Lexmark, intended to rely on the advice-of-counsel defense as one of its defenses to Lexmark's claims against Pendl for willful patent infringement.

Wyatt asserts that Lexmark's subpoena to it should be quashed for the following reasons: (1) the subpoena seeks information protected by the attorney/client privilege and work product doctrine; (2) Pendl's assertion of the advice-of-counsel defense to Lexmark's claims for willful patent infringement did not operate to waive the common interest privilege vis-a-vis Static Control, Wyatt's client; (3) the subpoena fails to meet mandatory prerequisites for deposing opposing counsel; (4) the subpoena fails to provide a sufficient response time, is overly broad and unduly burdensome, and seeks duplicative documents. Wyatt also contends that Static Control is entitled to the attorney's fees it incurred in the filing of this motion to quash Lexmark's subpoena.

Lexmark counters that the court has previously determined that Static Control has "waived the attorney/client and work product privileges for all documents pertaining to Lexmark's Prebate program."[3] Lexmark also argues that since Pendl has asserted the advice-of-counsel defense, it has automatically waived its attorney/client and/or work product privileges for all communications, including those with trial counsel, regarding the subject matter of the 1999 Becker opinion letter, which covers a wide range of topics, including the validity and enforceability of Lexmark's Prebate program in view of patent, contract, and antitrust laws; therefore, Lexmark asserts:

> ... Wyatt cannot refuse to provide information relating to the subject matter of the Becker Opinion that was transmitted to Pendl. Common interest agreements do not have such an elevated place in the law and they do not empower or entitle the parties thereto to deprive an adverse party of otherwise discoverable information.

---

[2] By definition, "Wyatt" included Mickey T. Webster and W. Craig Robertson, III, attorneys with the Wyatt law firm.

[3] For the reasons stated in a Memorandum Opinion and Order entered on June 15, 2006, the Magistrate Judge concluded that Static Control has "waived the attorney/client and work product privileges for all documents pertaining to Lexmark's Prebate program."

Lexmark's Opposition to Motion to Quash Subpoena on Wyatt, Tarrant & Combs, pp. 8-9. [DE #485]. Lexmark also argues:

> As noted above, Pendl has waived the attorney/client and work product privileges for all documents pertaining to the validity and enforceability of Lexmark's patents under Lexmark's Prebate program by disclosing the Becker Opinion. Lexmark is entitled to discovery of Pendl's communications with others relating to this same subject matter because such communications are relevant to Pendl's state of mind. Such communications include those, either directly or indirectly via Pendl's counsel, with Static Control's counsel, Wyatt.

*Id.* at 13.

Lexmark submits that in resisting this requested discovery, Static Control, through its counsel Wyatt, is trying to use information that ordinarily would be protected by the attorney/client and/or work product privileges as both a sword and a shield by disclosing the information favorable to its defense and withholding unfavorable information. In support of its argument, Lexmark relies primarily on *In re EchoStar Communications Corp.*, 448 F.3d 1294 (Fed. Cir. 2006). Lexmark also argues that the authorities on which Wyatt relies in support of its motion to quash subpoena are not controlling because they predate *EchoStar* and *Fort James Corp. v. Solo Cup Corp.*, 412 F.3d 1340 (Fed. Cir. 2005).

In reply, Wyatt points to the affidavit of W. Craig Robertson, III, that was attached to its motion to quash, and argues:

> ... Wyatt submitted with its Motion to Quash the Affidavit of W. Craig Robertson III, which stated unequivocally that Wyatt's attorneys have not given any opinion concerning validity or infringement of any patent, and its memorandum stated that any and all of its attorneys' conversations with counsel for Pendl "were concerning matters of common interest to their preparation for trial." (Memorandum, p. 3, Exhibit 1 at ¶5). In fact, during the years this litigation has been pending before the Court, whether in innumerable telephone conversations, discussions between counsel, or even in proceedings before Magistrate Judge Todd, a common refrain from Wyatt's attorneys has been that they play no role in patent and anti-trust matters at issue in this case. <u>In other words, Lexmark's attorneys have known for years that Wyatt would not possess information or documents responsive to the subpoena it nonetheless issued.</u> (emphasis in original).

Reply Memorandum in Support of Wyatt, Tarrant & Combs, LLP's Motion to Quash, p. 3 [DE #501].

3

Wyatt also reiterates that Lexmark has failed to show that it is entitled to take discovery from opposing counsel and has also failed to establish that Pendl's reliance on an advice-of-counsel defense waives Static Control's attorney/client and work product privileges.

## Analysis

The court shall begin its analysis of Wyatt's motion to quash subpoena by reviewing Lexmark's subpoena duces tecum in question, which requests the following:

### REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

**Request No. 1:** All documents and things relating to the subject matter discussed in Robert Becker's letter to Randy Pendl of August 26, 1999 (attached hereto as Tab 1).

**Request No. 2:** All documents and things that reflect, embody, or discuss communications between Wyatt and Pendl relating to the subject matter discussed in Robert Becker's letter Randy Pendl of August 26, 1999.

**Request No. 3:** All documents and things that reflect, embody, or discuss communications between Wyatt and Pendl's advice of counsel defense, including Pendl's decision to invoke the defense.

**Request No. 4:** All documents and things that reflect, embody, or discuss communications between Wyatt and Pendl relating to the scope, validity, and/or enforceability of Lexmark's Prebate Program.

**Request No. 5:** All documents and things that reflect, embody, or discuss communications between Wyatt and Pendl relating to communications with Pendl regarding the infringement of Lexmark's Patents.

**Request No. 6:** All documents and things that reflect, embody, or discuss communications between Wyatt and Pendl relating to the antitrust implications, *vel non*, of Lexmark's Prebate Program.

**Request No. 7:** All documents and things that reflect, embody, or discuss communications between Wyatt and Pendl relating to the contract law concerns, *vel non*, of Lexmark's Prebate Program.

**Request No. 8:** All documents and things that reflect, embody, or discuss communications between Wyatt and Pendl relating to the issue of whether Pendl's remanufacturing of used toner cartridges constitutes permissible repair.

**Request No. 9:** All documents and things that reflect, embody, or discuss communications between Wyatt and Pendl relating to the legal and/or factual bases set forth in Robert Becker's letter to Randy Pendl of August 26, 1999.

Additionally, the subpoena duces tecum listed the following deposition topics:

4

## DEPOSITION TOPICS

**Deposition Topic No. 1:** Communications between Wyatt and Pendl relating to the subject matter discussed in Robert Becker's letter Randy Pendl of August 26, 1999.

**Deposition Topic No. 2:** Communications between Wyatt and Pendl relating to Pendl's advice of counsel defense, including Pendl's decision to invoke the defense.

**Deposition Topic No. 3:** Communications between Wyatt and Pendl relating to the scope, validity, and/or enforceability of Lexmark's Prebate Program.

**Deposition Topic No. 4:** Communications between Wyatt and Pendl relating to the infringement of Lexmark's Patents.

**Deposition Topic No. 5:** Communications between Wyatt and Pendl relating to the antitrust implications, *vel non*, of Lexmark's Prebate Program.

**Deposition Topic No. 6:** Communications between Wyatt and Pendl relating to the contract law concerns, *vel non*, of Lexmark's Prebate Program.

**Deposition Topic No. 7:** Communications between Wyatt and Pendl relating to the issue of whether Pendl's remanufacturing of used toner cartridges constitutes permissible repair.

**Deposition Topic No. 8:** Communications between Wyatt and Pendl relating to the legal and/or factual bases set forth in Robert Becker's letter to Randy Pendl of August 26, 1999.

A. **The 1999 Becker Opinion letter to Pendl**

At the outset, it is given that by the assertion of the advice-of-counsel defense to Lexmark's willful infringement claims against Pendl, Pendl has waived the attorney/client privilege and work product doctrine protections regarding the subject matter of the 1999 Becker Opinion letter on which Pendl relied as the basis for its advice-of-counsel defense.[4] Thus, Lexmark would be entitled to discover from Pendl any communications Pendl has had with its counsel, including Pendl's trial counsel, and any communications Pendl has had with other counsel herein, concerning the subject matter of the 1999 Becker Opinion and Pendl's decision to raise an advice-of-counsel defense to Lexmark's willful infringement claims against Pendl. However, Lexmark's subpoena duces tecum

---

[4] For a more detailed discussion of Pendl's waiver and the consequences thereof, the Magistrate Judge refers the parties to the <u>Memorandum Opinion and Order</u> entered on March 22, 2007 [DE #850].

to Wyatt, counsel for Static Control, seeks discovery from Wyatt rather than from Pendl, based, in part, on Pendl's waiver of the attorney/client and work product privileges stemming from Pendl's decision to assert an advice-of-counsel defense to Lexmark's patent infringement claims.

Before turning to other issues relative to the waiver associated with the 1999 Becker Opinion letter, it is first necessary to consider the affidavit of W. Craig Robertson, III, which states in relevant part, as follows:

> 1. I, W. Craig Robertson III, am a partner with the law firm of Wyatt, Tarrant & Combs, LLP.
>
> 2. On or about January 1, 2003, this firm was retained to serve as local trial counsel for Static Control Components, Inc.
>
> 3. Since that time I have been the partner in charge of this litigation. Wyatt was retained solely as trial counsel and not to offer any opinions as to the validity or infringement of any patent.
>
> 4. Wyatt was not retained by any other party to the litigation.
>
> 5. As trial counsel for Static Control, Wyatt has not provided any party to this litigation, including Static Control, with any opinion as to the validity or infringement of any patent.
>
> 6. Wyatt has not provided any legal services whatsoever in this matter to any party other than Static Control.
>
> 7. Static Control and the remanufacturing defendants in this case are parties to a common interest agreement.
>
> 8. A common interest agreement does not contemplate the provision of, nor has it been used to provide, any party with any opinions as to the validity or infringement of any patent.

<u>Affidavit of W. Craig Robertson III</u>, 10/30/06 - Exhibit 1 to Wyatt's <u>Motion to Quash Subpoena Served on Wyatt, Tarrant & Combs, LLP</u> [DE #423].

Based on the above-referenced affidavit of W. Craig Robertson, III, Static Control's local trial counsel, stating (1) that Wyatt was retained solely as trial counsel and not to offer any opinions as to the validity or infringement of any patent, (2) that Wyatt was not retained by any other party to the litigation, (3) that as trial counsel for Static Control, Wyatt has not provided any party to this litigation, including Static Control, with any opinion as to the validity or infringement of any patent,

6

and (4) that Wyatt has not provided any legal services whatsoever in this matter to any party other than Static Control, the Magistrate Judge concludes that Wyatt's motion to quash has merit because Wyatt, Static Control's local trial counsel, affirmatively states that Wyatt did not provide any party to this litigation, including Static Control, with any opinion as to the validity or infringement of any patent. Therefore, since Wyatt did not provide any party hereto with any opinion as to the validity or infringement of any Lexmark patent, there are no such "opinion" documents generated by Wyatt to produce.

> In response to Wyatt's motion to quash, Lexmark argues:
>
>> Most significantly, Mr. Robertson's Declaration does not deny that Wyatt communicated with Pendl's or Pendl's counsel about the validity of Lexmark's Prebate Program, and the related enforceability of Lexmark's patents under that program. If such communications occurred and were conveyed to Pendl, Lexmark is entitled to discover them – which is different and distinct from litigation or trial strategy.
>
> <u>Lexmark's Opposition to Motion to Quash Subpoena on Wyatt, Tarrant & Combs</u>, p. 5. [DE #485].

It is true that Mr. Robertson's affidavit is silent as to whether there has ever been any communication between Wyatt and Pendl or Pendl's counsel concerning Lexmark's Prebate Program and the related enforceability of Lexmark's patents under that program; it is also true that Mr. Robertson *does affirmatively state* that: "As trial counsel for Static Control, Wyatt has not provided any party to this litigation, including Static Control, with any opinion as to the validity or infringement of any patent." Thus, it is conceivable that while Wyatt expressed no opinion as to patent validity or enforcement, Pendl may have provided Wyatt, Static Control's counsel, with communications containing such opinions rendered by Pendl's own counsel; therefore, Wyatt may have received from Pendl and may be in possession of documents that express an opinion as to the validity or enforcement of a Lexmark patent. However, assuming *arguendo* that is the case, that does not automatically mean that Lexmark is entitled to obtain this discovery from Wyatt in the first instance. Obviously, Lexmark would be entitled to discover this information from Pendl, as Pendl is the party who has waived the attorney/client and work produce privileges in question and Pendl

7

is the party who may have provided this information to Wyatt. Lexmark would also be entitled to discover this information from Wyatt if this information were not available from Pendl and if Lexmark otherwise met the following test for taking discovery from opposing counsel that was established in *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987), and was subsequently adopted by the Sixth Circuit in *Nationwide Mutual Insurance Company v. Home Insurance Company*, 278 F.3d 621 (6th Cir.2002):

> . . . Discovery from an opposing counsel is "limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986) (citation omitted).

*Id.* at 628.

Lexmark does not state that this information is unavailable from Pendl, and Lexmark has not otherwise met the prerequisites of the *Shelton* test that was adopted by the Sixth Circuit in *Nationwide Mutual Insurance Company*, *supra*.[5] Therefore, until Lexmark meets the three-prong test established in *Shelton*, *supra*, it is not entitled to take discovery from opposing trial counsel, such as Wyatt.

**B.    The Blakey Opinion letter**

Lexmark also appears to argue that it is entitled to obtain the information sought from Wyatt in the subpoena duces tecum in question because the court has previously found that Static Control has waived the attorney/client and work product privileges by virtue of Static Control's disclosure of the Blakey Opinion letter to third parties. Specifically, Lexmark states:

> This Court has already held that Wyatt's client Static Control has "waived the attorney/client and work product privileges for all documents pertaining to Lexmark's Prebate program." *Static Control Components, Inc. v. Lexmark Int'l, Inc.*,

---

[5]Since this discovery matter is not unique to patent law, in this case, the law of the Sixth Circuit controls rather than law of the Federal Circuit. *See Resqnet.Com, Inc. v. Lansa, Inc.*, 2004 WL 1627170 (S.D.N.Y. June 21, 2004) ("on procedural issues not unique to patent law, such as whether litigation counsel has information such that he should be deposed, the Federal Circuit defers to the law of the regional circuit." *Id.* at *1 (citing *Utah Med. Prods., Inc. v. Graphic Control Corp.*, 350 F.3d 1376, 1381 (Fed. Cir.2003)).

> 2006 U.S. Dist. LEXIS 40612 (E.D. Ky., June 15, 2006) (Static Control's objections pending). Static Control widely disseminated to its customers a legal opinion that it obtained from an outside attorney, Mr. Walker Blakey, discussing the enforceability, validity, and general legality of Lexmark's Prebate program ("the Blakey Opinion"). This Court properly determined that Static Control thereby waived any claim to privilege. Significantly for purposes of Wyatt's motion, this waiver is not limited in time or to specific counsel for Static Control.

Lexmark's Opposition to Motion to Quash Subpoena on Wyatt, Tarrant & Combs, p. 2, n.2 [DE #485].

As noted in the foregoing argument, at the time Lexmark filed its response to Wyatt's motion to quash subpoena, Static Control had objected to the Magistrate Judge's Memorandum Opinion and Order of June 15, 2006, directing Static Control to produce all documents to Lexmark, both privileged and non-privileged, relating to Static Control's efforts to defeat Lexmark's Prebate program by virtue of Static Control's disclosure of the Blakey Opinion letter to third parties, and these objections were pending before the district court. However, subsequently, for the reasons stated in an Order entered on January 10, 2007, the presiding district judge overruled in part and sustained in part Static Control's objections to the Magistrate Judge's Memorandum Opinion and Order of June 15, 2006, and narrowed said opinion and order as follows:

> The Magistrate Judge's Amended Memorandum Opinion and Order of June 15, 2006, at numerical paragraph 2 is **CONSTRUED** to state: ". . . SCC is directed to produce all documents, both privileged and non-privileged, relating to SCC's efforts to defeat Lexmark's Prebate program. This Order does not apply to documents ordinarily protected by the work-product doctrine prepared by SCC's current litigation counsel, while working in their capacity as litigation counsel, that were prepared after the commencement and in the course of this case."

Order, 1/10/07, p. 13 [DE #660].

Irrespective of the district court's ultimate decision concerning Static Control's waiver associated with the Blakey Opinion letter, such waiver by Static Control is irrelevant to Pendl's waiver associated with the 1999 Becker Opinion letter on which Pendl relies as the basis for its advice-of-counsel defense relative to Lexmark's infringement claims against Pendl. Lexmark mixes apples and oranges by interjecting Static Control's waiver associated with the Blakey Opinion letter.

### C. Common interest agreement among counterclaim defendants

Lexmark also appears to argue that Pendl's waiver associated with the Becker Opinion letter also waives Static Control's attorney/client and work product privileges relative to communications on the same subject matter as the Becker Opinion letter.

However, contrary to Lexmark's argument, due to the common interest agreement among the counterclaim defendants, Pendl's waiver associated with the Becker Opinion letter does not also waive Static Control's attorney/client and work product privileges concerning the same subject matter as the Becker Opinion letter. The common interest agreement *prohibits* one party's disclosure from waiving any other party's privilege. *See, e.g., In re Blinder, Robinson & Co., Inc.*, 140 B.R. 790, 795 (D. Colo. 1992) (joint defense privilege cannot be waived without consent of all parties who share privilege); *Metro Wastewater Reclamation Dist. v. Continental Cas. Co.*, 142 F.R.D. 471, 478 (D. Colo. 1992) (same). *See also generally, e.g., John Morrell & Co. v. Local Union 304A of United Food and Commercial Workers, AFL-CIO*, 913 F.2d 544, 555-56 (8th Cir. 1990) (it is fundamental that joint defense privilege cannot be waived without consent of all parties to the defense) (citing cases); *In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129*, 902 F.2d 244 (4th Cir. 1990) (one participant in common interest privilege cannot unilaterally waive privilege without consent of other participants in the privilege); *In re Benun*, 339 B.R. 115, 128-29 (Bkrtcy. D. N.J. 2006) (when one of two or more clients with common interests waives his attorney-client privilege in dispute with third party, that one client's waiver of privilege does not effect a waiver as to other clients' attorney-client privilege) (*citing, inter alia, Interfaith Housing Delaware, Inc. v. Town of Georgetown*, 841 F. Supp. 1393, 1402 (D. Del. 1994)).

Static Control points out that it has not consented to any waiver of the common interest privilege that exists among itself and the Remanufacturers. Therefore, Static Control asserts that even if Pendl waived its own privileges with respect to certain materials of its own, related to advice it received from non-litigation counsel before litigation commenced, that limited waiver cannot be

10

construed to waive any privilege that belongs to Static Control, including the common interest privilege that Static Control shares with the Remanufacturers.

The Magistrate Judge is persuaded by Static Control's argument concerning the common interest agreement.

Accordingly, for all of the reasons stated above, **IT IS HEREBY ORDERED** that:

1. The motion of Wyatt, Tarrant & Combs, LLP, to Quash Subpoena Served on Wyatt, Tarrant & Combs, LLP served on it by Lexmark [DE #423] is **GRANTED**.

2. Wyatt, Tarrant & Combs, LLP, is relieved from responding to the Requests For Production of Documents and Things set out in Lexmark's subpoena duces tecum served to W. Craig Robertson, III, Static Control's local trial counsel, on October 19, 2006, and Mr. Robertson is relieved from being deposed on any of the Deposition Topics listed in this same subpoena duces tecum.

3. Wyatt's request for its costs and attorney's fees associated with the filing of its motion to quash subpoena is **PASSED** to conclusion of this litigation.

This 26th day of March, 2007.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE