UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| STATIC CONTROL COMPONENTS, INC., | ) ) ) |
| Plaintiff/Counterclaim Defendant, | ) ) ) |
| V. | ) ) |
| LEXMARK INTERNATIONAL, INC., | ) ) |
| Defendant/Counterclaim Plaintiff. | ) ) |

CONSOLIDATED CIVIL ACTION NOS.

5:02-571 AND 5:04-84

**MEMORANDUM OPINION**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This Matter is before the Court on various post-trial motions filed by the parties. Lexmark filed three renewed Motions for Judgment as a Matter of Law: one regarding direct infringement by Static Control's Customers, inducement of infringement by Static Control, and patent exhaustion [R. 1383]; one regarding patent misuse [R.1381]; and one regarding laches, equitable estoppel, and the statute of limitations [R. 1384]. Lexmark also filed a Motion that the Court Should Not Rule on Static Control's Affirmative Equitable Defenses Because Such Defenses are Moot [R. 1385]. Also pending is Static Control's Motion asking the Court to reconsider its earlier ruling on the validity of Lexmark's Prebate Program in light of the Supreme Court's recent decision in *Quanta Computer, Inc. v. LG Electronics, Inc.*, 128 S. Ct. 2109 (2008) [R. 1422].[1]

---

[1] The Supreme Court granted certiorari in *Quanta* on September 25, 2007. The Court deferred review of the post-verdict motions pending the Supreme Court's decision.

A hearing was held in this case on September 29, 2008, to hear arguments on Static Control's Motion to Reconsider [R. 1422]. After this hearing, it appeared that a ruling on the Motion to Reconsider may have depended on whether the Court granted Lexmark's Motion for Judgment as a Matter of Law on the issues of direct infringement and inducement of infringement [R. 1383], thereby overturning the jury's verdict. As the parties now know, however, in an Order issued on September 30, 2008, the Court denied Lexmark's Motion and declined to disturb that verdict. [R. 1429]. Thus, the Court also ruled on Lexmark's other pending motions. [Id.] In this Memorandum Opinion, the Court will set forth its reasons for the decisions contained in the September 30th Order. To the extent necessary, Static Control's Motion to Reconsider will be addressed in a separate memorandum opinion and order that will be forthcoming.[2]

**I.**

Lexmark is a large producer of printers and toner cartridges for those printers. SCC is "a leading supplier to toner cartridge manufacturers." [R. 172 at 16, Case No. 5:02-571]. The remanufacturers take used toner cartridges, repair them, refill the toner, et cetera, and resell the cartridges to end-user consumers. Static Control sells to the remanufacturers parts and supplies for reworking the used toner cartridges, including replacement parts, toner, and microchips. [R. 1].

Long ago, in 2002, this litigation began when Lexmark filed suit against Static Control.

---

Static Control also filed a Motion for Bill of Costs [R. 1415] and a Motion for Attorney Fees [R. 1416] related to Civil Action 5:02-571. These motions were stayed by Agreed Order [R. 1420] pending agreement by the parties on a briefing schedule. Consequently, these motions were denied without prejudice [R. 1429] as a matter of docket management to be refiled within thirty (30) days of entry of judgment pursuant to Local Rules 54.3 and 54.5.

[5:02-571, R.1]. Static Control filed a second suit, a declaratory judgment action, on February 24, 2004.[3] [5:04-084, R.1]. Since the filing and consolidation of these cases, this action has been appealed; numerous parties have come and gone; amended complaints, counterclaims, and cross-claims have been filed in the record; well over twenty summary judgment motions have been filed and decided, as well as comparable numbers of motions for judgment; and a jury trial has commenced and concluded.

The primary, though not only, theory on which Lexmark alleges direct patent infringement and inducement of patent infringement against Static Control is predicated on Lexmark's employment of single-use restrictions on the majority of cartridges at issue. These "restricted" cartridges have been commonly referred to as "Prebate Cartridges" for the reasons that follow: Lexmark runs what it called at one time its "Prebate Program" and what now is referred to as the "Lexmark Return Program." [R. 594 at 3, n. 4]. In that program, Lexmark's customers buy printer cartridges at an up-front discount in exchange for their agreement to use the cartridges only once and then return the empty cartridges only to Lexmark. According to Lexmark, it offers "'regular' toner cartridge[s] for those customers who do not choose the Prebate/Cartridge Return Program toner cartridge[s] with [their] terms." [R.2 at 8]. Therefore, "Prebate" is temporally the reverse of a rebate;[4] and it is this construct that has been found to

---

[3]It is this later case, 04-084, that became the lead case, and it is the case to which all record citations refer unless otherwise noted.

[4]Over the years, the precise language of Lexmark's Prebate terms printed across the top of Prebate cartridge boxes has varied, with a total of four different versions. [*See e.g.*, R. 573 at 3]. Currently, the terms read:

> RETURN EMPTY CARTRIDGE TO LEXMARK FOR REMANUFACTURING
> AND RECYCLING

3

avoid the exhaustion of patent rights normally associated with a patented article's first sale. [R. 1008].

A second theory on which Lexmark alleges direct infringement and inducement of infringement against Static Control is predicated on the remanufacturing of Lexmark toner cartridges that were first sold outside of the United States. In *Jazz Photo Corp. v. International Trade Com'n*, 264 F.3d 1094, 1105 (Fed. Cir. 2001), the Federal Circuit held that "United States patent rights are not exhausted by products of foreign provenance. To invoke the protection of the first sale doctrine, the authorized sale must have occurred under the United States patent." Thus, while it is undisputed that remanufacturers can repair Non-Prebate toner cartridges on which Lexmark's patent rights have been exhausted by first sale in the United States, the same is not true of toner cartridges first sold on foreign soil.

During the trial of this case in May and June of 2007, the Court found Static Control liable for direct infringement of United States Patent No. 6,397,015 ("the '015 patent") as a matter of law. [R. 1376 at 16-20 (Tr. June 20, 2007)]. Lexmark, however, mooted the issue of damages with respect to the '015 patent earlier in the proceedings. Specifically, Lexmark announced that it was "not seeking a separate claim for damages from Static Control based on

---

> Please read before opening. Opening this package or using the patented cartridge inside confirms your acceptance of the following license agreement. This patented Return Program cartridge is sold at a special price subject to a restriction that it may be used only once. Following this initial use, you agree to return the empty cartridge only to Lexmark for remanufacturing and recycling. If you don't accept these terms, return the unopened package to your point of purchase. A regular price cartridge without these terms is available.

[R. 594 at 3-4 (Lexmark has provided the Court with a demonstrative cartridge and cartridge box with the above Prebate language, as Lexmark represented it would at Record 519 at 9, n. 13)].

4

Static Control's acts of *direct* infringement of the '015 patent. Rather, Lexmark's damages claim for patent infringement against Static Control is based on its acts of *inducing* infringement under 35 U.S.C. § 271(b)." [R. 615 at 3 (emphasis in original)]. The Court accepted Lexmark's representations as a binding stipulation regarding liability on direct infringement of the '015 patent. [R. 1012 at 7].

Also during the trial, the Court held as a matter of law that Lexmark had satisfied its burden of proving direct infringement with respect to the remanufacturers and former counterclaim defendants Wazana Brothers International, Inc. ("Wazana"), NER Data Products, Inc. ("NER"), and Pendl Companies, Inc. ("Pendl"). [R. 1245]. The jury, however, found that Lexmark had not proven by a preponderance of the evidence that Static Control's customers other than Wazana, NER, and Pendl directly infringed one or more of Lexmark's patents [R. 1366 (Special Verdict Form) at Question No. 1]. In light of this decision, the jury properly did not reach the issue of whether Static Control induced infringement by these customers. [*See* Id. at Question No. 2.1]. Further, the jury found that Lexmark had not proven that Static Control induced infringement by Wazana, NER, and Pendl. [Id. at Question No. 2.2]. These decisions of the jury are challenged by Lexmark in its Renewed Motion for Judgment as a Matter of Law at Record 1383.

## II.

### A.

In reviewing a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), the same standards apply as those employed in reviewing a motion for judgment as a matter of law under Rule 50(a). *See Keeton v. Flying J, Inc.*, 429 F.3d 259, 262

5

(6th Cir. 2005). Under Rule 50(a)(1), a motion for judgment as a matter of law should only be granted if the court finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for" the nonmoving party on the issue. Or, in the words of the Court of Appeals, the standard is "whether the evidence is such, without weighing the credibility of the witnesses or considering the weight of the evidence, that there is substantial evidence from which the jury could find in favor of the party against whom the motion is made." *Hill v. McIntyre*, 884 F.2d 271, 274 (6th Cir. 1989)(citations omitted). The Court of Appeals explains further, "Only when it is clear that reasonable people could come to but one conclusion from the evidence should a court grant a motion" for judgment as a matter of law. *Id.*

A court evaluating a renewed motion for judgment as a matter of law must view the evidence in a light most favorable to the party against whom it is made. *Id.* In this case, of course, that means the Court must view the evidence in a light most favorable to Static Control. Additionally, the reviewing court must not substitute its judgment for that of the jury. *Wayne v. Village of Sebring*, 36 F.3d 517, 525 (6th Cir. 1994).

**B.**

Here, the Court finds that there was substantial evidence from which the jury could find no direct patent infringement by Static Control's customers, the world of remanufacturers other than Wazana, NER, and Pendl. As the jury was instructed, a finding of direct infringement is a predicate to a finding of inducement of infringement. *Dynacore Holdings Corp. v. U.S. Phillips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004). Further, the teaching of the Federal Circuit is that this direct infringement can be extended to an entire class on the weight of circumstantial evidence. *Id.*

Throughout this litigation, Static Control relied on *Dynacore Holdings Corp.* for a different proposition, that the patent owner must "point to a specific instance of direct infringement and restrict its suit to liability stemming from the specific instance." 363 F.3d 1263, 1276 (Fed. Cir. 2004); [R. 515 at 3]. Lexmark, however, correctly points out that this burden may be satisfied through circumstantial evidence. Hence, "Plaintiffs who identify an entire category of infringers (e.g., the defendant's customers) may cast their theories of vicarious liability more broadly, and may consequently seek damages or an injunction across the entire category. *Id.* at 1274 (citing *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343 (Fed. Cir. 2003)). Lexmark had no duty to depose or investigate every alleged direct infringer, or even a significant percentage of them, to sustain its burden of proving direct infringement. *See, e.g., Metabolite Labs., Inc. v. Lab. Corp. Of Am. Holdings*, 370 F.3d 1354, 1364-65 (Fed. Cir. 2004) ("To support the verdict, the record does not need to contain direct evidence that every physician performed the 'correlating' [directly infringing] step."); *Diomed, Inc. v. AngioDynamics, Inc.*, 450 F. Supp. 2d 130, 151 (D. Mass. 2006) ("Plaintiff's failure to connect monetary damages to particular acts of infringement does not negate a damages claim under the theory that defendants' customers as a class infringe.") (citing *Dynacore*, 363 F.3d at 1274); *Hilgraeve, Inc. v. Symantec Corp.*, 272 F. Supp. 2d 613, 621 (E.D. Mich. 2003). With that said, the Court ultimately held that a material issue of fact existed regarding whether the cartridge remanufacurers infringe as a class. [R. 1051 at 3-4]. Ultimately, the jury refused to extend enterprise liability to the class, a verdict that will not be set aside.

First, though not required to do so, Lexmark presented little direct evidence of infringement by these customers generally, and specifically, by implication, little direct evidence

7

of infringement of the '015 patent covering encoder wheels and the '661 patent covering the wing-like guides on Lexmark's toner cartridges.  Instead, Lexmark chose to build its case around direct evidence of infringement by Wazana, NER, and Pendl, three remanufacturers that, as previously stated, this Court held liable for direct infringement as a matter of law.  Lexmark then asked the jury to infer direct infringement by the entire class.  The Court finds that it was reasonable for the jury to decide that Lexmark had not proven its case for direct infringement by the entire class of Static Control customers by a preponderance of the evidence.

    For example, when Static Control asked Lexmark witness Dr. Reinholtz whether he knew if any of Lexmark's patent claims covered any cartridges remanufactured by specific Static Control customers, he responded in the negative. [R. 1216 at 42-43 (Tr. May 25, 2007)].  In the case it was determined that repair and remanufacture of two types of Lexmark toner cartridges, "regular" or Non-Prebate cartridges and IBM Green cartridges, did not constitute patent infringement.  Thus, in light of Dr. Reinholtz's testimony, the jury reasonably could have concluded that Lexmark had not proven by a preponderance of the evidence that all of Static Control's customers remanufactured Prebate or overseas cartridges, thereby infringing Lexmark's patent rights.

With respect to the '015 patent, the jury heard evidence that many IBM cartridges and "regular" Non-Prebate cartridges, all of which were sold with Lexmark encoder wheels, and encoder wheels made and sold by Static Control for some two years before the Lexmark '015 patent issued, were available to remanufacturers.  These cartridges could be used without infringing the '015 patent.  The jury reasonably could find in favor of Static Control for this reason as well.

8

With respect to the '661 patent covering the wing-like guides on Lexmark's toner cartridges, the jury reasonably could doubt the testimony in this case that the patented wing-like guides were necessary. There was testimony from Mr. Newman, for example, that the guides "make it easier for the customer to load the cartridge into the printer" and "improve the ease of installation." [R. 1215 at 28-29 (Tr. May 24, 2007)]. This could have suggested to the jury that use of these wing-like guides by remanufacturers was not so much necessary as helpful or advisable.

During the trial, when Lexmark filed its initial motion for judgment as a matter of law with respect to direct infringement by Static Control's customers other than the three former co-defendants [R. 1298], this Court denied that motion. [*See* R. 1356]. Without weighing the credibility of the witnesses or considering the weight of the evidence, the Court believed then, and continues to believe now, that there was sufficient evidence to go to the jury on that issue. Though Lexmark presented evidence of infringement by Static Control's customers, that evidence was not so overwhelming that reasonable people could come to but one conclusion. *See Hill v. McIntyre*, 884 F.2d at 274.

## C.

The Court further holds that there was substantial evidence from which the jury could find in favor of Static Control on the issue of inducement of infringement of Wazana, NER, and Pendl. First, as Static Control argues in its pleading at Record 1391, there were lawful, non-infringing uses for the microchips Static Control sold to remanufacturers, and the jury was instructed as to those lawful uses. [R. 1363 at § 2.2, 18-19]. Lexmark claims that this argument is irrelevant because there is no "non-infringing use" defense to inducement of patent

9

infringement. [R. 1407 at 8]. Lexmark, however, misses the point of Static Control's argument. Static Control is not asserting a "non-infringing use" defense to inducement. Rather, Static Control is arguing that, because its microchips have non-infringing uses, the jury was reasonable not to infer or presume inducement of infringement based on their sale to remanufacturers. The Court agrees.

Additionally, it was reasonable for the jury to conclude that Static Control's Anti-Prebate Kit and other conversations with remanufacturers regarding the Prebate Program did not actually induce Wazana, NER, and Pendl to infringe Lexmark's patents. Lexmark disagrees, pointing to the testimony of Mr. Avi Wazana, Wazana's CEO, and Stephen Oatway, President of NER. Mr. Wazana stated that the Anti-Prebate Kit "was one part of our process. It did confirm certain feelings we had. So we did rely on that as well." [R. 1242 at 152 (Tr. May 30, 2007)]. Mr. Oatway similarly stated that NER's conversations with Lexmark would have been "one of a series of points of input that we would have considered when we made the decision" to remanufacture Prebate cartridges. [R. 1216 at 182 (Tr. May 25, 2007)].

The Court agrees with Static Control, however, that the testimony of Mr. Wazana and Mr. Oatway do not provide such overwhelming evidence in favor of Lexmark that reasonable minds could reach only one conclusion. Though both men stated that their respective remanufacturing companies considered Static Control's opinions with regard to Lexmark's Prebate Program, based on their testimony the jury reasonably could doubt that Static Control actually induced infringement on the part of Wazana, NER, and Pendl. The jury reasonably could doubt that, following Static Control's encouragement or advice, these three companies would necessarily infringe or directly infringe Lexmark's patents. [*See* R. 1366 (Special Verdict

Form) at Question No. 2.2].

The Court also notes that the jury could reasonably have found that Static Control had a good faith belief that North Carolina General Statute § 75-36 invalidated Lexmark's Prebate license, thereby paving the way for the remanufacturing of Prebate cartridges originally sold in North Carolina after October 1, 2003. This Court ultimately ruled that North Carolina's law did not invalidate Prebate within the state. [R. 1081 at 10-12; R. 1178 at 123 (Tr. May 21, 2007)]. That ruling, however, consistent with the instruction to the jury, does not prevent it from deciding that the language of the statute was unclear, and that Static Control relied on the statute in good faith.

Finally, the Court notes that the jury could reasonably have concluded that Static Control lacked the specific intent to induce infringement by Wazana, NER, and Pendl. Evidence was introduced that Static Control provided its customers with oral and written instructions regarding the lawful, non-infringing uses of its microchips. [*See, e.g.* R 1285 at 184-185, 196; Static Control Exhibit 3295 (Static Control Product Catalog 2005-2006, stating the use conditions on every page on which a replacement Lexmark cartridge chip appears)]. Though Lexmark introduced conflicting evidence with respect to specific intent [*See* R. 1407 at 10-11], that evidence was not so overwhelming that a reasonable juror could not find in favor of Static Control on the issue.

## D.

The question remains whether Lexmark is entitled to judgment as a matter of law on Static Control's statute of limitations defense. During the trial, the Court granted-in-part and denied-in-part Lexmark's motion for judgment as a matter of law on this issue. [R. 1375 at 4

11

(Tr. June 19, 2007)]. Specifically, the Court held:

> I want to turn first to one of the motions that I took under advisement at Record No. 1297 regarding the statute of limitations and put on the record my ruling.
>
> 35 United States Code Section 286 states, quote: 'Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.'
>
> Lexmark here argues that the statute of limitations is inapplicable because it does not seek damages, in essence, prior to the date that Lexmark filed its patent counterclaims against Static Control.
>
> SCC, in response, argues that the statute is certainly still relevant as it relates to the 772 patent but did not, at argument or in its papers, contest Lexmark's motion with regard to the other patents.
>
> I do find that with regard to the 772 patent the statute does not read to be solely about damages. I think the statute bars recovery for any infringement committed more than six years prior to the filing of the complaint.
>
> Lexmark did not allege infringement of the 772 patent until it filed its First Amended Answer and Counterclaims on October 15, 2004. Count back six years for the 772 patent, that would be October 15, 1998. And because SCC disseminated its antiprebate kit in September of 1998, this activity, I find, cannot be considered in the analysis of inducement regarding the 772 patent.
>
> While I hold as such, I think Lexmark is correct, however, that there is other evidence of inducement as it relates to the 772 patent; for example, the trade show testimony which falls clearly within that six-year window.
>
> So, consequently, I will grant in part and deny in part Lexmark's motion. It's denied to the extent that it is improper to consider the antiprebate kit as evidence of inducement of the 772 patent. And the other evidence of the inducement presented at trial, if any, may be considered with regard to the 772 patent.
>
> Lexmark's motion is otherwise granted.

[Id. at 3-4]. Pursuant to Federal Rule of Procedure 50(b), Lexmark is thus renewing its motion to the extent it was denied.

Lexmark argues that the '772 patent did not issue until November 30, 1999, making the earliest effective date for the six-year statute of limitations November 30, 2005. [R. 1384 at 6]. Further, Lexmark argues that because its patent infringement claims were filed October 15, 2004, before the November 30, 2005 deadline, Static Control's statute of limitations defense

12

with respect to the '772 patent fails as a matter of law. [Id.] In making this argument, however, Lexmark misconstrues the Court's earlier ruling. The Court did not rule that Lexmark could not assert claims of patent infringement against Static Control regarding the '772 patent. Rather, the Court held that because Lexmark did not allege infringement of the '772 patent until October 15, 2004, and because Static Control disseminated its antiprebate kit in September of 1998, Static Control's conduct in distributing the antiprebate kit could not be considered in the analysis of inducement regarding the '772 patent. [R. 1375 at 4 (Tr. June 19, 2007)].

Static Control disseminated its antiprebate kit more than six years before Lexmark filed suit. Its circulation, if found infringing, would constitute "infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." 35 U.S.C. § 286. Thus, the Court stands by its earlier decision. Lexmark's Renewed Motion for Judgment as a Matter of Law regarding Static Control's statute of limitations defense should be denied on the merits.[5]

### III.

Given the jury's finding that Static Control is not liable on Lexmark's inducement of infringement claim, Lexmark urges the Court to decline Static Control's request to rule on its equitable defenses. Both parties agree that district courts have exercised discretion in not proceeding on the equitable defenses following a finding of non-infringement. [*See* R. 1385-2 at 3; R. 1390 at 2-3]. Whether the Court may decline to reach these issues as a matter of judicial discretion or must decline to reach them as a matter of constitutional authority is an engaging

---

[5]In its Motions for Judgment as a Matter of Law, Lexmark also raises the issue of patent exhaustion. If necessary, the Court will consider Lexmark's arguments on this issue in the context of Static Control's Motion to Reconsider [R. 1422].

13

question, but an academic inquiry the court need not reach; at least not yet. Ultimately, the Court will decline to rule on Static Control's equitable defenses at this time.

In making this decision, the Court has considered what would happen procedurally if, on appeal, the reviewing court reverses this Court's decision to deny Lexmark's renewed Motion for Judgment as a Matter of Law on its inducement of infringement claim, and therefore overturns the jury's verdict. The reviewing court would merely remand and ask this Court to make findings of fact and conclusions of law with respect to Static Control's equitable defenses, which the Court would be fully prepared to do at that time without need for a new trial. Though this would add an additional step, it prevents the rendering of what may very well be nothing more than an advisory opinion.

In its response to Lexmark's Motion, Static Control argues that the Court must rule on its equitable defenses pursuant to *Cardinal Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993). The Court agrees with Lexmark, however, that *Cardinal Chemical* is distinguishable from the case at bar. In *Cardinal Chemical*, the Supreme Court addressed the Federal Circuit's approach of always vacating a district court's ruling on a declaratory judgment counterclaim alleging patent invalidity when the district court found the patent not infringed. *Id.* at 88. Ultimately, the Court rejected the Federal Circuits *pro se* approach. *Id.* at 99. Significantly, however, the *Cardinal Chemical* Court addressed the issue of a declaratory judgment claim for invalidity–not the issue of an equitable defense. Indeed, the Court stated: "An unnecessary ruling on an affirmative defense is not the same as the necessary resolution of a counterclaim for a declaratory judgment." *Id.* at 93-94. As such, *Cardinal Chemical* does not apply here.

Unlike the jury's finding of non-liability on the inducement of infringement claim, this

14

Court has found Static Control liable as a matter of law for direct infringement of Lexmark's '015 patent. Thus, a ruling on Static Control's equitable defenses in the context of the '015 patent would seem required.

Lexmark, however, argues that since it seeks neither monetary nor injunctive relief, the issue of whether or not damages are barred by any equitable factors is moot. [R. 1385 at 2-6]. As stated previously, during the course of the proceedings in this case, Lexmark announced that it was not seeking a separate claim for damages based on Static Control's acts of direct infringement of the '015 patent. [R. 615 at 3]. The Court "accept[ed] Lexmark's representations as a binding stipulation regarding liability on direct infringement of the '015 patent...." [R. 1012 at 7.] Further, the Court found that Lexmark's stipulation "moots" the issue of damages. [Id.]

Static Control's equitable defenses do not bar the finding of infringement, but rather operate only to bar any remedy. In *C.R. Bard, Inc. v. M3 Sys, Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998), the Federal Circuit states that "[p]atent misuse arises in equity, and a holding of misuse renders the patent unenforceable until the misuse is purged; it does not, of itself, invalidate the patent." The Federal Circuit further explains that the defense of laches "became available to bar legal relief, including patent damage actions." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1031 (Fed. Cir. 1991) (*en banc*). Additionally, the Federal Circuit notes that "[w]here equitable estoppel is established, all relief on a claim may be barred." *Id.* at 1041. Thus, with damages off the table, there is no need to address patent misuse, laches, or equitable estoppel.

Indeed, in its Proposed Findings of Fact and Conclusions of Law, Static Control appears to concede that the Court should not reach the issue of laches with respect to the '015 patent.

15

Specifically, Static Control proposes the following legal conclusion : "Lexmark waived its right to pursue damages on its claims of direct infringement of the '015 patent. 6/2207 Tr. 37:4-16. Thus, the Court is not deciding Static Control's laches defense with regard to the '015 patent." [R. 1388 at 21 n. 180]. If the Court does not need to reach the issue of laches, it follows that the Court does not need to reach Static Control's other equitable defenses as well.

Additionally, the Court finds unpersuasive Static control's argument that the Court's ruling with respect to the '015 patent "hangs over Static Control, preventing it from developing new product lines, subjecting it to the threat of a permanent injunction, a contempt finding if it does not comply, and the risk of significant damages." [R. 1390 at 5]. Static Control stopped manufacturing the encoder wheels that directly infringe Lexmark's '015 patent soon after Lexmark filed its counterclaims in the '04 case. If Static Control were to start manufacturing these encoder wheels again tomorrow and Lexmark were to again file suit, a ruling on Static Control's equitable defenses in this case would not bar Lexmark's action for infringement.

Accordingly, the Court will not rule on Static Control's equitable defenses and has granted Lexmark's motion. [R. 1429]. As such, Lexmark's Motion for Judgment as a Matter of Law regarding the equitable defense of patent misuse [R. 1381] and Lexmark's Motion for Judgment as a Matter of Law [R. 1384] as it relates to laches and equitable estoppel were denied as moot [R. 1429].

In granting Lexmark's motion and declining to rule on Static Control's equitable defenses, however, the Court does not yet concede that it should not reconsider the issue of patent exhaustion and the validity of Lexmark's Prebate Program. The "first sale" doctrine, or patent exhaustion, is not an equitable defense. It does not merely operate to bar legal relief, and

16

it is not "personal" to the parties to the instant lawsuit. *See Aukerman*, 960 F.2d at 1032. Rather, a finding of patent exhaustion serves to bar a finding of infringement–it means the patentee no longer has patent rights in its patented product. In this way, assertion of patent exhaustion is akin to assertion of a claim of invalidity, like that in issue in *Cardinal Chemical*.

Though this Court has ruled on the issue of patent exhaustion in the past, the decision to uphold the validity of the Prebate Program may very well merit reconsideration in light of the Supreme Court's recent decision in *Quanta*. Lexmark's Prebate Program lies at the heart of this lawsuit. Although, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason, permitted to battle for it again," *Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)), there are certainly instances in which the law of the case changes before a final judgment because of "an intervening change of controlling law." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959, 2004 WL 237651, *8 (6th Cir. Feb. 6, 2004). This may be such an instance. Further, under Federal Rule of Civil Procedure 54(b), prior to entry of final judgment an interlocutory "order or other form of decision is subject to revision at any time before the entry of final judgment adjudicating all the claims and the rights and liabilities of all the parties. Consequently, the Court will consider Static Control's Motion for Reconsideration [R.1422] in a subsequent memorandum opinion and order.

## IV.

For the reasons set forth above, Lexmark's renewed Motion for Judgment as a Matter of Law regarding direct infringement, inducement of infringement, and patent exhaustion [R. 1383]

was denied; its Motion that the Court Should Not Rule on Static Control's Affirmative Equitable Defenses Because Such Defenses are Moot [R. 1385] was granted; its renewed Motion for Judgment as a Matter of Law regarding patent misuse [R. 1381] was denied as moot; and its renewed Motion for Judgment as a Matter of Law regarding laches, equitable estoppel, and the statute of limitations [R. 1384] was denied as moot in part and otherwise denied.  [R. 1429].

This the 3rd day of October, 2008.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge