UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| STATIC CONTROL COMPONENTS, INC., | ) ) ) ) ) ) |
| Plaintiff/Counterclaim Defendant, | ) ) |
| V. | ) ) |
| LEXMARK INTERNATIONAL, INC., | ) ) |
| Defendant/Counterclaim Plaintiff. | ) ) ) ) ) |

CONSOLIDATED CIVIL ACTION NOS.

5:02-571 AND 5:04-84

**MEMORANDUM OPINION & ORDER**

\*\*\* \*\*\* \*\*\* \*\*\*

Static Control Components, Inc. seeks to dismiss with prejudice Lexmark International, Inc.'s claim for direct infringement of U.S. Patent No. 6,397,015 ("the '015 patent") [R. 1432]. For the reasons set forth below, the Court will deny Static Control's motion.

**I.**

As recounted often during this litigation, Lexmark International, Inc. ("Lexmark") is a large producer of printers and toner cartridges for those printers. Static Control Components, Inc. ("Static Control") is "a leading supplier to toner cartridge manufacturers." [R. 172 at 16, Case No. 5:02-571.] The remanufacturers take used toner cartridges, refurbish them, refill the toner, and resell the cartridges to end-user consumers. Static Control sells to the remanufacturers parts and supplies for reworking the used toner cartridges, including replacement parts, toner, and

1

microchips. [R. 1.]

This litigation began seven year ago when Lexmark filed suit against Static Control. [5:02-571, R.1.] Static Control filed a second suit, a declaratory judgment action.[1] [5:04-084, R.1.] Since the filing and consolidation of these cases, this action has been appealed; numerous parties have come and gone; amended complaints, counterclaims, and cross-claims have been filed in the record; well over twenty summary judgment motions have been filed and decided, as well as comparable numbers of motions for judgment; and a jury trial has commenced and concluded.

During the trial of this case in May and June of 2007, the Court found Static Control liable for direct infringement of the '015 patent as a matter of law. [R. 1376 at 16-20 (Tr. June 20, 2007).] After the trial, the Court declined to rule on Static Control's equitable defenses with respect to the '015 patent. [*See* R. 1429 and 1430.] In a Memorandum Opinion explaining its decision, the Court pointed out that equitable defenses do not bar the finding of infringement, but rather operate only to bar any remedy. [R. 1430 at 15; *see C.R. Bard, Inc. V. M3 Sys, Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998).] In this case, however, Lexmark announced that it was not seeking a separate claim for damages based on Static Control's acts of direct infringement of the '015 patent. [R. 1430 at 15; *see also* R. 615 at 3.] The Court accepted Lexmark's representations as a binding stipulation regarding liability on direct infringement of the '015 patent, and the Court further found that Lexmark's stipulation "mooted" the issue of damages. [R. 1430 at 15; *see also* R. 1012 at 7.] Thus, because Lexmark was not seeking damages or any

---

[1]It is this later case, 04-084, that became the lead case, and it is the case to which all record citations refer unless otherwise noted.

other remedy for Static Control's infringement of the '015 patent, there was no need for the Court to rule on Static Control's equitable defenses of patent misuse, laches, and equitable estoppel. [R. 1430 at 15.]

Additionally, the Court explained that Static Control itself appeared to concede that the Court should not reach the issue of laches with respect to the '015 patent. [Id. at 16.] Static Control proposed the following legal conclusion: "Lexmark waived its right to pursue damages on its claims of direct infringement of the '015 patent. 6/22/07 Tr. 37:4-16. Thus, the Court is not deciding Static Control's laches defense with regard to the '015 patent." [R. 1388 at 21 n. 180; *see also* R. 1430 at 16.] The Court reasoned that if it did not need to reach the issue of laches, it follows that it need not reach Static Control's other equitable defenses. [R. 1430 at 16.]

Finally, the Court noted that it found unpersuasive Static Control's argument that the Court's ruling with respect to the '015 patent hangs over its head, preventing it from developing new product lines and subjecting it to the threat of a permanent injunction, a contempt finding if it does not comply, and the risk of significant damages. [*Id.*; *see also* R. 1390 at 5.] Static Control stopped manufacturing the encoder wheels that directly infringe Lexmark's '015 patent soon after Lexmark filed its counterclaims in the '04 case. Therefore, the Court explained, if Static Control was to start manufacturing these encoder wheels again tomorrow and Lexmark was to again file suit, a ruling on Static Control's equitable defenses in *this* case would not bar Lexmark's action for infringement. [R. 1430 at 16.]

**II.**

Federal Rule of Civil Procedure 41(b) permits dismissal of a plaintiff's claim for failure to prosecute, and directs that such a dismissal operate as an adjudication on the merits.

3

According to the Sixth Circuit in *Knoll v. American Telephone & Telegraph Co.*, Rule 41(b) "is available to the district court as a tool to effect 'management of its docket and avoidance of unnecessary burdens on the tax-supported courts [and] opposing parties." 176 F.3d 359, 363 (6th Cir. 1999) (citing *Matter of Sanction of Baker*, 744 F.2d 1438, 1441 (10th Cir. 1984)). When evaluating a motion to dismiss under Rule 41(b) for failure to prosecute, a court must consider four factors: "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *Id.* (citing *Stough v. Mayville Community Sch.*, 138 F.3d 612, 615 (6th Cir. 1998)). According to the *Knoll* court, "[a]lthough typically none of the factors is outcome dispositive, it is said that a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Id.* Dismissal of a claim for failure to prosecute is a harsh sanction appropriate only in extreme situations. *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005).

**III.**

Static Control argues that, by declining to seek damages or an injunction on its '015 patent claim, thereby averting further proceedings on Static Control's fully briefed equitable defenses, Lexmark has refused to prosecute the claim to finality. [R. 1432 at 1.] Static Control, however, has not pointed to any authority for dismissing a claim on the basis of failure to seek damages or an injunction. In *Knoll*, for example, the Sixth Circuit upheld dismissal pursuant to Rule 41(b) where "counsel neglected plaintiff's case, repeatedly ignored court orders without excuse, and ultimately attempted to force the court to grant a continuance by refusing to proceed

4

on the day of trial." 176 F.3d at 364. According to the court, "Where a plaintiff does not appear at the trial date or, as in this case, is inexcusably unprepared to prosecute the case, Rule 41(b) dismissal is particularly appropriate. Indeed, such behavior constitutes the epitome of a 'failure to prosecute.'" *Id.* Thus, the typical case in which Rule 41(b) dismissal for failure to prosecute is appropriate involves failure to appear for scheduled court proceedings, failure to respond to discovery requests or motions, failure to comply with court orders, and/or failure to appear or prepare for trial. *See, e.g., Link v. Wabash R. Co.*, 370 U.S. 626 (1962); *Harmon v. CSX Transp., Inc.*, 110 F.3d 364 (6th Cir. 1997); *Coston v. Detroit Edison Co.*, 789 F.2d 377 (6th Cir. 1986); *Hughley v. Eaton Corp.*, 572 F.2d 556 (6th Cir. 1978); *Polk-Osumah v. Wayne County, Mich.*, 205 F.R.D. 199 (E.D. Mich. 2001). This is not such a typical case. Here, Lexmark actually succeeded on its claim at trial.

Even assuming a failure to seek damages or an injunction upon a finding of infringement constitutes the failure to prosecute contemplated by Rule 41(b), none of the four factors lead this Court to conclude dismissal of Lexmark's '015 patent claim is appropriate. As to the first factor, in order "[f]or a plaintiff's actions to be motivated by bad faith, willfulness, or fault, his conduct 'must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of [his] conduct on those proceedings.'" *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (*quoting Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 591 (6th Cir. 2000)). Here, there is no evidence Lexmark intended to thwart judicial proceedings or acted with reckless disregard for the effect of its conduct on those proceedings by declining to seek a remedy on its '015 patent claim. Rather, it appears Lexmark's decision was simply a matter of trial strategy. Because Static Control voluntarily stopped manufacturing the infringing encoder wheels, Lexmark

5

decided to focus its efforts on its remaining claims.  It seems likely Lexmark would have sought an injunction or damages had Static Control been manufacturing the encoder wheels when the Court entered its decision finding direct infringement.  Further, with respect to Static Control's claim that Lexmark "flip-flopped" regarding whether or not it would seek a remedy for the infringement of its '015 patent, the Court finds that any alleged "flip-flopping" exhibited at worst zealous litigation during the throes of trial, not bad faith, willfulness, or fault.  Thus, the first factor weighs in favor of Lexmark.

The second factor asks the Court to consider whether Static Control was prejudiced by Lexmark's conduct.  Static Control argues that it was prejudiced because it incurred unnecessary costs to litigate a claim for which Lexmark has not sought any remedy.  [R. 1432 at 3.]  Static Control further argues that Lexmark "may not preserve a finding of liability of infringement while avoiding the Court's judgment on Static Control's affirmative defenses of laches, collateral estoppel, and patent misuse."  [*Id.*]  The Court disagrees.  As noted by prior Order, equitable defenses do not bar the finding of infringement, but rather operate only to bar any remedy.  [R. 1430 at 15.]  Because Lexmark does not seek any remedy for the specific instances of infringement of its '015 patent at issue in this case, the Court determined that there was no need to rule on Static Control's equitable defenses.  [*Id.* at 15-16.]  A ruling favorable to Static Control on its equitable defenses would have absolutely no impact on this lawsuit.  Further, it would have no impact on a subsequent lawsuit.  If Static Control commenced manufacturing infringing encoder wheels again tomorrow, and Lexmark filed suit, Static Control could not use a ruling on its equitable defenses in this case to bar the cause of action–different instances of infringement would be at issue.  Dismissal of Lexmark's '015 patent claim would have an impact

6

on the hypothetical second lawsuit, however, because Lexmark would be forced to relitigate its direct infringement claim. Stated otherwise, the Court's finding that Static Control directly infringed Lexmark's '015 patent has *res judicata* effect. For these reasons, the costs incurred by Static Control to litigate the claim were neither unnecessary nor prejudicial. Further, as noted previously, Static Control itself appeared to concede that the Court did not need to make a decision regarding its equitable defense of laches with respect to the '015 patent. [R. 1388 at 21 n. 180.] This factor weighs in favor of Lexmark as well.

With respect to the third factor, here it is clear that Lexmark was not warned that dismissal could result from its failure to seek a remedy for the infringement of its '015 patent. As stated by Lexmark, Static Control never indicated that Lexmark's stipulation that it would not seek a remedy for Static Control's direct infringement would lead to a request for dismissal of Lexmark's claim. Static Control appears to concede this point, but it argues that a district court may dismiss a claim even where the claimant has not had notice of the possibility of dismissal if the claimant has engaged in contumacious conduct. Indeed, in *Stough v. Mayville Community Schools*, 138 F.3d 612, 615 (6th Cir. 1998), the Sixth Circuit stated that "in the absence of notice that dismissal is contemplated a district court should impose a penalty short of dismissal unless the derelict party has engaged in 'bad faith or contumacious conduct.'" Here, however, the Court has already found, in its discussion of the first factor, that Lexmark did not engage in bad faith, much less contumacious conduct, by declining to seek any remedy for the infringement of its '015 patent. Accordingly, this factor weighs in favor of Lexmark.

The final factor asks whether less drastic sanctions were considered or imposed before dismissal. The Sixth Circuit "has held that '[t]he sanction of dismissal is appropriate only if the

7

attorney's actions amounted to failure to prosecute and *no alternative sanction* would protect the integrity of the pretrial process.'" *Wu*, 420 F.3d at 644 (emphasis in original) (quoting *Mulbah*, 261 F.3d at 589). Here, again, whether Lexmark's actions amount to failure to prosecute is very much in doubt. Further, the Court is not convinced that Lexmark's conduct needs to be sanctioned at all, and it certainly does not warrant a harsh sanction appropriate only in extreme situations. *See Wu*, 420 F.3d at 643. Thus, the final factor also weighs in favor of Lexmark.

One additional argument of the parties needs to be addressed. In its memorandum in opposition to Static Control's motion to dismiss, Lexmark contends that infringement of the '015 patent is still an issue because it is a predicate act to Lexmark's claim of inducement of infringement against Static Control. [*See* R. 1433 at 1.] In its response, Static Control argues that Lexmark did not litigate this theory of inducement of infringement at trial. [R. 1434 at 7.] According to Static Control, "Lexmark's inducement theory was 'enablement.'" [*Id.* at 8.] Specifically, "Lexmark alleged Static Control induced infringement by selling microchips and other components, including encoder wheels, which remanufacturers used to repair allegedly single-use-only Lexmark cartridges originally sold either outside the United States or in the United States with Prebate labels."[2] [*Id.*] The Court agrees with Static Control's broad

---

[2]Lexmark sold Prebate-labeled cartridges under its "Prebate Program," pursuant to which Lexmark's customers could buy printer cartridges at an up-front discount in exchange for their agreement to use the cartridges only once and then return the empty cartridges only to Lexmark. Before trial, in an Order entered April 24, 2006, this Court found that Lexmark's Prebate Program avoided the exhaustion of patent rights normally associated with a patented article's first sale. [R. 1008.] After the trial, and in light of the Supreme Court's decision in *Quanta Computer, Inc. v. LG Electronics, Inc.*, 128 S. Ct. 2109 (2008), however, the Court reconsidered and reversed its prior decision. Specifically, the Court held that patent rights in Lexmark's Prebate cartridges were exhausted by their first sale to end users. [R. 1443.] Accordingly, the Court held that Lexmark cannot invoke patent law to enforce postsale single-use restrictions. [*Id.*] Stated otherwise, the Prebate Program is invalid under patent law.

characterization of Lexmark's inducement of infringement claim. The claim did not relate solely to the '015 patent. In the end, however, for the reasons stated above, this fact does not affect the Court's disposition of Static Control's motion to dismiss.

IV.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that:

1. Static Control's Motion to Dismiss [R. 1432] is **DENIED**; and

2. The parties shall, within **thirty (30) days** of the date of entry of this Order, exchange draft judgments consistent with the representations made by counsel during the teleconference held on April 14, 2009, and submit to the Court a proposed Final Judgment for entry in the record.

This the 13th day of August, 2009.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge