UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| STATIC CONTROL COMPONENTS, INC., | ) ) ) ) | CONSOLIDATED CIVIL ACTION NOS. |
| Plaintiff/Counterclaim Defendant, | ) ) | 5:02-571 AND 5:04-84 |
| V. | ) ) ) | **MEMORANDUM OPINION** |
| LEXMARK INTERNATIONAL, INC., | ) ) | **& ORDER** |
| Defendant/Counterclaim Plaintiff. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Motion for Wrongful Injunction Damages in Case No. 5:02-CV-571-GFVT [R. 1473] filed by Static Control Components, Inc. For the reasons set forth below, the motion will be granted, and Static Control will be awarded damages in the amount of the injunction bond previously set by the Court.[1]

---

[1] Static Control also filed a Motion Requesting Evidentiary Hearing on its Motion for Injunction Damages [R. 1509]. Specifically, Static Control requested an evidentiary hearing to allow it to prove its damages, followed by oral argument regarding whether the Court should recalculate the injunction bond. [*Id.*] Lexmark opposes Static Control's motion for a hearing [R. 1513]. Lexmark further states that if the Court agrees that Static Control is entitled to some award of damages not to exceed the $250,000 injunction bond amount, then Lexmark will stipulate to Static Control recovering the full $250,000. [*Id.*] In light of Lexmark's response, Static Control withdrew its request for an immediate hearing on damages, instead requesting that the Court first hold oral argument limited to the issue of whether Lexmark's liability exceeds $250,000. [R. 1514.]

This issue of whether Static Control is entitled to injunction damages, including whether Static Control is limited in its recovery of those damages to the amount of the previously set injunction bond, has been the subject of no less than five pleadings–the motion itself [R. 1473], Lexmark's response [R. 1495], Static Control's reply [R. 1503], Lexmark's sur-reply [R. 1511], and Static Control's response to Lexmark's sur-reply [R. 1512]. After reviewing this extensive briefing, the Court finds that it has all the information it needs to make an informed decision, and neither oral argument nor supplemental exhibits [R. 1527] are necessary. Additionally, because

1

**I.**

In December of 2002, Lexmark International, Inc., filed suit against Static Control in Civil Action No. 02-571. Lexmark asserted claims of copyright infringement and claims under the Digital Millennium Copyright Act ("DMCA") related to Static Control's manufacture and sale of microchips used by third parties to repair and refill Lexmark-compatible printer toner cartridges. Lexmark sought injunctive relief and damages.

Shortly after the suit was filed, the Court[2] granted Lexmark a temporary restraining order ("TRO"). Static Control moved for relief from the TRO; alternatively, Static Control asked the Court to require Lexmark to post an injunction bond in the amount of $75,000. [*See* 02-571, R. 38.[3]] Lexmark expressed its willingness to post a $75,000 security bond in order to maintain the TRO. [*See id.*] Accordingly, the Court entered an Order requiring Lexmark to post bond in that amount. [*Id.*]

On February 7, 2003, the Court held a hearing on Lexmark's motion for a preliminary injunction. Static Control called as a witness William Kevin Swartz, president of Static Control's Imaging Supplies Division. [02-571, R. 82, Transcript (Tr.) at 151.] Swartz testified that Static Control would lose $17,463,000 in profits over an eight-year period if the Court entered an injunction that lasted for two years. [*Id.* at 61-62.]

After the hearing, the Court extended injunctive relief until the end of February 2003 and

---

the Court finds that Static Control is limited to recovery of the previously set injunction bond, and in light of Lexmark's stipulation, there is no need for an evidentiary hearing to allow Static Control to prove its damages.

[2]Judge Karl S. Forester presided over Case No. 02-571 and related Case No. 04-084 until June 9, 2006, when both actions were transferred to the undersigned.

[3]Citations to the record reference Case No. 04-084 unless otherwise noted.

increased the bond to $250,000 while it considered Lexmark's motion. On February 27, 2003, the Court granted the motion, enjoining Static Control from "making, selling, distributing, offering for sale, or otherwise trafficking in the "SMARTEK" microchips for the Lexmark T520/522 and T620/622 toner cartridges" until further order of the Court. *Lexmark International, Inc. v. Static Control Components, Inc.*, 253 F. Supp. 2d 943, 974 (E.D. Ky. 2003). Additionally, the Court ordered the $250,000 bond previously posted by Lexmark to remain in effect. *Id.*

Static Control appealed the Court's Order. In February of 2004, while the appeal was pending, Static Control filed suit against Lexmark in Civil Action No. 04-084; the two cases were consolidated in August of 2005[4] [R. 140]. Before consolidation, the Sixth Circuit issued its ruling, vacating the preliminary injunction and finding that Lexmark had not established a likelihood of success on the merits with respect to its general copyright or DMCA claims. *Lexmark International, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 551 (6th Cir. 2004).

In February of 2006, Lexmark and Static Control filed a Joint Stipulation of Entry of Summary Judgment with regard to Lexmark's DMCA claims [R. 216]. The parties noted that, in light of the Sixth Circuit's decision, and particularly in light of the Sixth Circuit's interpretation of the DMCA, Lexmark could not prevail on those claims.[5] [*Id.*] Later, the Court granted Static Control's motion for partial summary judgment regarding Lexmark's claim of copyright infringement in the '02 case. [R. 975.] After a lengthy jury trial in 2007 and numerous post-

---

[4]Case No. 04-084 became the lead case.

[5]Lexmark, however, expressly reserved the right to appeal the entry of summary

3

verdict motions, Final Judgment was entered in the fall of 2009 with respect to the claims raised in both the '02 and '04 cases.

## II.

Federal Rule of Civil Procedure 65(c) provides that a "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." According to the Sixth Circuit, "the reversal on appeal of an injunction is tantamount to finding that the enjoined party was 'wrongfully enjoined or restrained,' and . . . such reversal triggers the wrongfully enjoined party's right to pursue recovery on the security bond." *Division No. 1, Detroit, Brotherhood of Locomotive Engineers v. Consolidated Rail Corp.*, 844 F.2d 1218, 1225 (6th Cir. 1988) (citations omitted). Here, as noted previously, the Sixth Circuit reversed this Court's entry of a preliminary injunction, and Static Control otherwise prevailed on Lexmark's DMCA and copyright infringement claims in the '02 case.

Under Rule 65.1, liability on an injunction bond "may be enforced on motion without an independent action." Fed. R. Civ. P. 65.1. As noted by Lexmark in its response in opposition [R. 1495] to Static Control's motion for injunction damages, a majority of courts hold that there is a rebuttable presumption that a wrongfully enjoined party is entitled to recover damages against the injunction bond unless there is a "good reason to depart from the preference for recovery of security granted under Rule 65(c)." *See Global Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 23 (1st Cir. 2007). Lexmark argues, however, that equity and justice favor no award of damages in this case due to Static Control's "extreme behavior." [*See* R. 1495 at 12-

---

judgment and/or any Sixth Circuit decision pertaining to the DMCA. [R. 216.]

13.] But the Court does not find that Static Control has engaged in any behavior or demonstrated any malice sufficient to warrant denying its recovery on the bond, especially since Static Control was ultimately successful in challenging Lexmark's claims in the '02 case.

Lexmark also argues that Static Control filed its motion for damages too late. Specifically, Lexmark notes that Static Control filed its motion two years after stipulating that Final Judgment should include "all appropriate grants of relief" [R. 1382], and neither the Final Judgment nor the Amended Final Judgment granted Static Control any damages for the injunction.

Generally, however, a party cannot recover damages resulting from a wrongful injunction until *after* the entry of final judgment in favor of the party enjoined. *See American Bible Soc. v. Blount*, 446 F.2d 588, 594-95 (3d Cir. 1971) ("No liability can arise on an injunction bond unless there is a final judgment in favor of the party enjoined."); *Meeker v. Stuart*, 188 F. Supp. 272, 276 (Dist. D.C. 1960) ("As to damages on the injunction bond, it is well established that there can be no recovery of damages caused by a preliminary injunction, even if the injunction is set aside, unless final judgment after trial is in favor of the party that has been enjoined."). Thus, although Static Control's motion may not have been premature if filed earlier, *see Pro Edge LP v. Gue*, 451 F. Supp. 2d 1026, 1031-32 (N.D. Iowa 2006), the Court certainly does not find that Static Control waived or forfeited its right to injunction damages by seeking them shortly after the entry of final judgment. This is especially true since the parties agreed in their Joint Stipulation of Entry of Summary Judgment that they would pay their own costs and attorneys' fees associated with Lexmark's DMCA claims, but this would not affect Static Control's right to recover damages arising out of the entry of the preliminary injunction entered in the '02 case. [R. 216.]

Having determined that Static Control is entitled to damages arising from the wrongful injunction, the only issue that remains is the amount that Static Control may recover. Lexmark argues that Static Control's recovery is limited to the amount of the injunction bond in accordance with the majority rule.[6] Static Control argues that three cases, *Michigan American Federation of State County and Municipal Employees Council, 25, Local 1640 v. Matrix Human Services*, 589 F.3d 851 (6th Cir. 2009), *Aluminum Workers International Union, AFL-CIO, Local Union No. 215 v. Consolidated Aluminum Corp.*, 696 F.2d 437 (6th Cir. 1982), and *Division No. 1, Detroit, Brotherhood of Locomotive Engineers v. Consolidated Rail Corp.*, 844 F.2d 1218 (6th Cir. 1988),[7] establish that, although the amount of an injunction bond does act as a cap on damages, the Court may recalculate the bond, even after the injunction has been lifted.

In *Consolidated Rail*, the Sixth Circuit found that the district court had abused its discretion in setting the injunction bond. 844 F.2d at 1226. Specifically, the court found "that the evidence before the district court was insufficient to justify a bond of the magnitude" ordered. *Id.* Accordingly, the Sixth Circuit vacated the bond, except insofar as it was premised on the defendant's increased operating expenses, and remanded the case for further proceedings.[8] *Id.* at 1229. Essentially, then, the Sixth Circuit ordered the district court to recalculate the

---

[6]Lexmark notes that some courts that follow the majority rule have permitted the recovery of damages exceeding the bond upon proof of malice. *See Lucsik v. Bd. of Educ. of the Brunswick City School District*, 621 F.2d 841, 842 (6th Cir. 1980) (per curiam). Here, however, there is no proof Lexmark acted with malice in seeking injunctive relief in the '02 case, especially since this Court initially granted that relief.

[7]All three of these cases involve injunctions issued pursuant to the Norris-LaGuardia Act, not Rule 65(c). Injunctions issued pursuant to both the statute and the Rule, and the Sixth Circuit's interpretations of both the statute and the Rule, however, appear to be analogous. In *Consolidated Aluminum*, for example, the Sixth Circuit noted that Rule 65(c) is "substantially similar" to section 7 of the Act. 696 F.2d at 446.

amount of the injunction bond. *Id. See id.* at 1229 n. 16.

In *Consolidated Aluminum*, the Sixth Circuit vacated the injunction bond on the ground that the district court had improperly limited its inquiry in setting the bond amount. 696 F.2d at 446. The court noted that the amount of an injunction bond is within the sound discretion of the district court." *Id.* (citing *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978)). But the court found that such discretion is constrained by the statute, under which the "primary concern of the district court in setting the bond amount should be the sufficiency of the amount to recompense the party enjoined" for losses, expenses, and/or damages caused by a wrongful injunction. *Id.* The district court, however, "stated that its 'only concern' was 'to be sure that the [plaintiff] can comply and whatever order it has entered is not frustrated by bond requirements.'" *Id.* Thus, the Sixth Circuit remanded the case for rehearing on the issue of damages. *Id.*

Unlike *Consolidated Rail* and *Consolidated Aluminum*, *Matrix* is not a case in which the Sixth Circuit vacated the bond set by the district court. Instead, in *Matrix* the Sixth Circuit had to determine whether a defendant who successfully dissolved an injunction could recover damages in the complete absence of a bond. 589 F.3d at 855. The court answered this question affirmatively. First, the court found that the Norris-LaGuardia Act allows recovery of damages resulting from a wrongful injunction "only in relation to a bond set according to the conditions in the act." *Id.* at 858. Stated otherwise, a wrongfully enjoined party can recover no more than the amount of the bond. Second, the court found "that a bond is an absolute precondition of a federal court's jurisdiction over labor injunctions." *Id.* at 860 (citation omitted). Thus, the court held that "whenever a plaintiff obtains interlocutory injunctive relief in a labor case and the

---

[8]The Sixth Circuit also vacated the injunction itself. *Consolidated Rail*, 844 F.2d at 1229.

7

injunction is subsequently dissolved under the federal labor laws, the plaintiff will have to post a bond." *Id.* The court continued, "This is so even if, for whatever reason, the bond is not ordered or posted until after dissolution of the injunction." *Id.* In such a situation, the district court must determine what the bond would have been had it been properly set at the time injunctive relief was granted.[9] *Id.* at 859 n. 3.

In light of *Matrix*, the Court finds that a wrongfully enjoined party may only recover damages up to the amount of the security bond. To the extent that *Matrix*, *Consolidated Rail*, and *Consolidated Aluminum* permit the Court to reconsider the amount of a previously set bond after the dissolution of the injunction, the Court declines to do so in this case.

Unlike *Matrix*, this is not a case in which an injunction bond was never set. Judge Forester initially set a bond in the amount of $75,000, and he raised the bond to $250,000 after hearing Static Control's arguments about the potential extent of its damages. Reviewing the record, Judge Forester had reason to doubt that Static Control would suffer over $17 million in damages if the injunction lasted for a period of two years. During cross-examination, for

---

[9] In *Matrix*, the court set forth the Eight Circuit's rationale for capping recovery at the amount of the injunction bond: "We think the statutory requirement of a bond, upon certain conditions, in an amount to be fixed by the court is conclusive evidence of the legislative intention that the bond should be the evidence and the measure of plaintiff's liability and defendant's protection." *Matrix*, 589 F.3d at 855 (quoting *Int'l Ladies' Garment Workers' Union v. Donnelly Garment Co.*, 147 F.2d 246, 252 (8th Cir. 1945)). Further, again in the context of the Norris-LaGuardia Act, the Eight Circuit reasoned,

> Necessarily, at the beginning of an action, the amount of security adequate for a defendant's protection is a matter of estimate. It may be fixed in a sum which the event proves inadequate or excessive. If the security required by the court becomes inadequate while the restraint continues and the litigation proceeds, a defendant has ready to hand the means for his protection by a motion for an increase in the amount of the security.

*Id.* at 855-56 (quoting *Int'l Ladies' Garment Workers' Union*, 147 F.2d at 252-53).

example, Lexmark elicited from Swartz that his calculation of the damages Static Control would suffer if the injunction issued rested on a number of assumptions. [02-571, R. 82, Tr. at 164-65, 178.] Swartz's affidavit, however, included only his conclusions, not the assumptions and other data upon which those conclusions relied. [*Id.* at 165-66.] Further, Lexmark elicited that Swartz used the same discount rate in discounting the revenue stream that the federal government uses, thereby equating Static Control, for the standpoint of economic stability, predictability, and reliability, to the United States Government. [*Id*. at 177-78, 179.]

Moreover, the Sixth Circuit has noted that although the language of Rule 65(c) regarding the posting of security "appears to be mandatory, and . . . many circuits have so interpreted it, the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security."[10]  *Moltan Co. v. Eagle-Picher Industries, Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (citing *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978)).  Accordingly, "the court may order a bond that does not completely secure the enjoined party or the court may decline to order a bond, if necessary, for the purpose of effecting justice between the parties." *Consolidated Rail Corp.*, 844 F.2d at 1227 n.15 (citation and internal quotation marks omitted).

In addition, unlike in *Consolidated Aluminum* and *Consolidated Rail*, the Sixth Circuit did not vacate the amount of the injunction bond when it dissolved the preliminary injunction in this case, even though Static Control raised the issue on appeal. Indeed, the Sixth Circuit did not address the bond issue at all. [*See* R. 1473, Attach. 2 at 2; *Lexmark International, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004).] Lexmark suggests that the Sixth

---

[10]Thus, this is at least one way in which the Sixth Circuit's interpretation of Rule 65(c) differs from its interpretation of the Norris-LaGuardia Act.

9

Circuit's silence represents implicit affirmation of the amount of the bond. [R. 1495 at 2.] Static Control contends that this suggestion "defies reality" because the court simply did not reach the issue. [R. 1592 at 6.] Relying in part on *Monroe Division, Litton Business Systems, Inc. v. De Bari*, 562 F.2d 30, 32 (10th Cir. 1977), however, Static Control also suggests that the Sixth Circuit could have concluded that there was no reason to address the adequacy of the bond in light of Lexmark's representation that it would be able to pay damages that Static Control might incur as a result of the injunction. [R. 1473, Attach. 2 at 5.] The Court will not engage in speculation regarding the Sixth Circuit's silence. Rather, for the reasons discussed above, the Court declines to reconsider the amount of the injunction bond.

### III.

Accordingly, for the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Static Control's Motion for Wrongful Injunction Damages in Case No. 5:02-CV-571-GFVT [R. 1473] is **GRANTED**;

2. The Clerk of the Court is directed to release the security bond in the amount of $250,000, posted by Lexmark on February 11, 2003 [*see* 02-571, R. 79], to Static Control;

3. Static Control's Motion Requesting Evidentiary Hearing on its Motion for Injunction Damages [R. 1509] is **DENIED**; and

4. Lexmark's Motion for Leave to File Supplemental Exhibits [R. 1527] is **DENIED**.

This 24th day of April, 2012.



Signed By:

*Gregory F. Van Tatenhove*

United States District Judge